18

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

APR 2 0 2001

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| LINDA COY, INDIVIDUALLY AND | § | |
| ON BEHALF OF THE ESTATE OF | § | |
| ORTENSIA G. LOPEZ, DECEASED, | § | |
| LUIS AYALA, ISELA RODRIGUEZ | § | |
| AND LEE AYALA, JR., RUBEN RUIZ | § | |
| AND MAURICIO SALDANA | § | CIVIL ACTION NO. B-00-139 |
| | § | |
| VS. | § | |
| | § | |
| FORD MOTOR COMPANY | § | |
| AND GABRIEL DELGADO | § | |

## JOINT PRE-TRIAL ORDER

### I.

### APPEARANCE OF COUNSEL:

Linda Coy, Individually and on behalf of the Estate of Ortensia G. Lopez, Deceased, Luis Ayala, Isela Rodriguez, Lee Ayala, Jr., Ruben Ruiz and Mauricio Saldana, Plaintiffs are represented by Tony Martinez and Benigno (Trey) Martinez of the Law Offices of MARTINEZ & BARRERA, L.L.P., 1201 E. Van Buren, Brownsville, Texas 78520.

Ford Motor Company, one of the Defendants herein, is represented by Eduardo Roberto Rodriguez and Joseph A. (Tony) Rodriguez of the Law Offices of RODRIGUEZ, COLVIN & CHANEY, L.L.P., 1201 East Van Buren, Brownsville, Texas 78522.

Gabriel Delgado, one of the Defendants herein, is represented by D. Alan Erwin, Jr. of the Law Offices of Roerig, Oliveira & Fisher, L.L.P., 855 West Price Road, Suite 9, Brownsville, Texas, 78520-8786.

## II.

## STATEMENT OF THE CASE

The Plaintiffs contend that on May 16, 1998, Ortensia G. Lopez, Ruben Ruiz and Mauricio Saldana were passengers in a vehicle operated by Gabriel Delgado traveling southbound on U.S. 77 in Raymondville, Willacy County, Texas, when the rear axle of the vehicle broke, detaching the right rear wheel from the vehicle causing it to veer left into the median of U.S. 77 and rolling over finally landing right side up. Plaintiffs claim that as a result of the collision in question, they have sustained the injuries and damages as set forth in Plaintiffs' Second Amended Original Petition which is attached hereto as Exhibit 1.

## III.

## JURISDICTION AND VENUE

This suit commenced in the 357th Judicial District Court of Willacy County, Texas on March 7, 2000 alleging causes of action for negligence, strict liability, breach of express and implied warranties and gross negligence. The accident made the basis of this lawsuit occurred in Raymondville, Willacy County, Texas, the Plaintiffs are residents of Harris County, Texas, Defendant Ford Motor Company is a foreign corporation, incorporated in the State of Delaware, and Defendant Gabriel Delgado is a resident of Harris County. Defendant Ford Motor Company removed this case to federal court pursuant to 28 U.S.C. § 1441, diversity jurisdiction on September 7, 2000. Defendant Gabriel Delgado consented to Ford's removal on October 3, 2000. Therefore, there are no unresolved jurisdictional or venue questions.

## IV.

## MOTIONS

Ford Motor Company has filed a Motion For Continuance. The parties also have filed and/or anticipate filing Motions In Limine (and Memorandum In Support of these motions) and their Proposed Jury Charge and Jury Questions. Additionally, Defendant Gabriel Delgado anticipates filing a Motion for No-Evidence Summary Judgment.

# V.

## CONTENTIONS OF THE PARTIES

**PLAINTIFF'S CONTENTIONS.**

17.     The Plaintiffs contend that Ford Motor Company engaged in the manufacture and sale of automobiles, were negligent in the sale, manufacture and/or design of automobiles and willfully failed to make the 1979 Ford Club Wagon safe to drive resulting in the accident which was the proximate cause of Ortensia G. Lopez' death, and Ruben Ruiz and Mauricio Saldana's injuries.

2.      The Plaintiffs contend that Ford Motor Company breached expressed and implied warranties by representing both expressly and impliedly that the 1979 Ford Club Wagon would be safe to drive and failing to provide adequate and effective notice to the driver and information on the potential hazards which were relied upon by Ortensia G. Lopez, Ruben Ruiz and Mauricio Saldana.

3.      The Plaintiffs contend that Gabriel Delgado was negligent in the operation of the 1979 Ford Club Wagon prior to and at the time of the accident and that such alleged negligence was the proximate cause of the claimed injuries, losses and damages sustained by the Plaintiffs.

4.      The Plaintiffs contend that the conduct of Defendants was gross negligence.

## DEFENDANT FORD MOTOR COMPANY'S CONTENTIONS AND/OR ALTERNATIVE CONTENTIONS

1.      This Defendant denies that it was negligent and contends that Plaintiffs' alleged injuries and damages were proximately by Plaintiffs' acts or omissions in failing to exercise ordinary care, caution and prudence to avoid the incident and injuries at issue.

2.      This Defendant contends that Plaintiffs' alleged injuries and damages were proximately caused by the negligence of Defendant Gabriel Delgado.

3.      This Defendant contends that the accident made the basis of this lawsuit was an unavoidable accident not proximately cause by the negligence of any party to this lawsuit.

4.      This Defendant contends that the act or omission of a person other than Defendant was the sole proximate cause of the accident in question.

5.      This Defendant contends that the acts or omissions of Plaintiffs, Defendant Gabriel Delgado, or other third parties were the sole proximate cause or a new and independent cause of the accident and injuries complained of in this lawsuit.

6.  This Defendant contends that the warranties and exclusions of warranties offered when the vehicle in question was purchased limited the liability of the sellers and manufacturers to their provisions.

7.  This Defendant contends that acts of unknown party or parties have proximately caused the accident and/or injuries of the Plaintiffs in the negligent replacement of parts and/or component parts of the vehicle including but not limited to the rear axle assembly.

8.  This Defendant contends that Plaintiffs' claims relating to breach of warranty are barred by the statute of limitations in that the vehicle was originally purchased in or around 1979.

9.  This Defendant contends that Plaintiffs' claims are barred, in whole or in part, because Plaintiffs failed to mitigate the effect of their alleged injuries and damages as required by law.

9(a).  Ford Motor Company contends that Plaintiffs' claims are barred, in whole or in part, because Plaintiffs failed to mitigate the effect of their alleged injuries and damages as required by law.

9.  Ford Motor Company contend that Plaintiffs are not entitled to recover any sum, or in the alternative, are allowed to recover no more than actual damages and attorney's fees, for any alleged violation of the Texas Deceptive Trade Practices Act, due to Plaintiffs' failure to provide adequate notice of their complaints prior to filing this lawsuit as required by Tex. Bus. & Comm. Code §17.505.

10.  Ford Motor Company contends that Plaintiffs are not entitled to recover any sum, or in the alternative, are allowed to recover no more than actual damages and attorney's fees, for violation of the Texas Deceptive Trade Practices Act, due to Plaintiffs' failure to allow Defendants a reasonable opportunity to cure the defects, if any, complained of pursuant to Tex. Bus. & Comm. Code §17.505.

12.  Ford Motor Company contends that Plaintiffs are not entitled to recover any sum, or in the alternative, are allowed to recover no more than actual damages and attorney's fees, for violation of the Texas Deceptive Trade Practices Act, as such violation, if any, resulted from a bona fide error notwithstanding the use of reasonable procedures adopted to avoid the error, if any.

13.  Ford Motor Company contend that Plaintiffs are not entitled to recover any sum or amount of the damages which they allege for the reason that such damages were proximately caused by Plaintiffs' misuse of the vehicle in question.

14.  Ford Motor Company contends that Plaintiffs are not entitled to recover any sum or amount of the damages which they allege for the reason that such damages were proximately caused by the Plaintiffs' failure to properly maintain the vehicles in question.

CIMPDF - www.texisa.com

15.   Ford Motor Company contends that the damages in this case, if any, were proximately caused by the negligence of third parties and any recovery should be barred or diminished under the applicable provisions of the law.

16.   Ford Motor Company contends that the provisions of §33.001 of the Texas Civil Practice & Remedies Code apply to this case, Defendant alleges that the negligence of Plaintiffs is fifty-one percent (51%) or greater, and therefore, no damages may be recovered from Defendants.

17.   Ford Motor Company contend that the provisions of §33.013 of the Texas Civil Practices & Remedies Code in the unlikely event that liability is established by the Plaintiffs in this cause.

18.   Ford Motor Company specifically deny that they are liable for prejudgment interest in this cause of action as pled by Plaintiffs.

19.   Ford Motor Company contends that they are not liable for exemplary damages and plead affirmatively the provisions of Chapter 41, of the Texas Civil Practices & Remedies Code, including the provisions on applicability, standards for recovery, preclusion's, prejudgment interest, and limitations on amount.

20.   Ford Motor Company contends that an award of punitive damages in this case would violate the procedural due process guaranteed by the Constitution of the United States. Texas Law, and the instructions given to the jury, are vague and standardless as to whether and how much to punish Defendant, and is likely to produce arbitrary and capricious results. Therefore, any award of punitive damages should be disallowed, or declared null and void.

21.   Ford Motor Company contends that Plaintiffs are not entitled to exemplary or punitive damages as alleged, for the reason that exemplary damages are unconstitutional and violative of the provisions of the United States Constitution and the Texas Constitution, including but not limited to the following provisions:

(a)   Proscription on excessive fines.   U. S. Constitution Amendment 8; Texas Constitution Article I, Section 13.

(b)   Requirements of Due Process.   U. S. Constitution Amendments 5 and 14; Texas Constitution Article I, Sections 13 and 19.

(c)   Requirement of Equal Protection Under the Law.   U. S. Constitution Amendments 5 and 14; Texas Constitution Article I, Sections 3 and 3a.

(d)   Proscription on Ex Post Facto and Retroactive Law.   U. S. Constitution Article I, Section 10; Texas Constitution Article I, Section 16.

22. Such punitive damages are penal in nature. Under Texas law, they are not tied to any fair, just, and reasonable relation to actual damages. Consequently, exemplary damages violate the contract clause of the U. S. Constitution, U. S. Constitution Article I, Section 10.

23.. Ford Motor Company further contends they are not responsible for any of Plaintiffs' damages in that there is and there will not be any expert testimony that the Defendants were negligent in the manufacture, design and/or marketing of the tires in question.

24. Specifically, Ford Motor Company contends that Defendants' experts are qualified to render expert opinions in that they have been acquainted for many years with proper evaluation of other similar incidents.

25. Ford Motor Company further contends that their   have the necessary expertise to analyze and give opinions regarding the design, manufacturing and marketing of the vehicle involved in this case.

26. Ford Motor Company further contends that their   experts are basing their opinions on engineering, training and experience. They have the opinion that there has been no evidence presented to-date by which an engineer evaluating Plaintiffs' claims in this case to the standard of reasonable engineering or scientific probability could, using any reliable methodology, offer the opinion that the vehicle at issue contain a design or manufacturing defect, breach of an express or implied warranty and/or resulted in a violation of the Texas Deceptive Trade Practices Consumer Protection Act.

27. Ford Motor Company further  contends that Ford Motor Company's design and manufacturing processes are the result of innovated research and development.

28. Ford Motor Company further contends that in their expert opinions and based on engineering and training and experience and the materials provided by Plaintiffs in this case. That the Plaintiffs have failed to put forward any evidence and will not be able to put forth any evidence to rule out or discount other possible or even more likely causes of tire failure.

29. Defendants contest all of Plaintiffs' contentions.


## DEFENDANT GABRIEL DELGADO'S CONTENTIONS AND/OR ALTERNATIVE CONTENTIONS

1. This Defendant denies that he was negligent and contends that Plaintiffs' alleged injuries and damages were proximately caused, by the negligence and culpable conduct of Defendant Ford Motor Company.

2. This Defendant contends that Plaintiffs' alleged injuries and damages were caused or contributed to, in whole or in part, by a party for whom this Defendant is not responsible.

3.   This Defendant contends, in the alternative, that the accident made the basis of this lawsuit was an unavoidable accident not proximately cause by the negligence of any party to this lawsuit.

4.   This Defendant contends that Plaintiffs are not entitled to recover punitive damages in this case since this Defendant's conduct at all times relevant demonstrated reasonable care.

5.   This Defendant contends that the provisions of §33.013 of the Texas Civil Practices & Remedies Code in the unlikely event that liability is established by the Plaintiffs in this cause.

6.   This Defendant contends that they are not liable for exemplary damages and plead affirmatively the provisions of Chapter 41, of the Texas Civil Practices & Remedies Code, including the provisions on applicability, standards for recovery, preclusion's, prejudgment interest, and limitations on amount.

7.   This Defendant contends that an award of punitive damages in this case would violate the procedural due process guaranteed by the Constitution of the United States. Texas Law, and the instructions given to the jury, are vague and standardless as to whether and how much to punish Defendant, and is likely to produce arbitrary and capricious results. Therefore, any award of punitive damages should be disallowed, or declared null and void.

8.   This Defendant contends that Plaintiffs are not entitled to exemplary or punitive damages as alleged, for the reason that exemplary damages are unconstitutional and violative of the provisions of the United States Constitution and the Texas Constitution, including but not limited to the following provisions:

   (a)   Proscription on excessive fines.   U. S. Constitution Amendment 8; Texas Constitution Article I, Section 13.

   (b)   Requirements of Due Process.  U. S. Constitution Amendments 5 and 14; Texas Constitution Article I, Sections 13 and 19.

   (c)   Requirement of Equal Protection Under the Law.  U. S. Constitution Amendments 5 and 14; Texas Constitution Article I, Sections 3 and 3a.

   (d)   Proscription on Ex Post Facto and Retroactive Law.  U. S. Constitution Article I, Section 10; Texas Constitution Article I, Section 16.

9.   This Defendant contests all of Plaintiffs' contentions.

# VI.

## ADMISSIONS OF FACT

1. That Plaintiffs Ortensia G. Lopez, Ruben Ruiz and Mauricio Saldana were involved in an accident on or about May 16, 1998.

2. That Defendant Gabriel Delgado was driving the 1979 Ford Club Wagon involved in the accident which occurred on May 16, 1998.

3. That Defendant Ford Motor Company designed and manufactured the 1979 Ford Club Wagon.

# VII.

## CONTESTED ISSUES OF FACT

1. Whether or not the accident occurred in Raymondville, Willacy County, Texas.

2. Whether or not Gabriel Delgado was negligent with regard to the operation of the 1979 Ford Club Wagon at the time of the accident made the basis of this lawsuit.

3. Whether or not the accident made the basis of this lawsuit was caused, in whole or in part, by third parties over whom Defendants had no control.

4. Whether or not the accident made the basis of this lawsuit was an unavoidable accident not proximately caused by the negligence of any party of this lawsuit.

5. Whether any or all of the Plaintiffs' injuries and damages were proximately caused by the negligent conduct of third parties over whom Defendants had no control.

6. Whether or not Defendant Ford Motor Company was negligent with regard to the sale, design and/or manufacture of the 1979 Ford Club Wagon.

7. Whether or not the warranties offered when the vehicle in question was purchased is limits the liability of the sellers and manufacturers.

8. Whether or not Plaintiffs' claims relating to breach of warranty are barred by the statute of limitations.

9. Whether or not any parts and/or components of the rear axle assembly of the vehicle in questions was negligently replaced.

10. Whether or not Plaintiffs' are entitled to recover any sum for violation of the Texas Deceptive Trade Practices Act.

11. Whether or not Plaintiffs failed to mitigate the effect of their alleged injuries and damages as required by law.

12. Whether or not Plaintiffs' damages resulting from the negligence of third parties are barred or diminished from recovery under the applicable provisions of law.

13. Whether or not Plaintiffs Ortensia G. Lopez, Ruben Ruiz and Mauricio Saldana were injured as a result of the accident made the basis of this lawsuit. The amount of the damages sustained by these Plaintiffs as a result of the accident made the basis of this lawsuit.

14. Whether or not Plaintiffs are entitled to recover punitive damages as a result of the accident made the basis of this lawsuit.

15. Whether or not there was a defect at any time prior to May 16, 1998, on the 1979 Ford Club Wagon.

## VIII.

## EXHIBITS

Defendant Ford has attached a copy of its anticipated exhibit list. The parties anticipate viewing and/or exchanging exhibit lists and providing the Court a copy at the time of trial. The parties will mark their own exhibits prior to trial..

## IX.

## WITNESSES

1. Linda Coy
   P.O. Box 330888
   Houston, Texas 77233
   TEL/ (713) 734-2646

2. Luis Ayala
   P.O. Box 330888
   Houston, Texas 77233
   TEL/ (713) 734-2646

3. Isela Rodriguez
   P.O. Box 330888
   Houston, Texas 77233
   TEL/ (713) 734-2646

4.     Librado (Lee) Ayala
       Inmate #704805
       Wynn Unit
       Huntsville, Texas 77349
       TEL/ (936) 295-7381

5.     Gabriel Delgado
       7934 Avenue F
       Houston, Texas 77002
       TEL/ (713) 923-8789

6.     Valerie Vasquez
       5130 5th Street
       Katy, Texas 77450
       TEL/ (281) 391-9415

7.     Javier Lizcano
       1404 Pecan
       Pasedena, Texas 77506
       telephone unknown

8.     Guamaro Munguia
       Baytown, Texas
       TEL/ (281) 420-9734

9.     Graciela Garza Rojas
       5306 Hentler Crest
       Houston, Texas 77045

10.    Ruben Ruiz
       633 Lawndale
       Brownsville, Texas 78521

11.    Mauricio Saldana
       8415 Nevada
       Brownsville, Texas 78521

12.    Officer Mark Chavez, Id. No. 9086
       Texas Department of Public Safety
       Raymondville, Texas
       TEL/ (956) 689-5939

13.    DeWitt S. Davenport, M.D.
       Valley Baptist Medical Center Pathology
       2101 Pease Street
       Harlingen, Texas 78550

TEL/ (956) 389-1100

14.    Rex B. McLellan, Ph.D., P.E.,
       2153 Swift
       Houston, Texas 77030
       TEL/ (713) 661-0113

15.    Custodian of Records
       Valley Baptist Medical Center
       2101 Pease Street
       Harlingen, Texas 78550
       TEL/ (956) 389-1100

16.    Dr. Herald Walton
       Bayshore Family Practice Center, P.A.
       3801 Vista, Suite 100
       Pasadena, Texas 77504

17.    Custodian of Records
       Bayshore Family Practice Center, P.A.
       3801 Vista, Suite 100
       Pasadena, Texas 77504

18.    Custodian of Records
       Health South Therapy
       4655 Sweetwater, Suite 450
       Sugarland, Texas 77479
       TEL/ (281) 277-1330

19.    Custodian of Records
       Valley Diagnostic Clinic
       P.O. Box 523007
       Harlingen, Texas 78553-2007
       TEL/ (956) 425-7200

20.    Custodian of Records
       Valley Air Care
       2733 South 77 Sunshine Strip
       Harlingen, Texas 78553
       TEL/ (956) 364-2711

21.    V.A. Benavides, M.D.
       2121 Pease Street, Suite 2B
       Harlingen, Texas 78550
       TEL/ (956) 412-3878

22.   Custodian of Records
      Dr. V. Antonio Benavides
      2121 Pease Street, Suite 2B
      Harlingen, Texas 78550
      TEL/ (956) 412-3878

23.   Dr. Harry Butters
      Valley Baptist Medical Center
      2101 Pease Street
      TEL/ (956) 389-1100

24.   Dr. Edward L. Mason
      Valley Baptist Medical Center
      2101 Pease Street
      TEL/ (956) 389-1100

25.   Custodian of Records
      Emcare-Har Emerg. Physicians
      P.O. Box 13826
      Philadelphia, PA 19101-3826
      TEL/ (800) 355-2470

26.   Custodian of Records
      South Texas Emergency Care Foundation, Inc.
      P.O. Box 533668
      1705 Vermont
      Harlingen, Texas 78553-3668
      TEL/ (956) 362-2711

27.   Custodian of Records
      Valley Radiologists & Associates
      1616 Ed Carey Drive
      Harlingen, Texas 78551
      TEL/ (956) 423-6496

28.   Custodian of Records
      Willacy County Emergency Medical Service
      347 E. Hidalgo Ave.
      Raymondville, Texas
      TEL/ (956) 689-5456

29.   Javier Loredo
      Martinez & Barrera, L.L.P.
      1201 E. Van Buren
      Brownsville, Texas 78520
      TEL/ (956) 440-7152

30.     Dr. Richard Harding
        Biodynamic Research Corporation
        9901 IH-10 West, Suite 1000
        San Antonio, Texas 78230
        TEL/ (210) 691-0281

31.     Dr. Ed Martinez
        Automotive Research Consultants, Ltd.
        3301 Longmire
        College Station, TX 77845-5811
        TEL/ (409) 764-7780

32.     Dr. Juan Herrera
        Met Tech, Inc.
        484 Timberoaks
        El Paso, Texas

33.     Larry Makowski
        Design Analysis Engineer
        Ford Motor Company
        604 Parklane Towers
        Dearborn, MI 48126

34.     Jeffrey D. Roerig
        D. Alan Erwin, Jr.
        Roerig, Oliveira & Fisher, L.L.P.
        855 West Price Road, Suite 9
        Brownsville, Texas 78520-8786
        TEL/ (956) 542-5666

35.     Tony Martinez
        Benigno (Trey) Martinez
        1201 E. Van Buren
        Brownsville, Texas 78520
        TEL/ (956) 546-7159

36.     Eduardo Roberto Rodriguez
        Joseph A. (Tony) Rodriguez
        Rodriguez, Colvin & Chaney, L.L.P.
        1201 E. Van Buren
        Brownsville, Texas 78522
        TEL/ (956) 542-7441

## STATEMENT

If other witnesses to be called at trial become known, their names and addresses will be reported to opposing counsel as soon as they are known: this does not apply to rebuttal or impeachment witnesses.

## X.

## SETTLEMENT

Two settlement demands have been made to Defendant Delgado and one settlement offer has been made by Defendant. Defendant Ford has not received a settlement demand from Plaintiffs and therefore settlement efforts have not been exhausted at this time.

## XI.

## TRIAL

The probable length of trial is <u>five</u> working days. All witnesses will testify either live or by deposition. At this time, the Defendants do anticipate requiring the use of video or audio tape equipment.

## XII.

## ATTACHMENTS

The following are attached:

Defendant Gabriel Delgado's Proposed Jury Charge and Instructions.

Defendant Gabriel Delgado's Motion in Limine.

Defendant Ford Motor Company's Motion in Limine.

Defendant Ford Motor Company's Exhibit List

Defendant Ford Motor Company's Proposed Voir Dire Questions

Defendant Ford Motor Company's Brief In Support of It's Motion in Limine To Exclude Evidence of Other Accidents and Incidents

Defendant Ford Motor Company's Memorandum of Law In Support of Its Motion in Limine to Exclude Evidence of Prior Punitive Damages, Verdicts or Judgments Against Ford

Defendant Ford Motor Company's Memorandum of Law In Support of Its Motion in Limine to Exclude All Evidence of and Reference to Ford's 1973 Violation of the Clean Air Act

Defendant Ford Motor Company's Brief in Support of Its Motion In Limine To Exclude Testimony Interpreting Documents Produced by Ford as Evidence of Ford's Knowledge or Intent

Defendant Ford Motor Company's Memorandum of Law Supporting its Motion In Limine to Exclude Evidence of a Meeting Between the President of the United States and Representatives of Ford Motor Company on April 27, 1971

Defendant's Memorandum of Law Supporting Its Motion in Limine Respecting Ford Motor Company's Wealth, Size, Sales of Other Vehicles, Sales Outside of Texas

Defendant Ford Motor Company's Requested Jury Instructions

Defendant Ford Motor Company's Requested Jury Instructions on Punitive Damages

Defendant Ford Motor Company's Proposed Verdict Form Interrogatories to the Jury

DATE: _____          _____
                                          UNITED STATES DISTRICT JUDGE

**APPROVED:**

DATE: _____          _____
                                          ATTORNEY-IN-CHARGE, PLAINTIFFS

DATE: _____          _____
                                          ATTORNEY-IN-CHARGE, DEFENDANT
                                          FORD MOTOR COMPANY

DATE: _____          _____
                                          ATTORNEY-IN-CHARGE, DEFENDANT
                                          GABRIEL DELGADO

**PRETRIAL ORDER**
maryb\motions\21833 pretrial order

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| LINDA COY, Individually and On Behalf of the Estate of ORTENSIA G. LOPEZ, Deceased, LUIS AYALA; ISELA RODIGUEZ; LIBRADO AYALA JR.; RUBEN RUIZ; and MAURICIO SALDANA | §<br>§<br>§<br>§<br>§<br>§<br>§ | |
| | § | **CIVIL ACTION NO. B-00-139** |
| VS. | §<br>§ | |
| FORD MOTOR COMPANY and GABRIEL DELGADO | §<br>§<br>§ | |

## FORD MOTOR COMPANY'S MOTION IN LIMINE

Defendant Ford Motor Company files this motion and asks the Court to issue an order *in limine* excluding all evidence of, and all comment by, any attorney, party, or witness about the matters enumerated below. Alternatively, Ford requests an order instructing and directing all attorneys, parties, and witnesses to bring up all such enumerated matters with the Court, out of the presence of the jury and jury panel, so that the Court may determine the relevance and admissibility of such matters before they are injected into the case in the presence of the jury or jury panel.

1.    Any evidence of alleged damages to Plaintiffs, including: past and future loss of pecuniary contributions, services, society, and companionship; impairment to their marital relationships; loss of consortium; and mental anguish.

Granted _____Denied _____

2.    Any testimony from Dr. Rex McLellan regarding whether the rear axle at issue in this lawsuit was defectively designed or marketed.

Granted _____Denied _____

3.     Evidence, argument or testimony suggesting that the mere fact that Plaintiffs were injured constitutes a violation of the Federal Motor Vehicle Safety Standards.   The

standards do not set forth requirements relating to the occurrence of particular injuries in particular accidents. The standards set forth specific performance criteria measured under specified test conditions.

Granted _____Denied _____

4.      Any reference to the "spirit" of the Federal Motor Vehicle Safety Standards or allegations that Plaintiffs' injuries resulted because Ford violated the "spirit" of the Federal Motor Vehicle Safety Standards or that Plaintiffs' injuried resulted because the Federal Motor Vehicle Safety Standards set only "minimum" standards. These standards consist of detailed, specific provisions concerning the permissible types of occupant restraint systems and the performance requirements in specified tests for vehicles and occupant restraint systems. *See, e.g.*, FMVSS 208 S.5.1 (setting forth specific crash test performance criteria). When Ford complied with the letter of the standards, there is no basis to suggest that Ford violated some vague, unspecified "spirit" of the standards, and classifying the standards as "minimum" is more prejudicial than probative and threatens to confuse the jury.

Granted _____Denied _____

5.      Evidence of all prior accidents involving Ford vehicles that are not substantially similar to the accident and vehicle at issue in this case. In particular, Ford seeks to exclude any mention of other accidents, including those in which a rear axle was alleged to be defective, unless Plaintiffs first offer proof outside the presence of the jury of substantial similarity as required by applicable law. Ford has filed a Memorandum of Law regarding this issue and incorporates the arguments contained therein.

Granted _____Denied _____

6.      Asking any witness or eliciting any testimony from witnesses that calls upon them to compare video tapes, films, or photographs of other accidents or crash tests with the accident that is the subject of this lawsuit, unless the other accident or crash test is first shown by Plaintiffs, out of the jury's presence, to be substantially similar to the accident

that is the subject of this lawsuit. Information of such other accidents or crash tests is not relevant and the probative value, if any, of such information is substantially outweighed by the danger of unfair prejudice to Ford, confusion of the issues, and misleading the jury. *See Gladhill v. General Motors Corp.*, 743 F.2d 1049, 1051 (4th Cir. 1984) (excluding video of crash tests because circumstances were not close enough to actual crash); *Hinkle v. City of Clarksburg*, 81 F.3d 416, 424-25 (4th Cir. 1996) (excluding computer-animated videotape evidence purporting to recreate events at issue, but not substantially similar to the actual events).

Granted _____Denied _____

7.      Evidence criticizing or alleging defects in any Ford vehicles other than the 1979 Ford Club Wagon, including recall campaigns and government communications regarding such other vehicles. Such information is not relevant and the probative value, if any, of such information is substantially outweighed by the danger of unfair prejudice to Ford, confusion of the issues, and misleading the jury. FED. R. EVID. 402, 403

Granted _____Denied _____

8.      Any reference to failure to recall or modify or failure to warn of any alleged defect after the original sale of the vehicle at issue in this crash. Such information is not relevant and the probative value, if any, of such information is substantially outweighed by the danger of unfair prejudice to Ford, confusion of the issues, and misleading the jury. *See, e.g., Syrie v. Knoll International*, 748 F.2d 304, 311-12 (5th Cir. 1984) ("Because Texas does not impose on manufacturers the duty to warn about or to recall products for which a safer design has been developed, we find that the district court did not err in refusing to instruct the jury on negligence regarding a manufacturer's post-marketing failure to warn or recall.").

Granted _____Denied _____

9.      Evidence of any other lawsuits, settlements, prior punitive damage verdicts, or judgments involving Ford, including, but not limited to, those judgments listed in

AUS:1849597.1
31102.94425

Plaintiffs' exhibit list. Ford makes this motion on the following grounds: (1) details of other accidents, claims, actions, settlements, or judgments are irrelevant to the issues in this case; (2) any probative value of evidence of details of other accidents, claims, actions, settlements, or judgments may have is substantially outweighed by the prejudice, confusion, and prolongation of the trial that their admission into evidence would cause; (3) allegations, settlements, awards, or judgments associated with other accidents, claims, or actions constitute inadmissible hearsay; and (4) allegations, settlements, awards, or judgments constitute inadmissible opinion evidence. In support of this motion, Ford relies upon its Memorandum of Law regarding the exclusion of other prior accidents and has filed a Memorandum of Law regarding prior damage awards and incorporates the arguments contained therein.

Granted _____Denied _____

10.   Evidence of Ford's 1973 conviction, pursuant to a plea of *nolo contendere*, for violations of the federal Clean Air Act, including any reference to conspiracies or cover-up theories regarding Ford allegedly lying to the Government or hiding information or documents. Ford makes this motion on the following grounds:  (1) evidence of the conviction is irrelevant to the issues in this case; (2) evidence of the conviction constitutes improper character evidence; (3) the probative value of any evidence of the conviction is outweighed by its potential to mislead and confuse the jury; and (4) evidence of the conviction constitutes improper impeachment evidence. Ford has filed a Memorandum of Law on this issue and incorporates it herein.

Granted _____Denied _____

11.   Evidence of a meeting that occurred on April 27, 1971, among President Richard M. Nixon, presidential advisor John D. Ehrlichman, Ford Chairman Henry Ford II, and Ford President Lee A. Iacocca, including any transcript of such meeting and the transcript of any deposition of Henry Ford II or John Ehrlichman. Ford has filed

Memoranda of Law regarding this issue and incorporates the arguments contained therein.

Granted _____ Denied _____

12.    Testimony by individuals who have never worked at Ford, interpreting Ford documents as evidence of "Ford's" state of mind. Ford also moves *in limine* to exclude plaintiffs' witnesses from testifying about the meaning or contents of Ford documents that are inadmissible or have not been admitted into evidence, or that can be understood by the jury without expert assistance. Ford makes this motion on the following grounds: (1) the admission of such testimony would violate FED. R. EVID. 702 because plaintiffs' witnesses have no scientific, technical or other specialized knowledge about Ford, its decision-making process, or its employees, and thus are not qualified to express an expert opinion about Ford's knowledge or intent; (2) testimony about documents that are not admissible or have not been admitted into evidence violates the "best evidence" rule; and (3) the probative value, if any, of such testimony is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, and by considerations of undue delay. Ford has filed a Memorandum of Law on this issue and incorporates it herein.

Granted _____ Denied _____

13.    Any reference to the size, wealth, financial condition, net worth, profit information or vehicle sales of Ford Motor Company. Ford makes this motion on the following grounds: (1) evidence of financial information other than the profit and income derived by Ford from its decision to use the particular features Plaintiffs claims to be defective in the 1979 Ford Club Wagon Van is irrelevant to any issue in this case, including the amount of punitive damages supposedly necessary to deter Ford from the alleged misconduct in the future, or to punish Ford for its alleged misconduct; (2) the probative value of broad financial evidence is outweighed by the substantial danger that such evidence will unduly prejudice Ford, and confuse or mislead the jury; and (3) the

introduction of such evidence would be fundamentally unfair to Ford, and thus would violate due process. Ford has filed a Memorandum of Law on this issue and incorporates it herein.

Granted _____Denied _____

14.    Evidence of the statutory limit on the recovery of punitive damages imposed by Federal Civil Practice and Remedies Code § 41.008. Such information is not relevant and the probative value, if any, of such information is substantially outweighed by the danger of unfair prejudice to Ford, confusion of the issues, and misleading the jury. FED. R. EVID. 402, 403.

Granted _____Denied _____

15.    Evidence of what Plaintiffs may do with any award of compensatory or punitive damages that they may receive, and evidence of what the Plaitniffs' attorneys may do with fees they receive, including whether they plan to assign all or part of the punitive damages award they seek to some group. Such information is not relevant and the probative value, if any, of such information is substantially outweighed by the danger of unfair prejudice to Ford, confusion of the issues, and misleading the jury. FED. R. EVID. 402, 403.

Granted _____Denied _____

16.    Any reference to any advertisements of any kind whatsoever, on the radio or television or in newspapers or magazines, in which there is a reference to large settlements, jury verdicts, insurance companies, anyone being a loser as a result of a large jury verdict, or any reference to ads similar in nature to these. Such information is not relevant and the probative value, if any, of such information is substantially outweighed by the danger of unfair prejudice to Ford, confusion of the issues, and misleading the jury. FED. R. EVID. 402, 403.

Granted _____Denied _____

17.     Any reference to the number, size, location, or residence of Ford's counsel's law firms or to the residence of Ford's counsel, in the presence of the jury, or stating in the jury's presence that Ford's counsel specializes in defending product liability cases or cases involving seat belts, or that Ford's counsel is supervising, coordinating, regional, or national counsel for Ford or for some other automobile manufacturer. Such information is not relevant and the probative value, if any, of such information is substantially outweighed by the danger of unfair prejudice to Ford, confusion of the issues, and misleading the jury. FED. R. EVID. 402, 403.

Granted _____Denied _____

18.     Any reference to or comment on the possibility that Ford's counsel may report back or notify someone about the outcome of the case or that the jury verdict will be known to anyone other than the parties to the case. Such information is not relevant and the probative value, if any, of such information is substantially outweighed by the danger of unfair prejudice to Ford, confusion of the issues, and misleading the jury. FED. R. EVID. 402, 403.

Granted _____Denied _____

19.     Any reference to other well-known product liability cases, such as breast implants, Dalkon Shield, Ford Pinto, GM Side Saddle Tank Pickup Trucks, etc. These are not relevant, but rather are highly prejudicial to Defendants and thus are in violation of FED. R. EVID. 403.

Granted _____Denied _____

20.     Any demand, request, or challenges that attorneys for Defendants produce documents or instruments contained in the files of Defendants or their attorneys or offer to stipulate to any fact, or make any sort of agreement, in the presence of the jury, or any statement or inference that certain documents or information were requested by Plaintiffs and not provided by Defendants, or any allegations by Plaintiffs or Plaintiffs' counsel that Defendants have in any way engaged in misconduct in this or any other

case in the discovery phase since all discovery issues are a matter for the Court, and any mention of discovery or objections to discovery is irrelevant. This Motion in Limine also specifically includes reading to the jury discovery objections made by Ford in response to written discovery. FED. R. EVID. 401, 402, 403.

Granted _____Denied _____

21.     Any reference to whether Ford or Ford's counsel have declined to stipulate to any fact or have declined to agree to anything requested or demanded by Plaintiffs or by Plaintiffs' counsel. Any such reference or comment would be irrelevant, confusing to the jury and unduly prejudicial to Ford. FED. R. EVID. 401, 403.

Granted _____Denied _____

22.     Any offer of settlement or compromise made on behalf of Defendants to Plaintiffs, or on behalf of Plaintiffs to Defendants, and/or any comments by any employee or agent of Ford regarding any proposed settlement or settlement process in this *or any other case*. This Motion in Limine extends to comments such as, "Ford settled that case," thereby improperly asking the jury to equate settlement with admitted liability. FED. R. EVID. 401, 402, 403, 408.

Granted _____Denied _____

23.     Any request made to Ford's counsel or to any Ford witness in front of the jury to produce any information or documents contained in Ford's or Ford's counsel's files.

Granted _____Denied _____

24.     Any statements by Plaintiffs' counsel regarding their personal beliefs or opinions about the case, the justice of the Plaintiffs' case, or the Plaintiffs' right to recover damages in this case. TEX. R. CIV. P. 269(e) and 269(f); Sunrizon Homes, Inc. v. Fuller, 747 S.W.2d 530 (Tex. App.-- San Antonio 1988, writ denied) (remarks of attorney during the course of trial do not constitute evidence); National Union Fire Ins. Co. v. Soto, 819 S.W.2d 619 (Tex. App.--El Paso 1991, writ denied) (counsel are admonished to keep their arguments within appropriate parameters, avoiding personal criticism of

opposing counsel and refraining from sidebar remarks); <u>Wallace v. Liberty Mut. Ins. Co.</u>, 413 S.W.2d 787, 790 (Tex. Civ. App.--Houston 1967, writ ref'd n.r.e.); TEX. DISCIPLINARY RULES OF PROF. CONDUCT, Rule 304(c) (1989), reprinted in TEX. GOV'T CODE ANN., title 2, subtitle G app. (Vernon Supp. 1992 (State Bar Rules art. X, § 9).

Granted _____Denied _____

25.   Any reference to or comment upon the fact that Ford may not have a representative at trial at any particular time or that Ford is aware that Plaintiffs would like to have a certain Ford witness present during their case-in-chief.

Granted _____Denied _____

26.   Reading or playing anything included in deposition transcripts or trial transcripts other than questions by the lawyers and answers by the witnesses, specifically comments or sidebar remarks by the lawyers.

Granted _____Denied _____

27.   Any testimony or reference to a tire "blow out" or "tread separation" in the Ford 1994 F-350.  No proof has been shown that there was any such tire problem or that it had any causative role in the accident.

Granted _____Denied _____

Ford requests that all aspects of this motion *in limine* be granted.

Respectfully submitted,

RODRIGUEZ, COLVIN & CHANEY, L.L.P.


By: _____
            Eduardo Roberto Rodriguez
            State Bar No. 17144000
            Joseph A. (Tony) Rodriguez
            State Bar No. 17146600
            1201 East Van Buren
            Post Office Box 2155
            Brownsville, Texas 78522
            (956) 542-7441
            Fax (956) 541-2170

ATTORNEYS FOR DEFENDANT,
FORD MOTOR COMPANY

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing was served upon all counsel of record, to-wit:

Tony Martinez
Trey Martinez
Martinez & Barrera, L.L.P.
1201 East Van Buren
Brownsville, Texas 78520
Attorneys for Plaintiffs

Jeffrey D. Roerig
D. Alan Erwin
Roerig, Oliveira & Fisher, L.L.P.
855 West Price Road, Suite 9
Brownsville, Texas 78520
Attorneys for Defendant, Gabriel Delgado

by certified mail, return receipt requested, facsimile transmission, and/or hand delivery pursuant to the Texas Rules of Civil Procedure on this the _____ day of _____, 2001.


_____
Joseph A. (Tony) Rodriguez

AUS.1849597.1
31102.94425

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| LINDA COY, Individually and On Behalf of the Estate of ORTENSIA G. LOPEZ, Deceased, LUIS AYALA; ISELA RODIGUEZ; LIBRADO AYALA JR.; RUBEN RUIZ; and MAURICIO SALDANA<br><br>VS.<br><br>FORD MOTOR COMPANY and GABRIEL DELGADO | §<br>§<br>§<br>§<br>§<br>§ CIVIL ACTION NO. B-00-139<br>§<br>§<br>§<br>§<br>§ |

## DEFENDANTS' EXHIBIT LIST

| EX. NO. | DESCRIPTION | MARKED | OFFERED | OBJECT | ADMIT | DATE | Dispo-sition after trial |
|---|---|---|---|---|---|---|---|
| | Accident Report | | | | | | |
| | 1979 Ford Car and Truck "Sales Data Book" | | | | | | |
| | 1979 Light Truck Shop Manual Driving Axles and Drive Shafts Group | | | | | | |
| | 1979 Econoline Sales Brochure | | | | | | |
| | Organizations Directory | | | | | | |
| | Owner's Guide | | | | | | |
| | Organizational Planning Personnel and Organization Staff dated 10/16/79 | | | | | | |
| | Organizational Planning Personnel and Organization Staff dated 01/0179 | | | | | | |
| | Limited Warranty Booklet | | | | | | |
| | FPS-365-10879-A Dated 7/78 | | | | | | |
| | 1979 Ford Econoline Advertising | | | | | | |
| | Photographs taken by Larry Makowski at Vehicle Inspection | | | | | | |
| | Photographs taken by Dr. Juan Herrera at Vehicle Inspection | | | | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| | Photographs taken by Dr. Richard Harding at Vehicle Inspection | | | | | |
| | Medical and billing records of Valley Baptist Medical Center regarding Hortensia Vasquez | | | | | |
| | Medical and billing records of Valley Radiologist and Associates regarding Hortensia Vasquez | | | | | |
| | Pathology report and slides from Valley Baptist Medical Center regarding Hortensia Vasquez | | | | | |
| | Medical and billing records of Bayshore Family Practice Center regarding Ruben Ruiz | | | | | |
| | Medical and billing records of Health South Therapy regarding Ruben Ruiz | | | | | |
| | Medical and billing records of V.A. Benavides, M.D. regarding Ruben Ruiz | | | | | |
| | Medical and billing records of Valley Air Care regarding Ruben Ruiz | | | | | |
| | Medical and billing records of Valley Baptist Medical Center regarding Ruben Ruiz | | | | | |
| | Medical and billing records of Valley Diagnostic Clinic regarding Ruben Ruiz | | | | | |
| | Medical and billing records of Valley Radiologist & Associates regarding Ruben Ruiz | | | | | |
| | Medical and billing records of Willacy County EMS regarding Ruben Ruiz | | | | | |
| | Medical and billing records of Emcar-Har Emergency Physicians regarding Ruben Ruiz | | | | | |
| | Any and all x-ray films obtained regarding Plaintiffs | | | | | |
| | X-ray films from Valley Baptist Medical Center regarding Ruben Ruiz | | | | | |
| | Expert Report of Dr. Juan Herrera | | | | | |
| | Expert Report of Dr. Richard Harding | | | | | |
| | Expert Report of Larry Makowski | | | | | |
| | Deposition of Ruben Ruiz | | | | | |
| | Deposition of Linda Coy | | | | | |
| | Deposition of Isela Rodriguez | | | | | |
| | Deposition of Luis Ayala | | | | | |
| | Deposition of Librado Ayala | | | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| | Deposition and Exhibits of Dr. Juan Herrera | | | | | |
| | Deposition and Exhibits of Dr. Richard Harding | | | | | |
| | Deposition and Exhibits of Larry Makowski | | | | | |
| | Deposition and Exhibits of Dr. Rex McLellan | | | | | |
| | The actual component parts inspected by Defendants' experts Dr. Juan Herrera, Dr. Richard Harding and Larry Makowski at their respective vehicle inspections | | | | | |
| | Exemplar component parts | | | | | |
| | 1979 Ford Club Wagon | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

LINDA COY, Individually and On        §
Behalf of the Estate of ORTENSIA G.   §
LOPEZ, Deceased, LUIS AYALA;          §
ISELA RODIGUEZ; LIBRADO AYALA         §
JR.; RUBEN RUIZ; and MAURICIO         §
SALDANA                               § CIVIL ACTION NO. B-00-139
                                      §
VS.                                   §
                                      §
FORD MOTOR COMPANY and                §
GABRIEL DELGADO                       §

## DEFENDANT FORD MOTOR COMPANY'S PROPOSED VOIR DIRE QUESTIONS

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

COMES NOW, FORD MOTOR COMPANY, a Defendant herein, and in response to the requirements of this Court's Pre-trial Order makes and files this list of Requested Voir Dire Questions, as follows:

1.      Does any potential juror know the Plaintiffs or any of the individuals listed on the Plaintiffs' witness list?  If so, in which person(s) do you know and in what way do you know that person?

2.      Does every potential juror understand that anyone can file a lawsuit and the mere filing of a lawsuit does not change the fact that the party with the burden of proof must prove each element of the case he is attempting to make by the standard of a preponderance of the credible evidence ?

3.      Is any potential juror acquainted with any lawyers or staff with the law firm of Martinez & Barrera,  and has anyone has been represented by that firm?

4.      Does any potential juror or any close family members have legal education?  Are any members of your family or close friends an attorney?  What type of

law does he or she practice? Where do they practice? What is his or her name? Is there anything about that experience that would influence your service in this case?

5.  Does anyone have any training or experience in engineering, vehicle design, auto mechanics, or related fields? What is that training or experience? Where did you receive it?

6.  Has any potential juror or any close family members ever been involved in any accident involving a Ford vehicle other than a fender-bender? What were the circumstances of the accident? What kind of injuries were suffered? For such persons, is there anything about that experience that would make the potential juror more likely to feel a leaning toward the Plaintiffs' case that would make it difficult to be fair and impartial?

7.  Has any potential juror or any close family members ever been involved in any accident involving any kind of vehicle whatsoever? What were the circumstances of the accident? What kind of injuries were suffered?  For such persons, is there anything about that experience that would make the potential juror more likely to feel a leaning toward the Plaintiffs' case that would make it difficult to be fair and impartial?

8.  Has any potential juror or any close family members ever been killed due to an auto accident? For such persons, is there anything about that experience that would make the potential juror more likely to feel a leaning toward the Plaintiffs' case that would make it difficult to be fair and impartial?

9.  Since Plaintiffs have suffered permanent injuries, is there anyone who thinks that they would be overwhelmed enough by sympathy for Plaintiffs that they would not be able to be fair to Ford? Does everyone instead pledge to be fully fair to Ford and hold Plaintiff to his burden of proof on all of his issues, despite the emotion that his injury will make you feel?

10.     Has any potential juror or any close family members ever been a party to any lawsuit or have made a claim against anyone regarding injuries? Have you or any member of your family ever hired an attorney?     What was the reason? What was the outcome of the matter? For each juror who has indicated that he or she has been a party to a lawsuit: Were you a plaintiff or a defendant?  Was the lawsuit settled or did it go to trial?  Were you satisfied with the result of your case?  Was there anything about that experience that would influence your service in this case?

11.     Has any potential juror or any close family members ever served on a jury before?  If yes, how many times?  Criminal -- Civil -- Grand Jury?  What was the nature of the case?  Was a decision reached?  Were you comfortable with the decision that was reached? Was there anything about that experience that would influence your service in this case?

12.     Does everyone understand that any person or company can bring a lawsuit simply by filing the papers and paying the filing fee?

13.     Does everyone understand that they will have to promise not to make up their mind about the case until all the evidence is in, and to wait until Ford has had its opportunity to prevent evidence to determine what happened in this case?

14.     Does everyone agree that they will hold Plaintiffs to their burden to prove every element of his case, including the amount of any damages?

15.     Does anyone have a problem being asked to judge the testimony of eyewitness testimony as against physical evidence and possibly deciding, depending upon what you believe the greater weight of the credible evidence to be, that the eyewitness testimony is incorrect?  Does anyone feel that they could never make findings different than the testimony of an eyewitness?

16.     In light of the fact that Ford Motor Company is a corporation, and in fact a large corporation, can each potential juror accept the rule of the Court that all litigants are equal under the law and treat Ford Motor Company fairly?

17.     Does everyone understand that the duty of a manufacturer is to design, manufacture and sell a reasonably safe vehicle as opposed to a vehicle in which no one can be injured?  Does anyone have any problem with an instruction that in order to find a defect in a vehicle, you must find that the product at issue is unreasonably dangerous, taking into account the utility of that product and the risks that may be involved in its use?

18.     Has anyone ever had a bad experience of any kind with a Ford vehicle?

19.     Has anyone heard or read anything in the news about Ford products or other automotive products that you believe would cause you to be less than fully fair to an auto manufacturer?

**20.     [NOTE:  This question is requested only if Ford's Motion in Limine about Firestone ATX Wilderness tires and similar matters is not granted by the Court].  Ford has been getting a lot of press lately in cases about Firestone tires on Ford Explorers that have experienced problems which have allegedly caused rollovers.  This case is about a rollover, although the tire involved is a completely different kind of tire than the Firestone tires at issue in those cases, and the vehicle involved is a completely different vehicle than a Ford Explorer.  Even so, is there anyone who thinks they would be influenced any degree whatsoever against Ford because of this publicity?**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| LINDA COY, Individually and On Behalf of the Estate of ORTENSIA G. LOPEZ, Deceased, LUIS AYALA; ISELA RODIGUEZ; LIBRADO AYALA JR.; RUBEN RUIZ; and MAURICIO SALDANA | § § § § § § § | **CIVIL ACTION NO. B-00-139** |
| VS. | § § | |
| FORD MOTOR COMPANY and GABRIEL DELGADO | § § § | |

**DEFENDANT FORD MOTOR COMPANY'S
BRIEF IN SUPPORT OF IT'S MOTION IN LIMINE TO
EXCLUDE EVIDENCE OF OTHER ACCIDENTS AND INCIDENTS**

Ford Motor Company files this Brief in Support of Exclusion of Evidence of Other Accidents and Incidents and in support would show the Court the following:

**ARGUMENT**

This is a product liability action involving a motor vehicle accident. Ford anticipates that to prove the cause of the injuries Plaintiffs will try to introduce evidence of other accidents and incidents involving Ford vehicles in the form of unauthenticated documents and hearsay claims and complaints that are inadmissible. FED. R. EVID. 801, 802, 805, 901, 902. Even if admissible despite Ford's objections, evidence of other accidents is irrelevant unless each other accident is shown to have substantially similar facts and circumstances to this accident, the proof of which will create undue delay, confusion of issues and prejudice Ford. FED. R. EVID. 401, 402, 403.

Most of the evidence offered will likely be documents. For a document to even be considered for admission it must first be authenticated. Plaintiffs must offer sufficient evidence to support a finding that the document offered is what Plaintiffs purports it to

be. FED. R. EVID. 901. Claiming that a document was produced from Ford's files is not authentication. FED. R. EVID. 902.

Furthermore, any document Plaintiffs offers of other accidents will necessarily be hearsay. In short, there is no other imaginable reason to offer evidence of another accident or incident unless it is to prove the truth of the matter asserted, i.e., that the accident occurred as described. Any document offered that claims that an accident or incident even occurred is hearsay and it is inadmissible. Furthermore, the fact that a hearsay account of an accident comes from Ford's files or was recorded in an accident report or summary of complaints does not mean that it is a business record excepted from the hearsay rule. FED. R. EVID. 801, 802, 805.

If Plaintiffs are somehow able to offer evidence of other accidents or incidents that is authenticated and is not hearsay, that evidence is irrelevant and inadmissible, whether documents or testimony, unless Plaintiffs can show that the facts and circumstances of each other accident offered are "substantially similar" to the facts and circumstances of this case. Introduction of this evidence will require a series of "mini trials," contested by Ford, in which Gonzalez must prove the substantially similarity of each other accident. FED. R. EVID. 401, 402.

Thus, even if substantially similar, evidence of other accidents must be excluded because it is likely to cause excessive time delays, it is highly prejudicial and confusing with little probative value. The Court's time will be wasted litigating peripheral issues and conducting fully contested mini trials. The jury will be confused by evidence that is unrelated to the case at hand, and Ford will be prejudiced by the cumulative and confusing nature of the evidence. FED. R. EVID. 403.

## I.   EVIDENCE OF OTHER ACCIDENTS IS INADMISSIBLE.

### A.    Unauthenticated Documents Are Inadmissible.

Even before the court determines the admissibility of a document, the document must be authenticated by extrinsic evidence, generally by testimony. FED. R. EVID. 901,

902; *Belper v. Lipson*, 905 F.2d 549, 551-52 (1st Cir. 1990) (records concerning plaintiff's injury were not supported by testimony from physician who had possession of records, nor was any evidence presented that the documents were, in fact, medical records; thus, records were not shown to be sufficiently authentic to warrant determination concerning admissibility); *First Nat'l Bank of Jefferson Parish v. M/V Lighting Power*, 851 F.2d 1543 (5th Cir. 1988) (figures on computer printout was neither self-authenticating nor authenticated by testimony of operator's president); *Touchstone v. G.B.Q. Corp.*, 596 F.Supp. 805, 812 (E.D. La. 1984). Furthermore, generally an affidavit will not suffice to authenticate a document, because the opposing party ought to have the opportunity to cross-examine the person vouching for the document. *In re Leifheit*, 53 B.R. 271, 273 (S.D. Ohio 1985).

In this case, most of the evidence Plaintiffs will offer regarding other accidents will, frankly, be impossible to authenticate. Documents that were produced from Ford in discovery require authentication.    Ford's files contain numerous warranty claims, complaint letters, evidence of lawsuits and other documents that it receives from outside sources. Ford would be hard pressed to authenticate these documents. Unless Plaintiffs can assemble the witnesses who made the complaints or claims, they will not be able to overcome the authentication hurdle (and even if they can, they face a substantial hearsay problem).

### B.    Evidence Of Other Accidents Is Inadmissible Hearsay.

Any evidence Plaintiffs attempt to introduce of other accidents purportedly involving Ford vehicles, whether contained in complaints, summaries, pleadings, or other documents, consists of nothing more than unsubstantiated allegations. Such "evidence" necessarily comprises out of court statements that Plaintiffs hope to introduce to prove the truth of the matters asserted. In short, it is inadmissible hearsay. FED. R. EVID. 802.

The Federal Rules of Evidence define "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to

prove the truth of the matter asserted." FED. R. EVID. 801(c). Hearsay evidence is generally inadmissible because the person making the statement is not subject to the scrutiny of the jury, not under the oath, and not available for cross-examination by the opposing party. *McCormick on Evidence* at 726-29, § 24 (3d ed. 1984); FED. R. EVID. 802. Any documentary evidence offered to prove the truth of out of court statements or arguments or remarks of counsel regarding such evidence, is inadmissible hearsay. FED. R. EVID. 801, 802.

It is a well established principle of law that statements made in the pleadings of unrelated lawsuits are hearsay, with no probative force or evidentiary value. *See e.g., Johnson v. Ford Motor Co.*, 988 F.2d 573, 578-79 (5th Cir. 1993) (summaries of lawsuits and claims held inadmissible hearsay); *Roberts v. Harnischfeger Corp.*, 901 F.2d 42, 44-5 (5th Cir. 1989) (summaries of complaints or lawsuits are hearsay even if in a sworn affidavit); *Barker v. Norman*, 651 F.2d 1107, 1128 (5th Cir. 1981) (statements in sworn pleadings and affidavits held to be hearsay); *Century "21" Shows v. Owens*, 400 F.2d 603, 609 (8th Cir. 1968) (pleading from unrelated case was inadmissible hearsay); *Stevenson v. Hearst Consol Publications*, 214 F.2d 902, 907 (8th Cir. 1954) (complaint filed in prior marriage separation suit was inadmissible hearsay); *see also Yates v. State*, 489 S.W.2d 620  (Tex. Crim. App. 1973); *Joplin v. Meadows*, 623 S.W.2d 442, 444 (Tex. App.--Texarkana 1981, no writ); *Luther Transfer & Storage Co. v. Harrell*, 445 S.W.2d 268, 269 (Tex.Civ.App.-- Houston [1st Dist.] 1969, no writ).

Moreover, such statements are inadmissible hearsay even if the pleading in which they appear is sworn. *See e.g., Briggs v. United States*, 90 F.Supp 135, 142, 116 Ct. Cl. 638 (1950); *Kline v. Southwest Wheel & Mfg. Co.*, 390 S.W.2d 297, 299 (Tex. App.-- Amarillo 1965, no writ); *Wood v. Self*, 362 S.W.2d 188, 190 ((Tex. App.--Dallas 1962, no writ). The presence of an oath, does not change the self-serving or hearsay nature of such statements.

In *Roberts*, a panel of the Fifth Circuit Court of Appeals affirmed the trial court's exclusion of hearsay statements contained in pleadings in other cases. 901 F.2d at 44-45. The court held that the statements made in the allegations were hearsay. 901 F.2d at 45. Furthermore, the court found that introduction of the statements would inject collateral issues into the case and offered only "slight" probative value. 901 F.2d at 45. In *Johnson*, a panel of the Fifth Circuit affirmed the trial court's exclusion of evidence of five other lawsuits and complaints made by four customers. The court agreed with the lower court that the evidence was hearsay and that its probative value was substantially outweighed by the unfair prejudice that would result from its admission. 988 F.2d 577-79. Like pleadings, internal memoranda or reports that list or summarize complaints and lawsuits are inadmissible because the statements upon which they are based are hearsay. *Johnson*, 988 F.2d at 578-79 (summary of claims and lawsuits was "nothing more than a summary of allegations by others which constitute hearsay"). 988 F.2d at 579.

In addition, in *Johnson*, the court affirmed the district court's ruling that the information contained in two letters from NHTSA to Ford and a responsive letter from Ford to the NHTSA listing complaints and lawsuits, constituted hearsay and were inadmissible. 988 F.2d at 579 (the court affirmed the lower court's ruling that the letters were hearsay, were irrelevant to the present case because they concerned different vehicle lines and were more prejudicial than probative).

Summaries of complaints or lawsuits are hearsay even if in a sworn affidavit. *Roberts*, 901 F.2d at 44-5. In *Roberts*, like *Johnson*, the Fifth Circuit held that an affidavit of an employee that briefly summarized notices of pending litigation against the defendant was properly excluded as hearsay. 901 F.2d at 45; *see also Ford Motor Co. v. Phelps*, 389 S.E.2d 454, 456-57 (Va. 1990) (consumer complaints held to be inadmissible hearsay). The *Roberts* court appropriately found that the fact that the summary was sworn did not change the fact that the complaints contained in it were still merely allegations, without inherent credibility. 901 F.2d at 45.

In addition, in this Circuit letters and affidavits from non-parties and non-witnesses are inadmissible hearsay. *See e.g., Johnson*, 988 F.2d at 579; *U.S. v. Ismoila*, 100 F.3d 380, 390-91 (5th Cir. 1996). Furthermore, recordation of hearsay statements in accident, medical or other regularly kept reports does not change the hearsay analysis or suddenly imbue the statement with independent credibility. *See e.g., Rock v. Huffco Gas & Oil Co. Inc.*, 922 F.2d 272, 281 (5th Cir. 1991) (statements recorded in medical and other official reports are inadmissible double hearsay). That is because the person recording the statement in the report has no personal knowledge of the truth of the statement recorded. *See Rock*, 922 F.2d at 281; *Florida Canal Indus., Inc. v. Rambo*, 537 F.2d 200, 202 (5th Cir. 1976) (statements made by plaintiff-yacht owner to Coast Guard which were contained in Coast Guard report were inadmissible hearsay); *In re Leifheit*, 53 B.R. at, 273 (affidavit accompanying police report did not authenticate report, nor did it act to qualify document as business).

Moreover, Plaintiffs cannot introduce otherwise inadmissible hearsay evidence through an expert witness as part of the underlying basis for his opinion. *See e.g., Soden v. Freightliner Corp.*, 714 F.2d 498 (5th Cir. 1983) (expert's testimony based on a letter and a telephone conversation of a third party were not admissible as hearsay); *see Southwest Lloyds Insurance Co. v. MacDowell*, 769 S.W.2d 954, 958 (Tex. App.--Texarkana 1989, writ denied).

In this case, practically speaking, any evidence that Plaintiffs attempt to offer of other accidents or lawsuits that are based upon the allegations or complaints of non-parties or non-witnesses, whether discovered in Ford's files or obtained from other sources, will be hearsay and inadmissible. In short, regardless of arguments of counsel to the contrary, there is no other reason to introduce evidence of other accidents, except to prove the truth of the accident.

**1.      Plaintiffs Must Prove That An Exception To Hearsay Applies.**

Moreover, the impetus is on Plaintiffs to prove that any such evidence offered falls within an exception to the hearsay rule.  Unless Plaintiffs can clearly show that an exception to the hearsay rule applies, the evidence must be excluded.  *See Doe v. U.S.*, 976 F.2d 1071, 1079 (7th Cir. 1992) *cert. denied*, 510 U.S. 812, 114 S.Ct. 58, 126 L.Ed.2d 28 (1993); *see e.g., Sabatino v. Curtis Nat'l Bank*, 415 F.2d 632, 634 (5th Cir. 1969) *cert. denied*, 398 U.S. 1057, 90 S.Ct. 750, 24 L.Ed.2d (1970); *see also Skillern & Sons, Inc. v. Rosen*, 359 S.W.2d 298, 301 (Tex. 1962) ("One seeking to have hearsay declarations of a witness admitted as an exception to the general rule must clearly show that they are within the exception").

In order to establish an exception to the hearsay rule: (1) the evidence offered must be necessary to a proper consideration of the case; and (2) the evidence offered must exhibit an intrinsic probability of trustworthiness.  *See Sabatino*, 415 F.2d at 636; *McCormick on Evidence* at 753, § 258.  In the event that a hearsay statement contains other hearsay statements, as in the case of a report or record of complaints, the proponent of the statement must demonstrate that an exception to the hearsay rule exists for each level of hearsay.  FED. R. EVID. 805; *see Rock*, 922 F.2d at 280.     None of the types of evidence discussed above will meet this standard.  All the evidence described constitutes either: (1) mere unproven allegations impaired by the self interest of the speaker; or (2) a summary or list of unproven allegations for which plaintiffs have a double hearsay hurdle to overcome.   Furthermore, any evidence of other accidents offered is not only hearsay, it is irrelevant to the present case unless Plaintiffs can show that it is *substantially similar*.  In fact, in order to prove substantial similarity, Plaintiffs have no choice but to assert as true statements in documents that are inadmissible hearsay.

2.    **The Business Records Exception To The Hearsay Rule Does Not Apply.**

Ford anticipates that Plaintiffs will attempt to overcome Ford's hearsay objections by claiming that evidence of other accidents or lawsuits, including summaries found in Ford's files, are admissible under the business records exception to the hearsay rule. However, contrary to any arguments of Plaintiffs, the business records exception does not apply. *See Roberts*, 901 F.2d at 44- 45 (employee's sworn summary of lawsuits and complaints was inadmissible hearsay); *Rock*, 922 F.2d at 278-79 (statements made by plaintiff to his physician which were contained in plaintiff's medical record were inadmissible hearsay); *Rambo*, 537 F.2d at 202 (statements made by plaintiff- yacht owner to Coast Guard which were contained in Coast Guard report were inadmissible hearsay not subject to business records exception).

The business records exception applies only if the person who makes the statement *is himself acting in the regular course of business*. *Rock*, 922 F.2d at 279. That is because the business records exception is based on the assumption that a person regularly and continually keeping the records in the course of business, is reliable. *Rock*, 922 F.2d at 279. This assumption disintegrates, however, when "any person in the process is not acting in the usual course of the business." *Rock*, 922 F.2d at 279 (citing *McCormick on Evidence* § 310 at 879 (3d ed. 1984)). For the same reasons, the business records exception does not apply to incident or accident reports, logs or notices to insurers, as each is tinted by the unreliability of the person making the statement . *Rock*, 922 F.2d at 279.

## II.    EVIDENCE OF OTHER ACCIDENTS IS IRRELEVANT UNLESS SUBSTANTIALLY SIMILAR.

In this Circuit, when evidence of other accidents or incidents is offered for any purpose other than to show notice, the plaintiff must show that the facts and

CutePDF - www.tevisa.com

circumstances of the other accidents are "substantially similar" to the case at issue. *Johnson*, 988 F.2d at 579; *Jones & Laughlin Steel Corp. v. Matherne*, 348 F.2d 394, 400 (5th Cir. 1965) (plaintiffs must show that the circumstances surrounding the other accidents or incidents are "substantially similar to the occurrence in question"); *McGonigal v. Gearhart Indus., Inc.*, 851 F.2d 774, 778 (5th Cir. 1988) (evidence of dissimilar grenade prematurely exploding not probative in present case, because not substantially similar). The burden to show the similarity is squarely in the hands of the proponent of the evidence. *Hardy v. Chemtron Corp.*, 870 F.2d 1007, 1009 (5th Cir. 1989).

In a products liability action, as here, in order to prove "substantial similarity," the proponent of the evidence must prove:

1.  that the other accident involved the same product (here -- make and model of vehicle; loading conditions; equipment conditions; steering condition; type and size of tires; maintenance condition);

2.  that the other accident occurred under substantially similar circumstances (here -- sequence of events; terrain; road conditions; vehicle speed and orientation; driver's steering input; driver's braking and acceleration actions; driver's impairment);

3.  that the other accident was arguably caused by the same alleged defect.

Unless the other accidents comply with the above requirements, the prior accidents are irrelevant.

### A.    Same or Virtually Identical Vehicle.

In order for evidence of other accidents to be relevant, the other accidents must involve the same or a virtually identical vehicle. *See Johnson*, 988 F.2d at 576-80 (affirming exclusion of letter from Ford to NHTSA regarding problems or complaints with other vehicle lines, or same type of car (Escort) with different model years than plaintiffs); *Wheeler v. John Deere Co.*, 862 F.2d 1404, 1408 (10th Cir. 1988) (discussion of foundation required by district court to establish substantial similarity -- same model;

same type of injury; same sequence of events leading to injury); *Jordan v. General Motors Corp.*, 624 F. Supp. 72, 77 (E.D. La. 1985) ("Because the recall campaign dealt with a different model year and because the defect involved in the recall campaign is distinctly different from the defect alleged in this case and involved a different section of seat assembly, it appears that introduction of evidence dealing with the recall campaign is not relevant"); *Muniga v. General Motors Corp.*, 302 N.W.2d 565, 568 (Mich. App. 1980) (evidence of recalls of different models properly excluded); *Uitts v. General Motors Corp.*, 62 F.R.D. 560 (E.D. Pa. 1974) (discovery of recall information on models different than the model in question precluded because it would not generate admissible evidence).

In *Johnson*, the Fifth Circuit Court of Appeals affirmed the district court's exclusion of evidence of complaints concerning different models or lines of Ford vehicles or the same vehicle of different model years, because the proponent of the evidence "failed to establish any recognizable similarity between his claim and those that [were] the subject of the evidence." 988 F.2d at 576-80 (other claims involved different models, different lines of Ford vehicles).

In this case, in order to meet this "same vehicle" requirement, Plaintiffs must show that the other accidents he seeks to introduce involved a 1979 Ford Club Wagon of a substantially similar model, year, loading conditions, equipment conditions, steering conditions, type and size of tires, maintenance condition, etc., as the vehicle involved in this accident.

### B.     Same Circumstances.

Next, Plaintiffs must show that the other accidents occurred under the same or substantially similar circumstances. *See, e.g., Jones & Laughlin Steel Corp. v. Matherne*, 348 F.2d 394, 400 (5th Cir. 1965); *Thomas v. Chrysler Corp.*, 717 F.2d 1223, 1224-25 (8th Cir. 1983); *Wheeler*, 862 F.2d at 1407; *see Hughes Drilling Fluids, Inc. v. Eubanks*, 729 S.W.2d 759 (Tex. App. 1986), *set aside on other grounds*, 742 S.W.2d

275 (Tex. 1987); *Hardy*, 870 F.2d at 1009 (evidence of prior accidents involving bacon slicer excluded in the absence of a showing that the prior accidents were substantially similar).

In *Wheeler*, the court noted that the foundation required by the district court to establish substantial similarity is that the vehicle must be of the same model, must have resulted in the same type of injury, which was caused by the same sequence of events. 862 F.2d at 1408.   Thus, to meet the substantially similar standard in this case, any accidents offered by Plaintiffs must not only involve the same model vehicle, but must involve a substantially similar sequence of events. *See Johnson*, 988 F.2d at 576-80 (none of the other accidents alleged occurred in the same manner).

### C.     Same Type of Alleged Defect.

Finally, the evidence must establish that the other accidents involved the same type of alleged defect.   In fact, courts have held that if the other accidents are offered to prove the existence of a defect, a "high degree of similarity" is required because such evidence weighs directly on the ultimate issues to be determined by the jury. *See Wheeler*, 862 F.2d at 1407. If not, the other accidents have no bearing on any relevant issue. *See, e.g., Gumbs v. International Harvester, Inc.*, 718 F.2d 88, 97-98 (3d Cir. 1983) (evidence of other accidents involving U-bolts should have been excluded because those bolts were a different type than the bolt in issue and because they suffered from a different alleged defect-- loosening vs. snapping); *Hessen v. Jaguar Cars, Inc.*, 915 F.2d 641, 649 n. 14 (11th Cir. 1990) (same alleged defect is necessary as a matter of relevance).

Whether evidence is substantial similarity to the accident in a case depends upon the "underlying theory of the case" and is "defined by the particular defect at issue." *Guild v. General Motors Corp.*, 53 F.Supp.2d 363, 366 (W.D. N.Y. 1999) (quoting *Four Corners Helicopters, Inc. v. Turbomeca S.A.*, 979 F.2d 1434 (10th Cir. 1992)  (citing *Jackson v. Firestone Tire & Rubber*, 788 F.2d 1070, 1083 (5th Cir. 1986)).

In *Johnson*, the plaintiffs claimed that a CV joint tear caused the vehicle's steering to "seize" which resulted in the accident. 988 F.2d at 576. The plaintiffs tried to introduce evidence that other Ford vehicles had similar problems, although not CV joint related. The court found that none of the other complaints plaintiffs tried to introduce involved the same alleged mechanical defect, thus, the court held that the substantially similar test was not met and the evidence was properly excluded. 988 F.2d at 578-80 (the court noted that even if plaintiffs attempted to offer the evidence to show "notice," thus relaxing the substantially similar test, the proponent must still show *reasonable similarity* and plaintiffs had not even met that relaxed standard).

Unless Plaintiffs here can show that the prior accidents were arguably caused by the same defect as alleged in this case, the evidence of the other accidents must not be admitted.

### D.    Burden of Proof of Substantial Similarity Is on the Proponent.

The party offering the evidence of other accidents must make a foundational showing of substantial similarity between the evidence "being offered and the circumstances of the accident at issue in the litigation." *Guild*, 53 F.Supp.2d at 366; *Ramseyer*, 471 F.2d at 864 ("Admissibility of evidence depends upon a foundational showing of substantial similarity between the tests conducted and actual conditions"). Whether evidence is substantial similarity to the accident in a case depends upon the "underlying theory of the case." *Guild*, 53 F.Supp.2d at 366 (quoting *Four Corners Helicopters, Inc. v. Turbomeca S.A.*, 979 F.2d 1434 (10th Cir. 1992)). Furthermore, because substantial similarity is "defined by the particular defect at issue" Gonzalez is required to prove the similarity by proving the defect alleged in the similar accident offered. *See Guild*, 53 F.Supp.2d at 366 (citing *Jackson v. Firestone Tire & Rubber*, 788 F.2d 1070, 1083 (5th Cir. 1986)).

AUS:1849798.1
31102 94425

This will require, first, a series of contested "mini trial" outside the hearing of the jury in which Plaintiffs will come forward with their evidence of the substantial similarity of each other accident they wish to introduce and Ford will be forced refute that evidence. Then, if the court determines that any of the other accidents are in fact substantially similar and relevant, a fully contested mini trial will be held in front of the jury for each substantially similar accident, in which Ford will refute the claims of Plaintiffs concerning the other accidents.

### E. Crash Test Evidence Must Be Substantially Similar.

The standard for showing substantial similarity of crash tests to the accident at issue, is the same as the standard for showing substantial similarity of other accidents and incidents. *See e.g., Guild*, 53 F.Supp.2d at 366 (the proponent must show a substantial similarity "between the test results being offered into evidence and the circumstances of the accident at issue in the litigation"); *Jordan*, 624 F.Supp. at 78-79; *Ramseyer*, 471 F.2d at 864 ("Admissibility of evidence depends upon a foundational showing of substantial similarity between the tests conducted and actual conditions"). As in the case of evidence of other accidents or incidents, in order to introduce crash test evidence, the proponent must show that the facts and circumstances of the other accidents or, here, crash tests are "substantially similar" to the case at issue. *See Guild*, 53 F.Supp.2d at 366; *Jordan*, 624 F.Supp. at 78-79. In other words, "substantial similarity" is the same test whether applied to evidence of other accidents or whether applied to crash test evidence. *See e.g., Guild*, 53 F.Supp.2d at 366; *Jordan v. General Motors Corp.*, 624 F.Supp. 72, 78-79 (E.D. La. 1985);

### III. EVEN IF PLAINTIFFS CAN DEMONSTRATE SUBSTANTIAL SIMILARITY, EVIDENCE OF OTHER ACCIDENTS MUST BE EXCLUDED UNDER RULE 403.

In the event Plaintiffs overcome Ford's objections and seek only to introduce evidence of substantially similar other accidents, Ford objects to the admission of any evidence of other accidents because any probative value the evidence may have will be dramatically outweighed by its tendency to cause undue delay, confuse the issues, and prejudice the jury. FED. R. EVID. 403.

> Federal Rule of Evidence 403 provides:
> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

FED. R. EVID. 403. The injection of "other accident" evidence into this lawsuit would result in many of the negative factors identified in Rule 403. As stated by the federal district court in *Uitts v. General Motors Corp.*, 411 F. Supp. 1380 (E.D. Pa. 1974), *aff'd.*, 513 F.2d 626 (3d Cir. 1975):

> Proof of prior accidents or occurrences are not easily admitted into evidence, since they can often result in unfair prejudice, consumption of time and distraction of the jury to collateral matters. . . . Defendant, in order to minimize the prejudicial effect of [the evidence of other accidents], would have had to go through each one individually with the jury. The result would have been a mini-trial on each of the thirty-five reports offered by plaintiffs. This would lengthen the trial considerably and the minds of the jurors would be diverted from the claim of the plaintiffs to the claims contained in these reports.

411 F. Supp. at 1383; *see also Sims v. General Motors Corp.*, 751 P.2d 357, 363-64 (Wyo. 1988) (quoting *Uitts* at length and following rationale).

The danger of admitting evidence of other lawsuits is particularly acute because of the potential influence the allegations contained in pleadings have on a jury. *Julander v. Ford Motor Co.*, 488 F.2d 839, 848 (10th Cir. 1973). In *Julander*, the Court of Appeals for the Tenth Circuit reversed the finding of the jury based in part on the trial court's admission of copies of seven other complaints filed against Ford. The court held

that, although the other cases generically involved the same vehicle and a similar claimed defect, the evidence was not sufficiently specific to determine the similarity. In fact, no sufficient grounds were presented for admission of the evidence. The Court of Appeals was especially concerned that admission of the evidence of other lawsuits was highly prejudicial and "damaging" to Ford in the eyes of the jury. 488 F.2d at 848-49. *Julander*, 488 F.2d at 848-49.

In addition, in *Roberts*, a panel of the Fifth Circuit Court of Appeals affirmed the trial court's exclusion of statements contained in pleadings in other cases. 901 F.2d at 44-45. The court found that introduction of the statements would inject collateral issues into the case and offered only "slight" probative value. 901 F.2d at 45.

In this case, Ford would be forced to address each of the other accidents raised by Plaintiffs. The result would be a series of mini-trials concerning each other accident which would confuse the issues and waste considerable time. In addition to the monumental waste of time and confusion of the issues, the probative value of such evidence is substantially outweighed by its tendency to inflame the jury's sympathies and emotions:

> Human feelings are easily excited by the description of great bodily injuries, or ghastly wounds, or the exhibition of objects which appeal to the senses. Sympathy or indignation, once aroused, in the average juror, readily becomes enlisted to the prejudice of the person accused as the author of the injury.

*Louisville & N.R. Co. v. Pearson*, 12 So. 176, 180 (Ala. 1893).

Even if Plaintiffs can show sufficient similarities between this and other accidents, the Court must consider the danger of unfairness, confusion and undue waste of time when ruling on the admissibility of evidence concerning events which are not related to the underlying facts of this lawsuit. *McKinnon v. Skil Corp.*, 638 F.2d 270, 277 (1st Cir. 1981) ("Even when substantial [similarity] of the circumstances is proven, the

admissibility of such evidence lies within the discretion of the district judge, who must weigh the dangers of unfairness, confusion, and undue expenditure of time in the trial of collateral issues against the factors favoring admissibility"); *United States v. King*, 560 F.2d 122, 134 (2d Cir.), *cert. denied*, 434 U.S. 925 (1977); *Hicks v. Six Flags Over Mid-America*, 821 F.2d 1311, 1316 (8th Cir. 1987).

Evidence of other accidents and incidents will confuse, rather than assist, the jurors in performing their duties. That is because Ford will be forced to fully litigate the issues of the defect alleged *and* causation, among others, *in each of the other accidents admitted* to prove their dissimilarity and irrelevance to the facts of this case. Such evidence will serve only to obscure the distinction between facts and issues the jury must decide and facts and issues presented by the other accidents.

Aside from the fundamental unfairness to Ford, evidence of other accidents would result in needless and continuing side-battles over the characterization of the accidents; would squander the Court's time; and introduce irrelevant collateral issues. Allowing Plaintiffs to attempt to prove that other accidents are substantially similar to the accident at issue will result in various "not-so-mini-but-actually-large-sub-trials." *DePue v. Sears, Roebuck and Co.*, 812 F. Supp. 750, 753-54 (W.D. Mich. 1992) (excluding evidence of the proffered incidents under Fed. R. Evid. 403 as likely to confuse the jury and as an undue expenditure of time).

If the Court considers allowing evidence concerning other accidents, incidents, complaints or lawsuits, then Ford requests that the Court establish a procedure for hearing argument and ruling on the admissibility of such evidence outside the presence of the jury. *See Wheeler*, 862 F.2d at 1408 (proper for judge to hear foundations for prior incidents in chambers as opposed to in the presence of the jury).

## CONCLUSION

Ford respectfully requests that the Court enter an Order excluding evidence concerning other accidents, incidents, complaints and lawsuits because such evidence is

inadmissible hearsay. Alternatively, if Plaintiffs are able to show that the incidents meet the substantial similarity standard set forth above, then Ford requests that the Court exclude any such evidence because it is probative value is substantially out weighed by its prejudicial effect. If the Court nonetheless admits such evidence despite Ford's objections, Ford requests that the Court establish, before the commencement of trial, a procedure for hearing argument and ruling on the foundation and admissibility of such evidence outside the presence of the jury.

Respectfully submitted,

RODRIGUEZ, COLVIN & CHANEY, L.L.P.

By: _____

Eduardo Roberto Rodriguez
State Bar No. 17144000
Joseph A. (Tony) Rodriguez
State Bar No. 17146600
1201 East Van Buren
Post Office Box 2155
Brownsville, Texas 78522
(956) 542-7441
Fax (956) 541-2170

ATTORNEYS FOR DEFENDANT,
FORD MOTOR COMPANY

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing was served upon all counsel of record, to-wit:

Tony Martinez
Trey Martinez
Martinez & Barrera, L.L.P.
1201 East Van Buren
Brownsville, Texas 78520
Attorneys for Plaintiffs

Jeffrey D. Roerig
D. Alan Erwin
Roerig, Oliveira & Fisher, L.L.P.
855 West Price Road, Suite 9
Brownsville, Texas 78520
Attorneys for Defendant, Gabriel Delgado

by certified mail, return receipt requested, facsimile transmission, and/or hand delivery pursuant to the Texas Rules of Civil Procedure on this the ____ day of _____, 2001.


_____
Joseph A. (Tony) Rodriguez

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| LINDA COY, Individually and On Behalf of the Estate of ORTENSIA G. LOPEZ, Deceased, LUIS AYALA; ISELA RODIGUEZ; LIBRADO AYALA JR.; RUBEN RUIZ; and MAURICIO SALDANA | § § § § § § § | |
| | § | **CIVIL ACTION NO. B-00-139** |
| VS. | § § | |
| FORD MOTOR COMPANY and GABRIEL DELGADO | § § § | |

**DEFENDANT FORD MOTOR COMPANY'S
MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION IN LIMINE TO EXCLUDE EVIDENCE OF PRIOR
PUNITIVE DAMAGES, VERDICTS OR JUDGMENTS AGAINST FORD**

Defendant Ford Motor Company submits this Memorandum of Law in support of its motion *in limine* to exclude from the trial of this action any reference to or evidence of any prior punitive damages, verdicts or judgments against Ford. Ford makes this motion on the following grounds: (1) The judgments are of no precedential value and therefore cannot be relied upon by this Court; (2) the prior awards are irrelevant to the issues in this case; (3) any probative value the prior awards may have is substantially outweighed by the prejudice, confusion, and prolongation of the trial that their admission into evidence would cause; (4) the prior awards constitute inadmissible hearsay; and (5) the prior awards constitute inadmissible opinion evidence.

**PRELIMINARY STATEMENT**

Plaintiffs are expected to offer evidence of, or to try to comment on, prior punitive damages awards against Ford. Those cases involve different vehicles, different accident circumstances, different alleged defects, and, in most cases, the application of different

CutePDF - www.fastio.com

legal stan dards.  Accordingly, any reference to or admission of evidence regarding other judgments is entirely improper.

Plaintiffs seek to offer or refer to the prior awards to prejudice the jury and to attempt to show that (1) Ford tends to make defective automobiles and that therefore the vehicle at issue in this case was defective; (2) Ford tends to disregard the safety of its customers; or (3) the jury should award punitive damages against Ford in an amount equal to or greater than the amounts of the prior awards.  None of those purposes can make any prior award admissible in this case.

The prior awards are irrelevant to the issues in this action.  The judgments are from cases involving different vehicles, different alleged defects, different accident circumstances, and often the application of different legal standards.  Therefore, the judgments cannot logically support any inference about Ford's conduct in designing the rear axle in the 1979 Ford Club Wagan that is the subject of this litigation.

Introduction of the prior awards also would be improperly prejudicial and highly inflammatory.  References at trial to the earlier punitive damages awards would encourage the jury to follow the lead of the prior juries.  Admitting the prior judgments also could provoke the jury to punish Ford for conduct unrelated to this case, without regard to whether Plaintiffs have carried their burden of proving the elements of their claims in this case.

Finally, the prior awards constitute inadmissible hearsay and improper opinion evidence.  Accordingly, the Court should rule *in limine* that evidence of the prior awards is inadmissible and that Gonzalez's counsel and witnesses may not refer to such awards at the trial of this action.

ARGUMENT

**I. THE VERDICT AND PUNITIVE DAMAGES JUDGMENT IN DURRILL IS OF NO PRECEDENTIAL VALUE AND CANNOT BE RELIED IN THE TRIAL OF THIS ACTION IN ANY MANNER WHATSOEVER.**

The verdict and judgment in *Ford Motor Co. v. Durrill,* 714 S.W.2d 329 (Tex. App. – Corpus Christi, 1986), writ granted and judgment vacated by agreement of parties, 754 S.W.2d 646 (Tex. 1988) was vacated and the action was dismissed with prejudice. Therefore, the case is of no precedential value, and any evidence of or reference to the verdict or punitive damages judgment in that case would be wholly improper. *See Quesinberry v. Life Ins. Co. of N. Am.,* 987 F.2d 1017, 1029 n.10 (4th Cir. 1993) (refusing to review district court decision in light of earlier Fourth Circuit opinion that had been vacated and the case dismissed by stipulation of the parties because "[t]he opinion and judgment remain vacated, with no precedential value"). Moreover, because the Texas Supreme Court granted Ford's petition for review prior to the dismissal and vacatur of the *Durrill* judgment, the court of appeal's decision, as well as the jury verdict, is of negligible merit. Accordingly, the Court should exclude from the trial of this action all evidence of and reference to the punitive damages award in *Durrill.*

**II. PRIOR PUNITIVE DAMAGES JUDGMENTS INVOLVING OTHER MODELS, OTHER VEHICLES, AND OTHER ALLEGED DEFECTS ARE IRRELEVANT TO THE ISSUES IN THIS ACTION.**

"Evidence which is not relevant is inadmissible." FED. R. EVID. 402. Evidence is not relevant if it does not have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401.

The prior punitive damages judgments are irrelevant to the issues in this case and therefore are inadmissible. The issues in this case are (1) whether the rear axle of the 1979 Ford Club Wagon was defectively designed (2) whether the alleged defects were producing or proximate causes of Plaintiffs' injuries; (3) if Ford is liable to Plaintiffs, the percentage of fault that is attributable to Ford, and the proper amount of compensatory damages; and (4) if Ford is liable to Plaintiffs, whether Ford's actions were malicious, permitting the imposition of punitive damages and, if so, the appropriate amount of punitive damages.

Evidence of prior awards in cases tried under different legal standards, involving different vehicles and unrelated alleged defects cannot tend to make the existence of any of the facts bearing on the issues in this case more or less probable than it otherwise would be. Nor is such evidence admissible to show Ford's character or habit. Thus the prior awards should be excluded.

A.    **Prior Punitive Damages Judgments Are Irrelevant to the Defective Design Issue.**

Under Texas law, whether a product is defectively designed is determined by weighing the product's utility against the risk associated with its use. *Turner v. General Motors Corp.,* 584 S.W.2d 844, 847-51 (Tex. 1979); *Keene Corp. v. Gardner,* 837 S.W.2d 224, 228 (Tex. App. -- Dallas 1992, writ denied). The judgments rendered against Ford in prior cases often were decided pursuant to different legal standards. For example, in *Grimshaw* the jury returned a verdict in favor of the Plaintiffs after being instructed pursuant to the consumer expectations test.[1] 119 Cal. App. 3d at 802, 174 Cal. Rptr. at 377. The Texas Supreme Court has explicitly held that the consumer expectations test is not the proper measure of whether a product is defectively designed

---

[1]    The instruction stated: "A product is defective in design if the product has failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner." *Grimshaw,* 119 Cal. App. 3d at 801, 174 Cal. Rptr. at 377.

under Texas law. *Turner,* 584 S.W.2d at 847. Furthermore, because no strict liability theory was ever put to the jury in *Stubblefield,* 171 Ga. App. at 331, 319 S.E.2d at 474, that decision has no relevance whatsoever to the defect claim made here. The fact that a jury found another vehicle defective pursuant to legal principles different than those upon which the jury in this case will make its determination cannot have any bearing on whether the vehicle at issue in this case is defective under applicable Texas product liability law.

Moreover, pursuant to Texas strict liability principles, violation of a seller's duty involves only a specific product. The litigation issue is limited to the specific product and its condition when sold. A defendant has a right to assume that the product, as identified by the pleadings and the evidence, is the only product it will be called upon to defend. *USX Corp. v. Salinas,* 818 S.W.2d 473, 481 (Tex. App. -- San Antonio 1991, writ denied) (citation omitted) (emphasis added). *See also Bell Helicopter Co. v. Bradshaw,* 594 S.W.2d 519, 529 (Tex. Civ. App. -- Corpus Christi 1979, writ ref'd n.r.e.). In addition, the product at issue is defined by a particular system or component that is allegedly defective, not the entire piece of equipment. *Bell Helicopter,* 594 S.W.2d at 529 ("the identity of the product being litigated was not the entire helicopter, but only the 102 series tail rotor system").

Of the identified cases in which punitive damage judgments were entered against Ford, none involve an F-350. All of the other punitive damages cases concern vehicles entirely different from the one at issue here: The vehicle in *Grimshaw* was a 1972 Ford Pinto hatchback. 119 Cal. App. 3d at 771, 174 Cal. Rptr. at 358. The vehicle in *Nowack* was a full-size 1977 Ford LTD. 638 S.W.2d at 584. And *Hasson* involved another full-size vehicle -- a 1966 Lincoln Continental. 32 Cal. 3d at 396, 185 Cal. Rptr. at 659, 650 P.2d at 1176.

Admission of awards made with respect to different vehicles is improper because it would require Ford to defend a product other than the one put at issue by Plaintiffs in

this action. Prior awards also were based on the facts of accidents other than this one, and evidence of other accidents is irrelevant to whether there was a defect in the product at issue unless the other accidents occurred under the same or substantially similar conditions. *See* Ford's Brief in Support of Exclusion of Evidence of Other Accidents and Incidents.

Accordingly none of the prior cases can be relevant to the defect issue in this case.

**B.     Prior Punitive Damages Judgments Are Irrelevant to the Negligence Issue.**

"The rule is well settled that when the question is whether or not a person has been negligent in doing, or failing to do, a particular act, evidence is not admissible to show that he has been guilty of similar acts of negligence." *Port Terminal R.R. Ass'n. v. Sims,* 671 S.W.2d 575, 579 (Tex. App. -- Houston [lst Dist.] 1984, writ ref'd n.r.e.), cert. denied, 471 U.S. 1016 (1985); *see also Davis v. Snider Indus.*, 604 S.W.2d 341, 344 (Tex. Civ. App. -- Texarkana 1980, writ ref'd n.r.e.); *Keyser v. Lackey*, 523 S.W.2d 295, 298 (Tex. Civ. App. -- Corpus Christi 1975, no writ).

The narrow exception to this rule permits admission of such evidence only when it is established that the accidents occurred under similar conditions, that the conditions were connected in some "special way" indicating relevancy beyond mere similarity in certain particulars, and that the accidents occurred by means of the same instrumentality. *See Bell v. Buddies Super-Market*, 516 S.W.2d 447, 450 (Tex. Civ. App. -- Tyler 1974, writ ref'd n.r.e.); *Southwestern Bell Telephone Co. v. Vollmer*, 805 S.W.2d 825, 831-32 (Tex. App. -- Corpus Christi 1991, writ denied); *see also Crawford v. Yellow Cab Co.*, 572 F. Supp. 1205, 1208 (N.D. Ill. 1983) ("negligence at a particular time or place cannot be established by evidence of similar but disconnected acts of negligence at other times or places").

No special connection exists here. Because there can be no showing that the accidents in the other cases are substantially similar to this accident or that the accidents occurred by means of the same instrumentality as in this accident, evidence of those cases is inadmissible. *See Davis*, 604 S.W.2d at 344 (evidence of prior accident inadmissible to prove negligence because plaintiffs did not show that the prior accident "occurred at the same place or through the use of the same instrumentality and under substantially similar conditions"); *Bell*, 516 S.W.2d at 451 (evidence of other accidents occurring at same store on same ramp was irrelevant and inadmissible where plaintiff's negligence claim was based on steepness of the ramp and prior accidents "were not shown to have been caused by the slope of the ramp, but were attributable to other causes").

### C.   Prior Punitive Damages Judgments Are Irrelevant to Whether Punitive Damages Are Appropriate in This Case.

To support an award of punitive damages, Plaintiffs must demonstrate that the injuries for which they are seeking to recover punitive damages resulted from Ford's negligence, fraud, or malice. Tex. Civ. Prac. & Rem. Code Ann. § 41.003 (Vernon Supp. 1993); *see also Aluminum Co. of America v. Alm*, 785 S.W.2d 137, 140 (Tex. 1990), cert. denied, 498 U.S. 847 (1990) (finding of gross negligence sufficient to impose exemplary damages must be made with respect to the act of which the plaintiff complains); *Mitre v. Brooks Fashion Stores, Inc.*, 840 S.W.2d 612, 623 (Tex. App. -- Corpus Christi 1992, writ denied) (same). Plaintiffs may only recover punitive damages for Ford's actions that they have alleged caused their injuries. *See* Tex. Civ. Prac. & Rem. Code Ann. § 41.003. In *Estate of Clifton v. Southern Pacific Transp. Co.*, 709 S.W.2d 636 (Tex. 1986), in determining whether the plaintiffs' evidence was sufficient to support a finding of gross negligence justifying an award of punitive damages, the Court considered only conduct that the jury had found to be a proximate cause of the plaintiff's injury, and expressly

CISPDF – www.texts.com

declined to consider other allegedly dangerous conduct on the part of the defendant railroad:

> Because the jury found that speed was not a factor in causing the accident, we do not consider any of that evidence relevant to the issue of gross negligence. The jury found, however, that [the defendant's] failure to have flashing signal lights at the crossing was negligence and a proximate cause of the accident. Thus, the evidence we will consider in determining whether [the defendant's] conduct constituted gross negligence concerns [the defendant's] failure to install a warning device at this crossing.

709 S.W.2d at 640.

Thus, in determining whether to award punitive damages, the jury may consider only evidence relating to the specific defects that Gonzalez alleges to have caused his injuries. *See also Brown v. Miller*, 631 F.2d 408, 412 (5th Cir. 1980) (reversing a punitive-damages award because, among other reasons, trial court had admitted "obviously irrelevant" evidence of the defendant's unrelated misconduct); *Crawford,* 572 F. Supp. at 1208 (prior instances of alleged negligent entrustment irrelevant to whether punitive damages should be awarded to punish negligent entrustment causing the plaintiff's injury); *Fowler v. Firestone Tire & Rubber Co.,* 92 F.R.D. 1, 3 (N.D. Miss. 1980) (evidence of prior accidents and lawsuits excluded as irrelevant to issue of "conscious and deliberate disregard for the rights of the plaintiff where the plaintiff had not shown that products and circumstances involved in earlier accidents were substantially similar to those involved in his case); *Woelfel v. Firestone Tire & Rubber Co.,* 493 So. 2d 472, 473 (Fla. Dist. Ct. App. 1986), cert. denied, 503 So. 2d 329 (Fla. 1987) (punitive damages improper because there was "no evidence or any permissible, proper or reasonable inference from the evidence that [the defendant] had knowledge of a defect in the tire at issue, and . . . [because] Plaintiff's evidence in this regard related to

different tires manufactured to different specifications containing different compounds and ingredients").

Plaintiffs' punitive damages claim here turns on Ford's conduct with respect to the rear axle of the 1979 Ford Club Wagon that is at issue in this litigation. Whatever the prior judgments reflect about Ford's conduct in connection with other features of other vehicles is irrelevant to the issue of whether punitive damages should be awarded in this case. That is particularly true where, as in *Stubblefield* and *Grimshaw,* punitive damages were awarded pursuant to a more relaxed standard than that under which Ford's conduct in this action will be judged. In *Stubblefield,* the jury was in structed that in order to find the existence of aggravating circumstances necessary to impose a punitive award, "it is sufficient if the defendant Ford Motor Company was guilty of a conscious or intentional disregard of the foreseeable consequences of its actions." This is in contrast to the more plaintiff-specific standard set forth in the Texas punitive damages statute. Tex. Civ. Prac. & Rem. Code Ann. § 41.001. Furthermore, in *Stubblefield,* evidence of the April 21, 1971 meeting between Ford Chairman Henry Ford II, Ford President Lee Iacocca, and President Richard M. Nixon was admitted at trial as being relevant to the issue of punitive damages. 171 Ga. App. at 338, 319 S.E.2d at 478. That transcript, however, is not admissible under Texas law in this trial. *See* Defendant Ford Motor Company's Memoranda of Law on this issue.

Similarly, in *Grimshaw,* the jury was instructed, "'Malice' means a motive and willingness to vex, harass, annoy or injure another person. Malice may be inferred from acts and conduct, such as by showing that the defendant's conduct was wilful, intentional, and done in conscious disregard of its possible results." 119 Cal. App. 3d at 815, 174 Cal. Rptr. at 385 (emphasis added).[2] The standards by which the jury must

---

[2]    The California Court of Appeal held that inclusion of the word "possible" was improper but that the error did not result in a "miscarriage of justice." *Grimshaw,* 119 Cal. App. 3d at 816-18, 174 Cal. Rptr. 386-87.

assess Ford's conduct in this case impose a much higher burden on Gonzalez than the standard used in *Grimshaw*.

The judgments in the prior cases indicate nothing about whether punitive damages are appropriate here. Moreover, if the jury were to be allowed to impose punitive damages in this case as additional punishment for practices or policies already punished in prior cases, Ford's constitutional right to due process would be violated.

**D.    Prior Punitive Damage Judgments Are Irrelevant to the Amount of Punitive Damages, If Any, to Be Awarded in This Case.**

A jury's assessment of punitive damages against Ford in another case is likewise irrelevant to the appropriate amount of punitive damages, if any, to be awarded in this case. Exemplary damages must be determined based on the facts of each individual case and must be "reasonably proportioned to actual damages." *Alamo Nat'l Bank v. Kraus*, 616 S.W.2d 908, 910 (Tex. 1981); *see also Nabours v. Longview Sav. & Loan Ass'n*, 700 S.W.2d 901, 904 (Tex. 1985). Awards in other cases concerning unrelated alleged defects and, in some cases, determined pursuant to different legal standards thus are irrelevant to the amount of punitive damages, if any, to be awarded in this case, because the prior awards were for other alleged misconduct.

Were Texas law to be interpreted to the contrary, overwhelming problems of constitutional due process would arise, because a manufacturer could be punished repeatedly for the same conduct. *See Roginsky v. Richardson-Merrell, Inc.*, 378 F.2d 832, 838-42 (2d Cir. 1967); *Juzwin v. Amtorg Trading Corp.*, 718 F. Supp. 1233, 1236 (D. N.J. 1989) (holding that "multiple awards of punitive damages for a single course of conduct violate the fundamental fairness requirement of the Due Process clause" but concluding that "equitable and practical concerns prevent . . . fashioning a fair and effective remedy."); *In re Agent Orange Prod. Liab. Litig.*, 100 F.R.D. 718, 728 (E.D.N.Y. 1983), aff'd, 818 F.2d 145 (2d Cir. 1987), cert. denied, 484 U.S. 1004 (1988);

*In re Fed. Skywalk Cases*, 680 F.2d 1175, 1184 (8th Cir. 1982) (Heaney, J., dissenting) (dictum), cert. denied, 459 U.S. 988 (1982); Malcolm E. Wheeler, THE CONSTITUTIONAL CASE FOR REFORMING PUNITIVE DAMAGES PROCEDURES, 69 Va. L. Rev. 269, 287-88 (1983); but *see Edwards v. Armstrong World Indus., Inc.*, 911 F.2d 1151, 1155 (5th Cir. 1990) (reluctantly holding "that no due process or legislative remedy is available in this circuit" for imposition of multiple punitive damages awards for same alleged misconduct).

E.    **Prior Punitive Damages Judgments Are Inadmissible as Character Evidence**.

The prior awards are not relevant as evidence of a "character trait" to prove that Ford was careless or indifferent to safety in designing the 1994 F-350. "Evidence of other wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." FED. R. EVID. 404(b); *see also* FED. R. EVID. 404(a) (character evidence is not admissible to prove action in conformity therewith on a particular occasion). The advisory committee's note to Rule 404 emphasizes that character evidence is inadmissible to prove particular conduct because its probative value is slight and its potential for inducing jury prejudice is great:

> Character evidence is of slight probative value and may be very prejudicial. It tends to distract the trier of fact from the main question of what actually happened on the particular occasion. It subtly permits the trier of fact to reward the good man [and] to punish the bad man because of their respective characters despite what the evidence in the case shows actually happened.

FED. R. EVID. 404(a) advisory committee's note; *see also Lovelace v. Sabine Consol., Inc.*, 733 S.W.2d 648, 654 (Tex. App. -- Houston [14th Dist.] 1987, writ denied) (pursuant to Rule 404(b), evidence of other negligent acts not admissible to show that a person has a "character for negligence"); *Nix v. H.R. Management Co.*, 733 S.W.2d 573, 576 (Tex. App. -- San Antonio 1987, writ ref'd n.r.e.) (testimony regarding prior

occasion where appellant had lied to get out of a contract not admissible to show that she lied to get out of the contract at issue).

The restrictions on the use of character evidence are fully applicable to evidence offered to prove the character of a corporation. *See* Charles A. Wright & Kenneth W. Graham, FEDERAL PRACTICE & PROCEDURE: EVIDENCE § 5231.1 at 347 (1992 Supp.); *Crawford,* 572 F. Supp. at 1208 (prior acts inadmissible to prove bad corporate character as support for either inference of negligence or punitive damages claim). Therefore, the prior awards are irrelevant and inadmissible to prove any alleged character trait on the part of Ford.

**F.      Prior Punitive Damages Judgments Are Inadmissible as Habit Evidence**.

Plaintiffs cannot circumvent the restrictions on the use of character evidence by arguing that the prior verdicts and judgments somehow demonstrate that Ford has a "habit" or "routine practice" of designing or manufacturing unsafe cars. Evidence relating to different products and different alleged defects cannot logically be used to establish habit or routine practice.

To qualify as a habit, proof of which is admissible under Federal Rule of Civil Evidence 406, the behavior in question must involve regular, identical responses to the same recurring situation, and those responses must be repeated so frequently that they are "semi-automatic" or without conscious thought:

> "Habit". . . describes one's regular responses to a repeated specific situation. If we speak of character for care, we think of the person's tendency to act prudently in all the varying situations of life . . . . A habit, on the other hand, is the person's regular practice of meeting a particular kind of situation with a specific type of conduct, such as the habit of going down a particular stairway two stairs at a time . . . .

FED. R. EVID. 406 advisory committee's note (quoting MCCORMICK ON EVIDENCE § 162 at 340 (2d ed. 1972)); *see also Weil v. Seltzer*, 873 F.2d 1453, 1460 (D.C. Cir. 1989) ("[h]abits have a reflexive, almost instinctive quality"); *Simplex, Inc. v. Diversified Energy Sys's, Inc.*, 847 F.2d 1290, 1293 (7th Cir. 1988) (party offering habit evidence "must establish the degree of specificity and frequency of uniform response that ensures more than a mere 'tendency' to act in a given manner, but rather, conduct that is 'semi-automatic' in nature").   Various design or marketing decisions involving different vehicles and different features do not constitute "regular," "specific" responses to a "particular" situation under any definition of those words.

Moreover, to be relevant and admissible under Rule 406, a routine practice must consist of particular, frequently repeated behavior, rather than a general behavioral pattern or trait:

> "[R]outine practice" must be specific conduct that is engaged in frequently by the group; organizational policy for dealing with contingencies that seldom arise is not enough.   Thus a school board's policy of racial discrimination is not sufficiently specific and a company practice of paying bribes to local unions will not qualify without a showing that this was a frequent occurrence.

CHARLES A. WRIGHT & KENNETH W. GRAHAM, FEDERAL PRACTICE & PROCEDURE: Evidence § 5274, at 47 (1980) (footnotes omitted).

Courts uniformly recognize the extremely limited admissibility of evidence relating to "business custom," "habit," or "routine practice." *See, e.g., American Ins. Co. v. First Sav. & Loan Ass'n*, 434 S.W.2d 170, 174 (Tex. Civ. App. -- Fort Worth 1968, writ ref'd n.r.e.) (evidence of insurer's custom and practice inadmissible on the issue of whether written notice of policy cancellation has been given to the mortgagee at the same time that notice was given to the policyholder-mortgagor, because "the material transaction in the instant case did not have such an intimate connection with the custom and practice involving other policyholders as to lead naturally to the conclusion that

CIMPDF - www.fenrir.com

what occurred was like unto that which transpired according to the usual custom");
*Loughan v. Firestone Tire & Rubber Co.*, 749 F.2d 1519, 1524 (11th Cir. 1985) ("habit
or pattern of conduct is never to be lightly established, and evidence of example, for
purpose of establishing such habit, is to be carefully scrutinized before admission");
*Crawford*, 572 F. Supp. at 1208 (despite the plaintiff's argument "that an essential
element in proving her claim for punitive damages is that Yellow Cab's . . . [negligent
entrustment] was consistent with its corporate practice and policy of indifference to the
duty to safely entrust vehicles . . . [,] the similar but disconnected instances of
misconduct cannot be used to establish that Yellow Cab acted with reckless disregard in
the instant case").

In *G.M. Brod & Co. v. U.S. Home Corp.*, 759 F.2d 1526 (11th Cir. 1985), the
plaintiff, who had sued for breach of contract and tortious interference with business
relations, sought to establish that the defendant "had a general policy of breaching
contracts with small businesses in order to maximize its advantage and profit." Id. at
1532. The court excluded testimony offered to show that the defendant had breached
contracts with other parties:

> It is only when the examples offered to establish such pattern of
> conduct or habit are "numerous enough to base an inference of systematic
> conduct" and to establish "one's regular response to a repeated specific
> situation" or, to use the language of a leading text, where they are
> "sufficiently regular or the circumstances sufficiently similar to outweigh
> the danger, if any, of prejudice and confusion," that they are admissible to
> establish a pattern or habit.
>
> Sierra's testimony of specific instances of Home's operation within
> his personal experience, when considered in the light of Home's
> contractual dealings with thousands of small subcontractors and the
> significant differences between the types of contracts involved and the
> course of dealing required of them, falls far short of the adequacy of
> sampling and uniformity of response which are the controlling
> considerations governing admissibility.

Id. at 1533 (citation omitted).

The handful of prior awards against Ford have no logical tendency to show that Ford frequently responded to a particular stimulus by repeatedly engaging in the same behavior. In light of the thousands upon thousands of design decisions and the hundreds of vehicle models that Ford has made during its corporate existence, evidence concerning a small number of cases involving vehicles, alleged defects, and accident circumstances different from those present here cannot tend to establish a "habit" or "routine practice" within the meaning of Rule 406. *See Simplex*, 847 F.2d at 1294 (distinguishing conduct admissible as habit evidence from that involved in the "production of defective products" because the latter conduct "could take an endless variety of forms"). Therefore, such evidence is irrelevant and inadmissible for that purpose.

**III. BECAUSE ANY PROBATIVE VALUE OF THE PRIOR PUNITIVE DAMAGES VERDICTS OR JUDGMENTS IS SUBSTANTIALLY OUTWEIGHED BY THEIR TENDENCY TO CAUSE UNFAIR PREJUDICE, TO CONFUSE THE ISSUES, AND TO MISLEAD THE JURY, THE AWARDS SHOULD BE EXCLUDED.**

Even if the prior awards were relevant, their unfairly prejudicial nature and the likelihood that they would confuse the jury would require their exclusion. *See* FED. R. EVID. 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence."); *see also LSR Joint Venture No. 2 v. Callewart*, 837 S.W.2d 693, 698 (Tex. App. -- Dallas 1992, writ denied); *Farmers Texas County Mut. Ins. v. Jones*, 660 S.W.2d 879, 882 (Tex. App. -- Fort Worth 1983, no writ).

**A.      The Introduction of Prior Punitive Damages Judgments Likely Would Mislead the Jury into Punishing Ford for Unrelated Past Conduct, Regardless of the Merits of This Case.**

Admitting judgments from other cases against Ford would focus the jury's attention on Ford's prior history, rather than on the facts of this case. Plaintiffs thus could tempt the jury to "punish" Ford for unrelated past conduct, regardless of whether they were able to prove Ford's liability in this case.

Furthermore, the danger of inciting prejudice with unrelated horror stories would be compounded by the prejudicial effect of informing the jurors of what other juries have done in cases against Ford, and, by so doing, inviting them to do likewise, again without regard to the merits of this case. *See Texas Pig Stands, Inc. v. Hard Rock Cafe Int'l, Inc.,* 951 F.2d 684, 690 n.7 (5th Cir. 1992) (trademark infringement action in which court upheld lower court's decision to exclude the facts and disposition of an earlier infringement case on the ground that "there is a considerable danger of the jury giving too much weight to the [earlier] decision."); *Clemmer v. Hartford Ins. Co.,* 22 Cal. 3d 865, 879, 151 Cal. Rptr. 285, 292, 587 P.2d 1098, 1105 (1978) (verdict from prior trial inadmissible even if relevant, because the jury might give it "undue weight . . . without the evidence in the record being fairly considered"); *cf. Johnson v. Colt Indus. Operating Corp.,* 797 F.2d 1530, 1534 (10th Cir. 1986) (even if relevant, a judicial opinion concerning the very product at issue performing under similar circumstances was inadmissible because the jury would be likely to give it undue weight).

In addition, even if Plaintiffs carried their burden of proving the elements of Ford's liability, Ford cannot properly be punished in this case for unrelated prior conduct. Rather, punitive damages must be based on a finding that the conduct complained of in this case constituted malice or fraud. *See Aluminum Co. of Am. v. Alm,* 785 S.W.2d 137, 140 (Tex. 1990) cert. denied, 498 U.S. 847 (1990) (finding of gross negligence sufficient to impose exemplary damages must be made with respect to the act of which the plaintiff complains); *Mitre v. Brooks Fashion Stores, Inc.,* 840 S.W.2d 612, 623 (Tex. App. -- Corpus Christi 1992, writ denied) (same).

In reversing a punitive damages award because the trial court had admitted evidence of the defendant's unrelated misconduct, the court in *Brown* remarked on the "great prejudice" that could result from the introduction of such evidence:

> Such evidence was obviously irrelevant to the present action . . . . If considered by the jury, its improper admission could be greatly prejudicial to the defendant [] as contributing to a finding of his willful unlawfulness in the present instance so as to justify the award of punitive damages.

631 F.2d at 412.

Any antipathy to Ford that Plaintiffs' counsel could provoke by introducing prior awards based on unrelated past conduct almost certainly would affect the jury's consideration of the liability and punitive damages issues in this case. To prevent such prejudice, the Court should exclude the prior judgments.

**B.    Admission of Prior Punitive Damages Judgments Would Confuse the Jury and Unduly Prolong the Trial.**

Introduction of the prior judgments would confuse the jury, distract the jurors' attention from the facts of this case, and greatly prolong the trial, because Ford would be compelled to adduce evidence to show that the products with which those judgments were concerned were not defective. One form that such evidence would take would be the verdicts from other cases in which juries found the same or similar products not to be defective. For example, although in 1978 the jury in *Grimshaw* found the fuel system of the 1972 Pinto to be defective, and awarded punitive damages against Ford, in 1980 a jury in San Antonio found the exact same fuel system not to be defective. Compare 119 Cal. App. 3d 757, 174 Cal. Rptr. 348 with *Yarborough v. Ford Motor Co.*, No. 80C1409 (Tex. Dist. Ct. Dec. 23, 1980).

Similarly, while in *Nowak*, 638 S.W.2d 582, the jury found a transmission system defective, other juries and judges have found the same transmission system not to be

defective. *E.g., Lewis v. Ford Motor Co.*, No. 78-960-CA (Fla. Cir. Ct. 1979); *Barfield v. Ford Motor Co.*, No. 77-738-939- NO (Mich. Cir. Ct. 1981); *Nicklis v. Ford Motor Co.*, No. 85-3662 (Tex. Dist. Ct. 1988).

In upholding the exclusion under Rule 403 of evidence of alleged defects in another model of the product at issue, the Houston Court of Appeals noted the danger of taking the jury on precisely this sort of prolonged, confusing excursion in an already complicated trial:

> [W]e find the exclusion proper under Tex. R. Evid. 403 . . . . every consideration listed in the rule was present. The trial of this case lasted for weeks; the statement of facts is several thousand pages long; there were hundreds of exhibits. Witness after witness testified about the Model 700 [the model at issue] and about [the manufacturer's] refusal to recall it. If appellant had been permitted to inflate the trial with evidence about the Model 600, [the manufacturer] would necessarily have had to respond with cross-examination and additional rebuttal proof. Rule 403 was designed for precisely this sort of case . . . .

*Ahlschlager v. Remington Arms Co.*, 750 S.W.2d 832, 836 (Tex. App. -- Houston [14th Dist.] 1988, writ denied); *accord Brooks,* 786 F.2d at 1198 (excluding report on other claims involving similar products, because, if report had been admitted, the defendant would have attempted to rebut each such claim and "jurors' attention would have been diverted from the specific claim of the Gonzalez"); *Uitts,* 411 F. Supp. at 1383 (reports of other accidents involving similar products excluded because "[t]he result [of their admission] would have been a mini-trial on each of the thirty-five reports offered by Plaintiffs. . . and the minds of the jurors would be diverted from the claims of the plaintiffs to the claims contained in these reports"); *see also Fowler,* 92 F.R.D. at 4 ("[c]onsideration of evidence regarding tires produced under different specifications of a time remote from the production of the accident tire would unnecessarily confuse the issue before the court . . . [and therefore such evidence] will be excluded").

Because the admission of prior awards and Ford's rebuttal evidence would divert the jury's attention from the facts of this case and thereby mislead and confuse the jury, and because the introduction of such evidence would greatly prolong what already promises to be a lengthy trial, the Court should rule the prior awards inadmissible.

## IV.   PRIOR PUNTIVE DAMAGES JUDGMENTS AGAINST FORD ARE INADMISSIBLE HEARSAY.

Each prior judgment awarding punitive damages against Ford is a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." FED. R. EVID. 801(d).   Each is therefore inadmissible hearsay. FED. R. EVID. 802.

Prior judgments "have been regarded as hearsay and not within any exception to the hearsay rule." 2 MCCORMICK ON EVIDENCE § 298 at 296 (4th ed. 1992); *see also Texas Pig Stands, Inc.*, 951 F.2d at 690 n.7.  As a result, "courts have traditionally been unwilling to admit [into evidence] judgments in previous cases." MCCORMICK § 298 at 296.

The prior judgments do not fall within any of the exceptions to the hearsay rule enumerated in Texas Rules of Civil Evidence 803 and 804.   The one conceivably pertinent exception, that for public records and reports, is inapplicable to judicial judgments. *See Trustees of Univ. of Pa. v. Lexington Ins. Co.*, 815 F.2d 890, 905 (3rd Cir. 1987) (exception for factual findings memorialized in public records relates only to findings of agencies and officials of the executive branch, not to judicial findings); *Snyder v. Foote*, 822 P.2d 1353, 1360 (Alaska 1991) (In general, the public records exception to the hearsay rule does not allow admission of prior civil judgments.); FED. R. EVID. 803(8); 4 Jack B. Weinstein & Margaret A. Berger, WEINSTEIN'S EVIDENCE § 803(8)[03] (1991).

Moreover, even if the public records exception could be applied to admit a certified judgment for the fact that such a judgment had been entered against Ford, that fact would be irrelevant and immaterial, and Plaintiffs would have to go the next step and argue that the judgment should be admitted as proof of the truth of some underlying fact that was alleged in the prior suit. It is long established, however, that, under Texas law a judgment in a prior case is not admissible "to establish the facts on which it was rendered." *Allen v. Great Liberty Life Ins. Co.*, 522 S.W.2d 247, 251 (Tex. Civ. App. – Eastland 1975 writ ref'd n.r.e.); *see also Davis v. Zapata Petroleum Corp.*, 351 S.W.2d 916 (Tex. Civ. App. -- El Paso 1961, writ ref'd n.r.e.).

## V.   PRIOR PUNITIVE DAMAGES JUDGMENTS AGAINST FORD ARE INADMISSIBLE OPINION EVIDENCE.

Prior judgments also constitute inadmissible opinion evidence. They represent the opinion of the earlier juries that certain Ford products were defective. The prior judgments do not meet the tests for admission into evidence of opinion testimony.

First, a lay opinion must be "rationally based on the perception of the witness." FED. R. EVID. 701(a). Thus, such evidence must be based on the witness' "own personal observations and experiences." *Carter v. Steere Tank Lines, Inc.*, 835 S.W.2d 176, 182 (Tex. App. -- Amarillo 1992, writ denied); *see also Laprade v. Laprade,* 784 S.W.2d 490, 492 (Tex. App. -- Fort Worth 1990, writ denied). Prior judgments are not based on the earlier juries' personal observations or sensory perceptions of the alleged defects to which they relate, but on courtroom evidence that, if properly admissible, can as readily be put before the trier of fact in this case.

Second, a lay opinion is admissible only if it is "helpful to a clear understanding of [the witness'] testimony or the determination of a fact in issue." FED. R. EVID. 701(b). Lay opinion evidence is considered helpful when the witness is better equipped than the jury to draw inferences from the underlying facts. Because prior judgments are

based on courtroom evidence that can as readily be presented to and evaluated by the jury in this case, these judgments by definition relate to matters about which the jurors in this action are equally competent to judge.

Third, prior judgments cannot be characterized as expert opinion. The prior jurors are not qualified as experts in automotive design or any other pertinent discipline. Because prior judgments represent opinions that fail to qualify for admission into evidence as either lay or expert opinion evidence, they are inadmissible and should be excluded on this additional ground.

### CONCLUSION

For the foregoing reasons, Ford's motion *in limine* to exclude all evidence of prior punitive damages, verdicts or judgments against Ford should be granted.

Respectfully submitted,

RODRIGUEZ, COLVIN & CHANEY, L.L.P.

By:  _____
Eduardo Roberto Rodriguez
State Bar No. 17144000
Joseph A. (Tony) Rodriguez
State Bar No. 17146600
1201 East Van Buren
Post Office Box 2155
Brownsville, Texas 78522
(956) 542-7441
Fax (956) 541-2170

ATTORNEYS FOR DEFENDANT,
FORD MOTOR COMPANY

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing was served upon all counsel of record, to-wit:

Tony Martinez
Trey Martinez
Martinez & Barrera, L.L.P.
1201 East Van Buren
Brownsville, Texas 78520
Attorneys for Plaintiffs

Jeffrey D. Roerig
D. Alan Erwin
Roerig, Oliveira & Fisher, L.L.P.
855 West Price Road, Suite 9
Brownsville, Texas 78520
Attorneys for Defendant, Gabriel Delgado

by certified mail, return receipt requested, facsimile transmission, and/or hand delivery pursuant to the Texas Rules of Civil Procedure on this the _____ day of _____, 2001.


_____
Joseph A. (Tony) Rodriguez

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| LINDA COY, Individually and On Behalf of the Estate of ORTENSIA G. LOPEZ, Deceased, LUIS AYALA; ISELA RODIGUEZ; LIBRADO AYALA JR.; RUBEN RUIZ; and MAURICIO SALDANA | §<br>§<br>§<br>§<br>§<br>§<br>§ | |
| | § | CIVIL ACTION NO. B-00-139 |
| VS. | §<br>§ | |
| FORD MOTOR COMPANY and GABRIEL DELGADO | §<br>§ | |

**DEFENDANT FORD MOTOR COMPANY'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION IN LIMINE TO EXCLUDE ALL EVIDENCE
OF AND REFERENCE TO FORD'S 1973 VIOLATION OF THE CLEAN AIR ACT**

Defendant Ford Motor Company submits this memorandum in support of its motion *in limine* to exclude all evidence of, and any reference by Plaintiffs, their counsel, or their witnesses, to Ford's 1973 conviction, pursuant to a plea of *nolo contendere*, for violations of the federal Clean Air Act, including any reference to conspiracies or coverup theories regarding Ford's allegedly lying to the Government or hiding information or documents. Ford makes its motion on the following grounds: (1) Evidence of the conviction is irrelevant to the issues in this case; (2) evidence of the conviction constitutes improper character evidence; (3) the probative value of any evidence of the conviction is outweighed by its potential to mislead and confuse the jury; and (4) evidence of the conviction constitutes improper impeachment evidence.

### PRELIMINARY STATEMENT

Plaintiffs may use as trial exhibits in this action several items related to Ford's 1973 conviction for violations of the Clean Air Act. The conviction arose out of Ford's submission to the Federal Government of information regarding its compliance with

federal emissions standards and was entered pursuant to a *nolo contendere* plea.[1]  Any evidence, testimony, argument, or remarks of counsel concerning the conviction would be improper and inadmissible; and Plaintiffs and their witnesses and representatives should be ordered *in limine* not to offer such evidence or comments in the jury's presence.

**ARGUMENT**

## I.   EVIDENCE OF FORD'S 1973 VIOLATIONS OF THE CLEAN AIR ACT IS IRRELEVANT TO THE ISSUES TO BE DECIDED IN THIS ACTION.

"Evidence which is not relevant is inadmissible." Fed. R. Evid. 402.  Evidence is not relevant if it does not have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

This is a product liability action in which Plaintiffs have alleged that the rear axle in the 1979 Ford Club Wagon is defective.   A twenty-year-old conviction that concerned Ford's reporting of federal <u>emissions</u> standard information cannot tend to prove or disprove any of the issues relevant to Ford's liability for the crashworthiness of the 1979 Ford Club Wagon.

Such extraneous evidence also is irrelevant to whether Ford's actions in this case were malicious, fraudulent or grossly negligent, thus permitting the imposition of punitive damages.  <u>See</u> Tex. Civ. Prac. & Rem. Code § 41.003 Plaintiffs' punitive damages claim turns on Ford's conduct with respect to the rear axle used in the 1979 Ford Club Wagon that is the subject of this litigation.  Whatever evidence of the prior Clean Air Act conviction might reflect about Ford's conduct in connection with its federal emissions reporting duties, it is irrelevant to the issue of whether punitive

---

[1]     Ford notes that *any* evidence of the plea itself is patently inadmissible in this civil action. FED. R. EVID. 410(2) (evidence of a *nolo contendere* plea is "not admissible against the defendant who made the plea or was a participant in the plea discussions").

damages should be awarded in this case. *See Estate of Clifton v. Southern Pac._Transp. Co.*, 709 S.W.2d 636, 640 (Tex. 1986) (considering only conduct that the jury had found to be a proximate cause of the plaintiff's injuries when determining whether evidence was sufficient to support a finding of gross negligence, and expressly declining to consider defendant's other allegedly dangerous conduct); *Carson v. Polley*, 689 F.2d 562, 572 n.5 (5th Cir. 1982) (evidence of prior misconduct "plainly" not admissible on issue of punitive damages); *Brown v. Miller*, 631 F.2d 408, 412 (5th Cir. 1980) (reversing a punitive-damages award because, among other reasons, trial court had admitted "obviously irrelevant" evidence of the defendant's unrelated misconduct).

Accordingly, the 1973 conviction is irrelevant to issues regarding Ford's liability for compensatory and punitive damages in this action.

## II. EVIDENCE OF THE 1973 CONVICTION IS INADMISSIBLE AS CHARACTER EVIDENCE.

Nor is the prior conviction relevant as evidence of a "character trait" to prove that Ford is a "bad" company. "Evidence of other wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." Fed. R. Evid. 404(b); *see also* Fed. R. Evid. 404(a) (character evidence is not admissible to prove action in conformity therewith on a particular occasion).

The advisory committee's note to the Rule 404 emphasizes that character evidence is inadmissible to prove particular conduct because its probative value is slight and its potential for inducing jury prejudice is great:

> Character evidence is of slight probative value and may be very prejudicial. It tends to distract the trier of fact from the main question of what actually happened on the particular occasion. It subtly permits the trier of fact to reward the good man and to punish the bad man because of their respective characters despite what the evidence in the case shows actually happened.

Fed. R. Evid. 404(a) advisory committee's note. *See United States v. Avarello,* 592 F.2d 1339, 1346 (5th Cir. 1979), *cert. denied,* 444 U.S. 844 (1979) (the danger inherent in prior conviction evidence is that juries may hold the defendant responsible because he is a "bad man" rather than on the basis of the evidence adduced at trial); *see also Nix v. H.R. Management Co.,* 733 S.W.2d 573, 575 (Tex. App. -- San Antonio 1987, writ ref'd n.r.e.) (prior incident of untruthfulness not admissible to show party was lying on a particular occasion.)

The restrictions on the use of character evidence are fully applicable to evidence offered to prove the character of a corporation. Charles A. Wright & Kenneth W. Graham, FEDERAL PRACTICE & PROCEDURE: EVIDENCE § 5231.1 at 347 (1992 Supp.); *see Crawford v. Yellow Cab Co.,* 572 F. Supp. 1205, 1208 (prior acts inadmissible to prove bad corporate character as support for either inference of negligence or punitive damages claim). Therefore, the prior conviction is irrelevant and inadmissible to prove that Ford is an unprincipled or dishonest company.

**III.  ANY PROBATIVE VALUE EVIDENCE THE 1973 VIOLATIONS MAY HAVE IS SUBSTANTIALLY OUTWEIGHED BY ITS TENDENCY TO CAUSE UNFAIR PREJUDICE, TO CONFUSE AND MISLEAD THE JURY, AND TO UNDULY PROLONG THE TRIAL.**

Even if evidence of the 1973 conviction were somehow relevant, such evidence would remain inadmissible because its probative value is outweighed by the unfair prejudice its admission into evidence would create. *See* Fed. R. Evid. 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence."); *see also LSR Joint Venture No. 2 v. Callewart,* 837 S.W.2d 693, 698 (Tex. App. -- Dallas 1992, writ denied); *Farmers Texas County Mut. Ins. Co. v. Jones,* 660 S.W.2d 879, 882 (Tex. App. -- Fort Worth 1983, no writ).

The probative value of a remote conviction is slight. *See* S. Rep. No. 1277 93rd Cong. 2d Sess. 4 (1974), *reprinted in,* 1974 U.S. C.C.A.N. 7051, 7061 ("convictions over ten years old generally do not have much probative value").  Moreover, the older the conviction, the less probative it is. *Cf. United States v. Cathey*, 591 F.2d 268, 275 (5th Cir. 1979) ("passage of time dissipates the probative value of a prior conviction" for purposes of rule 609); *United States v. Beechum,* 582 F.2d 898, 915 (5th Cir. 1978), *cert. denied,* 440 U.S. 920 (1979) ("temporal remoteness depreciates the probity of the extrinsic offense" for purposes of Rule 404).

The prejudicial impact of admitting evidence of prior convictions, on the other hand, is substantial.  Juries tend to be unduly swayed by evidence of prior convictions and often use such evidence unfairly.

> [T]here is an obvious danger that the jury, despite instructions, will give more heed to the past convictions as evidence that the accused is the kind of man who would commit the crime on charge, or even that he ought to be put away without too much concern with present guilt, than they will to the legitimate bearing of the past convictions on credibility.

1 MCCORMICK ON EVIDENCE § 42 at 153 (4th ed. 1992); *see also* Michael H. Graham, FEDERAL PRACTICE & PROCEDURE § 6511 at 56 (1992) ("it is rarely seriously asserted that the trier of fact is fully capable much less interested in making [the distinction between evidence admitted solely for determining credibility and evidence of guilt]"). Such concerns presumably led the trial court in *Grimshaw v. Ford Motor Co.* to exclude this evidence during the trial of that action. *See* 119 Cal. App. 3d 757, 795, 174 Cal. Rptr. 348, 373 (1981).

Moreover, admitting evidence of the violations would inject a digressive element into the trial that would be both confusing to the jury and time-consuming for all involved. If evidence of the violations were admitted, Ford would be entitled to present

evidence explaining the reasons they occurred.  Because the admission of the violations and Ford's rebuttal evidence would divert the jury's attention from the facts of this case and thereby mislead and confuse the jury, and because the introduction of such evidence would prolong what already promises to be a lengthy trial, the Court should rule evidence of the violations inadmissible.

## IV.   EVIDENCE OF THE 1973 CONVICTION IS INADMISSIBLE AS IMPEACHMENT EVIDENCE.

Plaintiffs also may not attempt to admit evidence of the 1973 conviction through the "back door" by arguing it is relevant to the credibility of Ford's witnesses.  Federal Rule of Civil Evidence 609 governs the admissibility of prior convictions to impeach the credibility of a witness.  Subsection (b) of that rule provides:

> Evidence of a conviction under this rule is not admissible if a period of more than ten (10) years has elapsed since the date of the conviction . . . unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect.

Texas courts have construed this provision as creating a general rule, or presumption, of inadmissibility for remote convictions.  *See Richardson v. State,* 832 S.W.2d 168, 172 (Tex. App. -- Waco 1992, pet. ref'd) (construing identically worded Texas Rule of Criminal Evidence 609(b)); *Allen v. State,* 740 S.W.2d 81, 83 (Tex. App. -- Dallas 1987, pet. ref'd) (same).

The Senate Judiciary Committee notes to Rule 609 explain the extraordinarily limited nature of the exception to the presumption of inadmissibility created by subsection 609(b):

> Although convictions over ten years old generally do not have much probative value, there may be exceptional circumstances under which the conviction substantially bears on the credibility of the witness.

CutePDF - www.foxito.com

Rather than exclude all convictions over 10 years old, the committee adopted an amendment in the form of a final clause to the section granting the court discretion to admit convictions over 10 years old, but only upon a determination by the court that the probative value of the conviction supported by specific facts and circumstances, substantially outweighs its prejudicial effect.

It is intended that convictions over 10 years old will be admitted very rarely and only in exceptional circumstances. The rules provide that the decision be supported by specific facts and circumstances thus requiring the court to make specific findings on the record as to the particular facts and circumstances it has considered in determining that the probative value of the conviction substantially outweighs its prejudicial impact. . . .

S. Rep. No. 1277 93rd Cong. 2d Sess. 4 (1974), reprinted in, 1974 U.S. C.C.A.N. 7051, 7061-62 (emphasis added).[2]

In Texas, the exceptional circumstances sufficient to overcome a remoteness objection to an old conviction are traditionally shown by "evidence of lack of reformation or an intervening conviction." *Allen,* 740 S.W.2d at 83; *see also Lucas v. State,* 791 S.W.2d 35, 51 (Tex. App. 1989), habeas corpus denied, 834 S.W.2d 339 (Tex. Crim. App. 1992). There is no evidence of any intervening criminal activity on Ford's part so as to overcome the general rule of inadmissibility in this case.

Because no "exceptional circumstances" warrant its admission into evidence, the 1973 conviction, being some twenty years old, falls squarely within the general rule of inadmissibility for remote convictions and is therefore inadmissible to impeach the credibility of any Ford witness.

---

[2]    The House Judiciary Committee recommended that convictions over ten years old be totally inadmissible. H.R. Rep. No. 650, 93rd Cong. 1st Sess. 4 (1974), *reprinted in*, 1974 U.S. C.C.A.N. 7051, 7085.

# CONCLUSION

For the foregoing reasons, Ford's motion *in limine* to exclude all evidence of and references to Ford's 1973 conviction of violations of the Clean Air Act should be granted.

Respectfully submitted,

RODRIGUEZ, COLVIN & CHANEY, L.L.P.

By: _____

Eduardo Roberto Rodriguez
State Bar No. 17144000
Joseph A. (Tony) Rodriguez
State Bar No. 17146600
1201 East Van Buren
Post Office Box 2155
Brownsville, Texas 78522
(956) 542-7441
Fax (956) 541-2170

ATTORNEYS FOR DEFENDANT,
FORD MOTOR COMPANY

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing was served upon all counsel of record, to-wit:

Tony Martinez
Trey Martinez
Martinez & Barrera, L.L.P.
1201 East Van Buren
Brownsville, Texas 78520
Attorneys for Plaintiffs

Jeffrey D. Roerig
D. Alan Erwin
Roerig, Oliveira & Fisher, L.L.P.
855 West Price Road, Suite 9
Brownsville, Texas 78520
Attorneys for Defendant, Gabriel Delgado

by certified mail, return receipt requested, facsimile transmission, and/or hand delivery pursuant to the Texas Rules of Civil Procedure on this the _____ day of _____, 2001.

_____
Joseph A. (Tony) Rodriguez

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

LINDA COY, Individually and On     §
Behalf of the Estate of ORTENSIA G.     §
LOPEZ, Deceased, LUIS AYALA;     §
ISELA RODIGUEZ; LIBRADO AYALA     §
JR.; RUBEN RUIZ; and MAURICIO     §
SALDANA     §    **CIVIL ACTION NO. B-00-139**
    §
VS.     §
    §
FORD MOTOR COMPANY and     §
GABRIEL DELGADO     §

### DEFENDANT FORD MOTOR COMPANY'S
### BRIEF IN SUPPORT OF ITS MOTION IN LIMINE
### TO EXCLUDE TESTIMONY INTERPRETING DOCUMENTS
### PRODUCED BY FORD AS EVIDENCE OF FORD'S KNOWLEDGE OR INTENT

Defendant Ford Motor Company submits this brief in support of its motion *in limine* to exclude Plaintiffs' witnesses who have not worked at Ford from testifying about Ford's knowledge or intent with respect to the safety of the seatbelt and glass of the 1979 Ford Club Wagon based on the witnesses' "interpretation" of documents produced by Ford in this or other litigation. Ford makes this motion on the grounds that the admission of testimony about Ford's knowledge or intent violates Fed. R. Evid. 702 because (1) Plaintiffs' witnesses have no expertise about Ford, its employees, or the processes by which Ford communicates information or makes decisions, that would qualify them to express an expert opinion on that subject; (2) a determination of Ford's knowledge or intent does not require specialized knowledge or expertise, and thus the jury can make such a determination on its own, without expert assistance; and (3) testimony by Plaintiffs' experts based on the documents is speculative and conjectural and thus will not assist the trier of fact. In addition, testimony based on or about such documents should be excluded under Rule 403 of the Federal Rules of Evidence,

because the probative value, if any, of such testimony is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, and by considerations of undue delay.

Ford also moves *in limine* to exclude Plaintiffs' witnesses from testifying about the meaning or contents of documents produced by Ford that are inadmissible or have not been admitted into evidence on the ground that such testimony would violate Fed. R. Evid. 1002, the "best evidence" rule.

ARGUMENT

I.   THE OPINIONS OF PLAINTIFFS' EXPERT WITNESSES ABOUT THE KNOWLEDGE AND INTENT OF FORD IS INADMISSIBLE UNDER RULE 702 OF THE TEXAS RULES OF EVIDENCE.

Rule 702 of the Federal Rules of Evidence states:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

For expert testimony to be admissible, it must meet two requirements: the witness giving the testimony must be qualified as an expert on the subject about which he intends to testify; and testimony must assist the trier of fact in understanding the evidence or determining a fact in issue.

**A.   Plaintiffs' Experts are Not Qualified to Give An Opinion on Ford's Knowledge or Intent.**

In order for Plaintiffs' experts to express opinions about what Ford knew, he must possess special "knowledge, skill, experience, training, or education" so that he can "actually assist the jury in arriving at an intelligent and sound verdict." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987). "Stated more directly, the trial judge ought to insist that a proffered expert bring to the jury more than the lawyers can offer in argument." *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992) (quoting *In re Air Crash Disaster at New Orleans, La.*, 795 F.2d 1230, 1233 (5th Cir. 1986)). Moreover,

CVAPDF - www.fastio.com

"[a]n expert witness must show special knowledge of the very question upon which he is to express an opinion." *George v. Morgan Constr. Co.*, 389 F. Supp. 253, 259 (E.D. Pa. 1975) (emphasis added); see also 2 John H. Wigmore, EVIDENCE IN TRIALS AT COMMON LAW § 555, at 750 (1979) (the qualification of a witness "is a fitness to answer on that point. He may be fitted to answer about countless other matters, but that does not justify accepting his views on the matter in hand . . . .").

Here, Plaintiffs' experts do not have sufficient expertise about Ford, its officials or employees, its design process, or its decision-making process, to express an expert opinion on Ford's knowledge or intent in designing the restraint system for 1979 Ford Club Wagon. Plaitniffs' experts may have read a number of Ford documents that they have acquired or that were provided to either by Plaintiffs' counsel, but that activity is not sufficient to transform them into an expert. *See Hooten v. State*, 492 So. 2d 948, 957-58 (Miss. 1986) (although witness "had read books on forensic document work, his practical training and experience in that field have not . . . 'clearly qualified him as an expert'"); If it were, any person could become an expert in any field merely by reading books or published articles in that field.

## B. Testimony by Plaintiffs' Experts about Ford's Knowledge or Intent Will Not Assist the Trier of Fact.

For expert testimony to be admissible, it must "actually assist the jury in arriving at an intelligent and sound verdict," *Viterbo*, 826 F.2d at 422, by "inform[ing] the court about affairs not within the full understanding of the average man." *United States v. Webb*, 625 F.2d 709 (5th Cir. 1980) (emphasis added). As one Texas court of appeals has stated, "the use of expert testimony is restricted to those situations in which the expert's knowledge and experience . . . are beyond that of the average juror . . . ." *Dunnington v. State*, 740 S.W.2d 896, 898 (Tex. App.--El Paso 1987, pet. ref'd); *see also Bristol-Myers Co. v. Gonzales*, 548 S.W.2d 416, 431 (Tex. Civ. App.--Corpus Christi 1976), rev'd on other grounds, 561 S.W.2d 801 (Tex. 1978) ("it was error for the

trial court not to have excluded" testimony "where the tribunal is in possession of the same information as the witness").

Plaintiffs' experts' knowledge and experience about Ford, its employees, and its decision-making process, are not "beyond that of the average juror." Numerous courts have held that testimony that addresses issues such as intent, character, and motivation of parties -- are particularly "'within the ken of lay jurors,'" and thus expert testimony on such issues is inadmissible. *Webb*, 625 F.2d at 711 (quoting *United States v. Fosher*, 590 F.2d 381, 383 (1st Cir. 1979)). In *Thomas v. State*, the court ruled that expert testimony about the reliability of eyewitness testimony was inadmissible because "any member of the jury could 'form an opinion on the issue equally readily and with the same degree of logic as the witness.'" 748 S.W.2d 539, 541 (Tex. App.--Houston [1st Dist.] 1988, no pet.)

Because issues such as motivation, intent, and character are readily understood by the jury, expert testimony on such subjects would improperly impinge on the jury purpose:

> Procedures which curtail or impinge upon the jury's role are strictly drawn, strictly scrutinized and viewed with skepticism. This applies . . . to practices which tend to seduce the jury into abrogating its function and deferring its responsibility to other evaluators.
> * * * *
> . . . Expert testimony is not justified by the . . . need to preclude the jury from making up its own mind. It is justified when it enables the jury to heighten its appreciation of the full import of the evidence.

*Dunnington*, 740 S.W.2d at 898-99. Accordingly, such expert testimony does not assist the jury and must be excluded.

Furthermore, testimony will not assist the jury if it is based on unsupported assumptions and speculation. As the court stated in *Golleher v. Herrera*, "opinion evidence based on speculation or conjecture lacks probative value, and is inadmissible." 651 S.W.2d 329, 334 (Tex. App.--Amarillo 1983, no writ) (Citations omitted).    These

types of speculations are particularly troublesome because the testimony of an "expert" generally has an "aura of special reliability and trustworthiness." *United States v. Aramal*, 488 F.2d 1148, 1153 (9th Cir. 1973); *see also Christo phersen v. Allied-Signal Corp.*, 939 F.2d 1106, 1112 n.10 (5th Cir. 1991), cert. denied, _____ U.S. _____, 112 S. Ct. 1280 (1992) ("expert testimony creates the risk of a special kind of prejudice"). The expert's pronouncements about the purported meaning of documents will inevitably color jurors' perceptions about the same documents. Thus, rather than examining the documents to see what they in fact say, jurors will instead be mislead into reading "between the lines" of the documents and speculating about what the document "really" means. This does not assisting the jury; it "seduc[es] the jury into abrogating its function and deferring its responsibility to other evaluators." *Dunnington*, 740 S.W.2d at 898-99.

**II.   TESTIMONY BY PLAINTIFFS' EXPERT WITNESSES ABOUT FORD'S PURPORTED KNOWLEDGE AND INTENT, BASED ON DOCUMENTS PRODUCED BY FORD, SHOULD BE EXCLUDED UNDER RULE 403 OF THE TEXAS RULES OF EVIDENCE.**

In addition, such testimony will confuse the jury, unduly prolong the trial, and unfairly prejudice Ford. Accordingly, the Court should exercise its sound discretion and exclude such testimony on the documents under Rule 403 of the Federal Rules of Evidence.

Such testimony will unduly and unnecessarily prolong the trial. To effectively cross-examine Plaintiffs' expert on his opinions with respect to Ford's knowledge and intent, Ford will have to question him/he about his alleged interpretation of each document, and will have to ask him/he about other documents, not discussed by him, that rebut or refute his views. Ford will also have to call on rebuttal the authors of the documents so they can explain what they meant when they wrote the documents. As a result, the upcoming trial, which should focus on the accident at issue, will expand into a series of "minitrials" on the meaning of documents that for the most part are collateral to

any disputed issue, hindering and confusing the jury's understanding of the essential issues in this case.

Furthermore, such evidence would be unfairly prejudicial if it has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."  Advisory Committee note to Fed. R. Evid. 403.   The Advisory Committee also recognized that evidence should be excluded if it

> "appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, or triggers other mainsprings of human action [and] may cause a jury to base its decision on something other than the established propositions in the case."

*Thronson v. Meisels*, 800 F.2d 136, 142 (7th Cir. 1986) (quoting 1 J. Weinstein & M. Berger, WEINSTEIN'S EVIDENCE ¶ 403[03] (1985)).

## III.   TESTIMONY BY PLAINTIFFS' EXPERT WITNESSES ABOUT DOCUMENTS THAT ARE NOT ADMITTED INTO EVIDENCE IS PROHIBITED BY RULE 1002 OF THE TEXAS RULES OF EVIDENCE.

To the extent that Plaintiffs' expert witnesses seek to testify about the contents or purported meaning of documents that are inadmissible or have not been admitted into evidence, such testimony is precluded by Rule 1002 of the Federal Rules of Evidence, which states: "To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required except as otherwise provided in these rules or by law."  The purpose of and reasons for Rule 1002, the "best evidence" rule,

> may be summed up in this way:  . . . As between oral testimony based on recollection, and the original, the added risk, almost the certainty, exists, of errors of recollection due to the difficulty of carrying in the memory literally the tenor of the document.

John H. Wigmore, IV, Evidence § 1179 (3d ed. 1940).  *See also United States v. Yamin*, 868 F.2d 130, 134 (5th Cir.), cert. denied, 492 U.S. 924 (1989) ("The purpose of the best evidence rule . . . is to prevent inaccuracy and fraud when attempting to prove the contents of a writing")

Here, testimony by Plaintiffs' experts about the content or meaning of documents that are not in evidence could misstate or misrepresent information in the documents, creating the possibility of "inaccuracy and fraud when attempting to prove the contents of" them. Accordingly, testimony on the documents would violate the best evidence rule.

### CONCLUSION

For the foregoing reasons, Ford's motion *in limine*, to exclude Plaintiffs' witnesses from testifying about Ford's knowledge or intent based the witnesses' purported "interpretation" of documents produced by Ford, should be granted.

Respectfully submitted,

RODRIGUEZ, COLVIN & CHANEY, L.L.P.

By: _____
      Eduardo Roberto Rodriguez
      State Bar No. 17144000
      Joseph A. (Tony) Rodriguez
      State Bar No. 17146600
      1201 East Van Buren
      Post Office Box 2155
      Brownsville, Texas 78522
      (956) 542-7441
      Fax (956) 541-2170

ATTORNEYS FOR DEFENDANT,
FORD MOTOR COMPANY

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing was served upon all counsel of record, to-wit:

Tony Martinez
Trey Martinez
Martinez & Barrera, L.L.P.
1201 East Van Buren
Brownsville, Texas 78520
Attorneys for Plaintiffs

Jeffrey D. Roerig
D. Alan Erwin
Roerig, Oliveira & Fisher, L.L.P.
855 West Price Road, Suite 9
Brownsville, Texas 78520
Attorneys for Defendant, Gabriel Delgado

by certified mail, return receipt requested, facsimile transmission, and/or hand delivery pursuant to the Texas Rules of Civil Procedure on this the _____ day of _____, 2001.


_____
Joseph A. (Tony) Rodriguez

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

LINDA COY, Individually and On    §
Behalf of the Estate of ORTENSIA G.    §
LOPEZ, Deceased, LUIS AYALA;    §
ISELA RODRIGUEZ; LIBRADO AYALA    §
JR.; RUBEN RUIZ; and MAURICIO    §
SALDANA    §   **CIVIL ACTION NO. B-00-139**
   §
VS.    §
   §
FORD MOTOR COMPANY and    §
GABRIEL DELGADO    §

### DEFENDANT FORD MOTOR COMPANY'S
### MEMORANDUM OF LAW SUPPORTING ITS MOTION IN LIMINE TO EXCLUDE
### EVIDENCE OF A MEETING BETWEEN THE PRESIDENT OF THE UNITED STATES AND
### REPRESENTATIVES OF FORD MOTOR COMPANY ON APRIL 27, 1971

Ford Motor Company files this Memorandum of Law in support of its motion in limine to exclude evidence of a meeting between the President of the United States and representatives of Ford.

### INTRODUCTION

Ford submits this brief in support of its motion in limine to exclude the following evidence, and any reference thereto, by Plaintiffs, their counsel, or their witnesses, at the trial of this case: (1) a transcript made from a tape recording of a meeting in the Oval Office of the White House on April 27, 1971, attended by President Richard M. Nixon, Presidential Domestic Affairs Advisor John D. Ehrlichman, Ford Chairman Henry Ford II, and Ford President Lee A. Iacocca; (2) the transcript of the deposition of John D. Ehrlichman taken by David L. Perry in *Cannon v. Ford Motor Co.*, Case No. 84-419-Civ-J-16 (M.D. Fla.) on August 10, 1986; and (3) all other evidence of the April 1971 meeting. Ford makes this motion on each of the following grounds.

First, because meetings between citizens of the United States and their elected representatives to discuss governmental action are protected by the petitioning clauses

of the First Amendment to the United States Constitution and article 1, section 27, of the Texas Constitution, any award of damages based in whole or in part on this protected activity would impermissibly infringe Ford's First Amendment and article 1, section 27, rights.

Second, jury consideration of evidence of the meeting would constitute an improper inquiry into the executive decision-making process and motives.

Third, the discussion at the meeting is not relevant to any issue in this case.

Fourth, even if the April 1971 meeting were not entirely irrelevant and constitutionally protected, the danger of improper prejudice would substantially outweigh any probative value the evidence may be said to have.

Fifth, the numerous errors in the transcript, and the numerous statements that the transcript describes as "unintelligible," render the transcript of the April 1971 meeting impermissibly untrustworthy and for that reason inadmissible.

Sixth, the transcript of the meeting must be excluded because Plaintiffs cannot meet the foundational requirements of Texas law and because the transcript violates the best evidence rule.

Seventh, the meeting is so remote in time that it should not be mentioned in a case involving a 1994 Ford vehicle when even a felony conviction cannot be used for purposes of impeachment after ten years.

### ARGUMENT

On April 27, 1971, Mr. Ford and Mr. Iacocca met with the President and his Domestic Affairs Advisor for approximately one-half hour to discuss concerns about regulations recently proposed or promulgated by the Department of Transportation governing automobile emissions, damage ability, and safety.  To the extent that the transcript Plaintiffs seek to use at trial reveals in any way any part of that discussion, the transcript shows that none of the regulations discussed related to the issues involved in this case.

In several public speeches, Mr. Ford and Mr. Iacocca already had voiced concerns similar to those they expressed at the meeting, and their company had done the same in papers filed with the Department of Transportation. Moreover, within a few days after the meeting, the company made still further similar statements in court papers filed in support of a lawsuit attacking some of the regulations. *See* Docket 69-7, National Highway Traffic Safety Administration; *Chrysler Corp. v. Dep't of Transp.*, 472 F.2d 659 (6th Cir. 1972); Malcolm S. Forbes, "Fact and Comments," Forbes, Mar. 15, 1971, at 15; "Ford Says Safer, Cleaner Cars Will Cost U.S. Consumers More," N.Y. Times, Apr. 23, 1971, at 73, col. 5 (nat'l ed.); Agis Salpukus, "Ford Expresses Phase 2 Doubts," N.Y. Times, Nov. 8, 1971, at 63, col. 2 (nat'l ed.).

According to the transcript in question, at the April 1971 meeting the Ford representatives emphasized the need for a more practical national motor vehicle safety program based on nonconflicting standards. They also expressed their view that the Government should focus on preventing death and serious injury, rather than property damage, and should "prioritize what [it] want[s] done to save lives." (Tr. 11, 21.)[1] Mr. Iacocca emphasized the tremendous increase in consumer prices that would result from ill-considered safety requirements, the effects of those price increases on the nation's economy, including the serious implications for the nation's inflation, balance-of payments, and work-force problems, and the disadvantage to American automobile manufacturers from foreign competition that would result from such increases. (Tr. 5-7, 15-19, 25.)

According to the transcript, the discussion of safety issues that occurred at the meeting focused almost entirely on "passive restraints" —primarily, airbags. Federal Motor Vehicle Safety Standard 208 ("Safety Standard 208"), which had been promulgated by the National Highway Traffic Safety Administration, a unit of the

---

[1]     References to "Tr. ___" are to pages of the transcript of the tape recording of portions of the April 1971 meeting. A copy of the transcript is attached hereto as Exhibit "A."

AUS.1849805.1
31102 94425

CutePDF - www.fasiio.com

Department of Transportation, was the only standard specifically discussed at the meeting. (Tr. 19.) That standard focused on passive-restraint systems (e.g., airbags or seat belts that automatically wrap around vehicle occupants as the occupants take their seats). The standard would have required passive restraints for front-seat positions as of August 15, 1973, and for rear-seat positions as of August 18, 1975. Mr. Iacocca expressed his view that airbags still required development work and that compliance with the deadline was "insoluble; we can't do it." (Tr. 14, 23.)

After the April 1971 meeting, Ford and other manufacturers filed petitions with the Department of Transportation asking it to revise the passive-restraint requirements of Safety Standard 208, again emphasizing the same points made during the April 1971 meeting. *See* Docket 69-7, National Highway Traffic Safety Administration. Thus, at the April 1971 meeting, Mr. Ford communicated to the President concerns that had been, and later would again be, argued vigorously to his subordinates in cabinet-level and other positions.

In addition, on May 3, 1971, only six days after the meeting, Ford filed a lawsuit challenging the legality of the regulation containing the passive-restraint provision. Other companies also filed suit. The lawsuit was determined to have merit. On December 5, 1972, the United States Court of Appeals for the Sixth Circuit suspended the entire passive-restraint requirement because the specific testing standards promulgated before the April 1971 meeting failed to comply with the requirements of the National Traffic and Motor Vehicle Safety Act (the "Safety Act"). *See Chrysler Corp.*, 472 F.2d at 681. Thus, irrespective of the purpose or content of the April 1971 meeting, the indisputable fact is that the only regulation specifically addressed at the meeting was judicially, not administratively, nullified years before the car in this case was assembled.

I.   ADMISSION OF EVIDENCE OF THE APRIL 1971 MEETING WOULD UNCON STITUTIONALLY PREJUDICE FORD'S FIRST AMENDMENT AND ARTICLE 1, SECTION 27, RIGHTS TO PETITION THE GOVERNMENT.

The United States and Texas Constitutions protect every citizen's right to express to public officials their views regarding the passage or enforcement of laws or regulations. The First Amendment applies to corporations as well as to individuals. *First Nat'l Bank v. Bellotti*, 435 U.S. 765, 784, reh'g denied, 438 U.S. 907 (1978); *Senart v. Mobay Chemical Corp.*, 597 F. Supp. 502, 506 (D. Minn. 1984). These constitutional provisions prohibit Gonzalez from introducing evidence of the April 1971 meeting at trial for the purpose of arguing that Ford's expression of its views can support a finding that Ford is liable for either compensatory or punitive damages. Such an argument would impermissibly infringe upon Ford's exercise of its federal and state constitutional rights to petition the government.

### A. Ford's First Amendment Right to Petition Would Be Impermissibly Infringed by Admission of the Evidence.

At least one court has held that the April 1971 meeting was protected under the First Amendment.[2] *See Whitmire v. General Motors Corp.*, No. C 82-500 A (N.D. Ga. May 23, 1984) (interlocutory order).[3] The court in *Whitmire* quashed a deposition the

---

[2]        These constitutional issues were not raised in the two state court cases that upheld admission of the transcript of the April 1971 meeting on the basis that it was probative on the issue of punitive damages. *Ford Motor Co. v. Durrill*, 714 S.W.2d 329, 339 (Tex. App.—Corpus Christi 1986), *writ granted and judgment vacated by agr. of parties*, 754 S.W.2d 646 (Tex. 1988); *Ford Motor Co. v. Stubblefield*, 171 Ga. App. 331, 336-38, 319 S.E.2d 470, 478 (1984). In addition, neither *Durrill* nor *Stubblefield* addressed the issue of whether the substantial number of unintelligible sections of the transcript rendered it untrustworthy and therefore inadmissible. Accordingly, those decisions cannot provide authority for the proposition that the transcript is admissible in this action. Moreover, this Court cannot be bound by the decision in *Durrill*. The judgment in *Durrill* was vacated, and the action was dismissed with prejudice. Consequently, *Durrill* is of no precedential value.

[3]        Texas recognizes unpublished opinions from other jurisdictions as proper authority. *See, e.g., Allegheny Int'l Credit Corp. v. Segal*, 735 S.W.2d 552, 554 n.3 (Tex. App. — Dallas 1987, no writ)

purpose of which was to inquire about the April 1971 meeting. The court based its ruling on the fact that the transcript revealed "nothing more than persons exercising their constitutional rights to petition the government for a redress of perceived grievances." *Id.*, slip op. at 2. Here, as in *Whitmire*, the First Amendment compels exclusion of evidence concerning the April 1971 meeting.

The Petitioning Clause of the First Amendment fully protects citizens' efforts to persuade public officials in all departments of government to adopt a particular position with respect to the passage or enforcement of laws.[4] Not even ordinary liability, much less punitive liability, may be imposed on the basis of such activity. *See, e.g., California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510-11, 513-14 (1972); *United Mine Workers v. Pennington*, 381 U.S. 657, 669-70 (1965); *Eastern R.R. President's Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 135-40 (1961); *Video Int'l Prod., Inc. v. Warner-Amex Cable Communications, Inc.*, 858 F.2d 1075, 1083-84 (5th Cir. 1988), *cert. denied*, 491 U.S. 906 (1989).

Although this doctrine, commonly called the *Noerr-Pennington* doctrine, originated in antitrust cases, it has long since been applied to claims other than those brought under the antitrust laws. *Video Int'l Prod. Inc.*, 858 F.2d at 1084; *Oregon Natural Resources Council v. Mohla*, 944 F.2d 531, 533-34 (9th Cir. 1991). Texas has applied the doctrine in product liability cases to immunize evidence of petitioning activity. *See, e.g., Diaz v. Southwest Wheel, Inc.*, 736 S.W.2d 770, 774 (Tex. App. — Corpus Christie 1987, writ denied) ("[w]e find the rationale of the *Noerr- Pennington* doctrine applicable to the case at bar" — a product liability case); *see also Whitmire v.*

---

(Oklahoma unpublished opinion reported in U.C.C. Reporter recognized as "secondary authority"); *Texaco, Inc. v. Pennzoil Co.*, 729 S.W.2d 768, 791, 797, 833 (Tex. App.—Houston [lst Dist.] 1987, writ ref'd. n.r.e.) (court cites and discusses New York state court unpublished opinions).

[4]    The First Amendment to the United States Constitution provides:  "Congress shall make no law . . . abridging the right of the people . . . to petition the government for a redress of grievance."

*General Motors Corp.*, No. C-82-500 A (N.D. Ga. May 23, 1984); *Senart*, 597 F. Supp. at 506 (defendants' efforts to persuade the Occupational and Safety Health Administration to reject exposure standard advocated by the National Institute for Occupational Safety and Health "are clearly permissible as First Amendment rights to petition the government"); *Webb v. Fury*, 167 W. Va. 434, 448, 282 S.E.2d 28, 37 (1981) (doctrine bars "litigation arising from injuries received as a consequence of First Amendment petitioning activity, regardless of the underlying cause of action asserted by plaintiffs")(defamation case).

In *Noerr* the Supreme Court emphasized the importance of immunizing "solicitation of governmental action with respect to the passage and enforcement of laws":

> The right of the people to inform their representatives in government of their desires with respect to the passage or enforcement of laws cannot properly be made to depend upon their intent in doing so. It is neither unusual nor illegal for people to seek action on laws in the hope that they may bring about advantage to themselves . . . . A construction . . . . that would disqualify people from taking a public position on matters in which they are financially interested would thus deprive the government of a valuable source of information and, at the same time, deprive the people of their right to petition in the very instances in which that right may be of the most importance to them.

365 U.S. at 139.

Ford's effort to inform President Nixon of its views regarding certain federal pollution, damageability, and safety regulations constitutes "solicitation of governmental action with respect to the passage and enforcement of laws." Such "conduct is not illegal, either standing alone or as a part of a broader scheme." *Pennington*, 381 U.S. at 670. Thus, the Constitution prohibits the imposition of liability, especially punitive liability, based even in part on that protected activity. *Id.; see also Letica Corp. v. Sweetheart Cup Co., Inc.*, 790 F. Supp. 702, 705-706 (E.D. Mich. 1992); *Westfield Partners, Ltd. v. Hogan*, 740 F. Supp. 523, 526 (N.D. Ill. 1990) (the exercise

of the right to petition "should be vigorously protected and should not expose individuals to suit by persons unhappy with the results of such petitioning").

Even if evidence of the April 1971 meeting were not being offered as a basis for compensatory or punitive liability, but only to show "the purpose and character of the particular transaction under scrutiny," *Pennington*, 381 U.S. at 670-71 n.3, such evidence still could not be admitted without weighing "the probativeness of and the plaintiff's need for the evidence against the danger that admission of the evidence will prejudice the defendant's First Amendment rights." *United States Football League v. National Football League*, 634 F. Supp. 1155, 1180-81 (S.D.N.Y. 1986) (quoting *Feminist Women's Health Ctr., Inc. v. Mohammad*, 586 F.2d 530, 543 n.7 (5th Cir. 1978), *cert. denied*, 444 U.S. 924 (1979)). Moreover, because such evidence "by its very nature chills the exercise of First Amendment rights" it is "presumptively prejudicial."[5] *Id.* (emphasis added) (citation omitted); *see also Australia/Eastern U.S.A. Shipping Conference v. United States*, 537 F. Supp. 807, 812 (D.D.C. 1982) ("[m]ore is demanded when first amendment values are at stake").[6]

---

[5]     In another section of the opinion, the court excluded evidence of the defendants' lobbying in Congress for sports-related legislation in the 1960s, because "[t]he low probative value of this evidence is substantially outweighed by the defendants strong interest in preserving their First Amendment rights to petition Congress." *United States Football League*, 634 F. Supp. at 1171.

[6]     *See Weit v. Continental Illinois Nat'l Bank & Trust Co.*, 467 F. Supp. 197, 207-08 n.22 (N.D. Ill. 1978), *aff'd*, 641 F.2d 457 (7th Cir. 1981), *cert. denied*, 455 U.S. 988 (1982) (court excluded, under *Noerr-Pennington* doctrine, evidence of defendants' joint lobbying in Illinois state legislature for clarifying legislation on charge card interest rates "in light of its minimal probative value as well as inevitable prejudicial effect on the jury"; evidence had been offered to show conspiracy to fix interest rates); *Lamb Enters., Inc. v. Toledo Blade Co.*, 461 F.2d 506, 516 (6th Cir. 1972), *cert. denied*, 409 U.S. 1001 (1972) (court excluded "'highly prejudicial'" letter reflecting plan to lobby city council); *Australia/Eastern U.S.A. Shipping Conference*, 537 F. Supp. at 808, 810 (quashed, on *Noerr-Pennington* grounds, paragraphs of government's

Plaintiffs' need for this unfairly prejudicial evidence is slight, because other, nonprejudicial evidence would fully serve Gonzalez's legitimate purposes.[7] The only real reason that Plaintiffs would seek to use this improperly prejudicial evidence in lieu of the other evidence available to them is "to place defendants in the harshest light." *See United States Football League*, 634 F. Supp. at 1181. Moreover, admission of this evidence would make it likely that this "lawsuit will become dominated by a digressive element masquerading as probative evidence." *Id. See also Weit v. Continental Ill. Nat'l Bank & Trust Co.*, 641 F.2d 457, 467 (7th Cir. 1981), *cert. denied*, 455 U.S. 988 (1982) (affirming trial court's exclusion of evidence of defendants' lobbying activities because admission of the highly prejudicial evidence would likely result in confusion of the issues). Because the evidence has no probative value, and because the risk of unfair prejudice to Ford's First Amendment rights is great, the evidence should be excluded.[8]

---

Civil Investigative Demands for facts concerning petitioners' contacts and communications with government agencies).

[7]        Ford made the arguments that it made to President Nixon in the following nonprejudicial contexts: (a) Public speeches made by Mr. Ford and   Mr. Iacocca, and papers filed with the Department of Transportation, criticizing regulations that had been proposed or promulgated by the Department of Transportation to govern automobile emissions and safety; (b) court papers filed by Ford in *Chrysler Corp. v. Dep't of Transp.*, 472 F.2d 659 (6th Cir. 1972); and (c) written petitions filed by Ford with the Department of Transportation.   Gonzalez have access to these statements in news releases, articles, and petitions.

[8]        The admission of such prejudicial evidence cannot be cured by a jury instruction. *See United States Football League*, 634 F. Supp. at 1181; *United States v. Turoff*, 291 F.2d 864, 868 n.4 (2d Cir. 1961) (referring to "the oft-quoted concurring opinion of Justice Jackson in *Krulewitch v. United States*, 1949, 336 U.S. 440, 453 . . . : 'The naive assumption that prejudicial effects can be overcome by instructions to the jury . . . all practicing lawyers know to be unmitigated fiction.'"); *United States v. Romo*, 669 F.2d 285, 289 (5th Cir. 1982) ("We express some doubt as to whether the 'guilt by association' cross examination and direct testimony were curable by [jury] instructions at all").

**B.      Ford's Right to Petition Under the Texas Constitution Would Be Prejudiced by Admission of the Evidence.**

The right to petition the government embodied in the First Amendment receives even stronger protection in article 1, section 27, of the Texas Constitution: "[C]itizens shall have the right [to] apply to those invested with the powers of government for redress of grievances or other purposes, by petition." *See also Puckett v. State*, 801 S.W.2d 188, 193 (Tex. App.—Houston [14th Dist.] 1990, writ ref'd), *cert. denied*, 112 S. Ct. 606 (1991); *Corpus Christi Indep. School Dist. v. Padilla*, 709 S.W.2d 700, 704-05 (Tex. App.—Corpus Christi 1986, no writ) ("a citizen's right to approach an elected official or body cannot be abridged"). Texas regards "[t]he right to petition the government for redress [as] a fundamental part of the republican form of government with its roots extending back to the Magna Charta." *Corpus Christi Indep. School Dist.*, 709 S.W.2d at 704 (citing Interpretive Commentary to Texas Constitution, art. 1, section 27 (Vernon 1984)).

In fact, the right is so cherished in Texas that the legislature fortified the protection granted by article I, section 27 with respect to certain communications made to the state government:

> To ensure the rights of the citizens of this state to petition state government, as guaranteed by Article I, Section 27 of the Texas Constitution, by protecting the confidentiality of communications of citizens with a member of the legislature or the lieutenant governor, the public disclosure of all or part of a written or otherwise recorded communication from a citizen of this state received by a member of the lieutenant governor in his official capacity is prohibited.

Tex. Gov't Code Ann. § 306.004 (Vernon 1988). Indeed, in *Inwood West Civic Ass'n v. Touchy*, 754 S.W.2d 276 (Tex. App.—Houston [14th Dist.] 1988, no writ), the court refused to permit the Gonzalez to conduct discovery into the defendant's lobbying activities before the Texas legislature. Despite the Plaintiffs' argument that the

CMPDF - www.festo.com

information was relevant and necessary to prove Houston Cable's intent and bad faith, the court held that Houston Cable's lobbying efforts were privileged under section 306.004 and "exempt from discovery." *Id.* at 278.

The strength of the protection provided to petitioning activity by the Texas Constitution, and the strong public policy in favor of such activity reflected in section 306.004, require that the challenged evidence be excluded.

**II.  EVIDENCE OF THE APRIL 1971 MEETING IS INADMISSIBLE BECAUSE ANY INQUIRY INTO THE EXECUTIVE DECISIONMAKING PROCESS, INCLUDING THE REASONS UNDERLYING THE ADOPTION OF A PARTICULAR POLICY, IS IMPROPER.**

Evidence of the April 27, 1971 meeting also should be excluded because it constitutes improper evidence of the predecisional deliberations and possible motivations of the executive branch in fashioning a national motor vehicle safety policy. Plaintiffs' sole purpose in trying to put that evidence before the jury is to cause the jury to conclude that the content and timing of Federal Motor Vehicle Safety Standards resulted from the President's motive of helping the domestic automobile industry generally, and Ford Motor Company in particular. Any such jury inquiry into the nature of the deliberative process or into rulemaking motive would be improper.

Courts have employed a variety of legal principles to protect the deliberative processes of governmental decisionmaking bodies from judicial intrusion. For example, when determining the constitutionality of a statute, courts may not inquire into the legislative motive for enacting the provision, except in extraordinary circumstances. *See United States v. O'Brien*, 391 U.S. 367, 383 (1968) ("It is a familiar principle of constitutional law that this Court will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive."); *South Carolina Educ. Assoc. v. Campbell*, 883 F.2d 1251, 1257-59 (4th Cir. 1989), *cert. denied*, 493 U.S. 1077 (1990) ("The Supreme Court has long recognized that judicial inquiries into legislative motivation are to be avoided."); *Mayhew v. Town of Sunnyvale*, 774 S.W.2d 284 298

(Tex. App.—Dallas 1989, writ denied), *cert. denied*, 111 S. Ct. 963 (1991). Similarly, individual legislators may not be questioned regarding their reasons for casting a particular vote. *Mayhew*, 774 S.W.2d at 298.

This protection from judicial intrusion applies to the executive decisionmaking process. *See, e.g., United States v. Morgan*, 313 U.S. 409, 422 (1941) ("We have explicitly held in this very litigation that 'it was not the function of the court to probe the mental processes of the Secretary [of Agriculture].'"); *Franklin Savings Ass'n v. Ryan*, 922 F.2d 209, 211 (4th Cir. 1991) ("federal courts have consistently held that absent 'extraordinary circumstances,'" a government decision-maker will not be compelled to testify about his mental processes in reaching a decision"); *Bacon v. Dept. of Housing & Urban Dev.*, 757 F.2d 265, 270 (Fed. Cir. 1985)(in upholding a decision of the Merit Systems Protection Board ("MSPB") the court held that "[t]he MSPB has no authority to probe into the mental processes of the Secretary to ascertain whether a particular 'political philosophy' influenced the [reduction-in-force] decision.").[9]

Protection of the reasoning processes of those who formulate government policy is "crucial to encouraging the flow of independent thought and honest opinion regarding agency policy and action." *United States v. Miracle Recreation Equipment Co.*, 118 F.R.D. 100, 108 (D. Minn. 1987); *see also Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 40 F.R.D. 318, 324 (D.D.C. 1966), *aff'd*, 384 F.2d 979 (D.C. Cir. 1967), *cert. denied*, 389 U.S. 952 (1967) ("predecisional documents of Attorney General's office held immune from discovery in order to "subserve a preponderation policy of frank

---

[9]      The reasons underlying judicial determinations also are "absolutely unreviewable." *United States v. Crouch*, 566 F.2d 1311, 1316 (5th Cir. 1978); *see also Fayerweather v. Ritch*, 195 U.S. 276, 306-07 (1904); *Tate v. State*, 834 S.W.2d 566 (Tex. App.—Houston [1st Dist.] 1992, writ ref'd); *cf.* TEX. R. CIV. EVID. 606(b) (prohibiting a juror from testifying "as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict").

expression and discussion among those upon whom rests the responsibility for making the determinations that enable government to operate"). It is also critical to the independence of the executive branch that courts and juries not second-guess the policy choices made by an agency. *Morgan*, 313 U.S. at 422; *cf. South Carolina Educ. Ass'n*, 883 F.2d at 1257 (judicial inquiries into legislative motivation "endanger separation of powers doctrine"). It would be wholly improper to place evidence of the April 1971 meeting before the jury in this case, because the meeting constitutes evidence of the deliberative process by which federal motor vehicle safety policy was promulgated. Jury scrutiny of that process would be an improper intrusion into the independence of the executive branch of government, and of doubtful relevance. Accordingly evidence of the meeting should be excluded.

### III. EVIDENCE OF THE APRIL 1971 MEETING IS IRRELEVANT TO THIS ACTION.

Evidence of the April 1971 meeting should be excluded for the additional reason that it is irrelevant to each of Plaintiffs' claims, including their claim for punitive damages, because there is no causal relationship between the April 1971 meeting and Plaintiffs' alleged injuries. The meeting has nothing whatsoever to do with the alleged defects Plaintiffs' claims exist in the 1979 Ford Club Wagon in question.

### IV. EVEN IF THE APRIL 1971 MEETING WERE RELEVANT, ANY SUCH MINIMAL RELEVANCE WOULD BE FAR OUTWEIGHED BY ITS PREJUDICIAL EFFECT.

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice or . . . misleading the jury." Tex. R. Civ. Evid. 403; *LSR Joint Venture No. 2 v. Callewart*, 837 S.W.2d 693, 698 (Tex. App.—Dallas 1992, writ denied). Texas courts equate "unfair prejudice" with "'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" *Long v. State*, 823 S.W.2d 259, 273 n. 20 (Tex. Crim. App.—Dallas 1991, no pet.), *cert. denied*, 112 S. Ct. 3042 (1992)(quoting Goode,

Wellborn & Sharlot, *Texas Rules of Evidence: Civil and Criminal*, 33 Texas Practice §
403.2, p. 93; *see also Gross v. Black Decker (U.S.), Inc.*, 695 F.2d 858, 863 (5th Cir.
1983); *Roberts v. Dallas Ry. & Terminal Co.*, 276 S.W.2d 575, 577 (Tex. Civ. App.—El
Paso 1953, writ ref'd n.r.e.).

Even if the April 1971 meeting were somehow relevant and were not
constitutionally protected, evidence of the meeting would be so unfairly prejudicial to
Ford as to require exclusion, and this Court should exercise its broad discretion to so
hold. Evidence of the April 1971 meeting would generate unfair prejudice resulting from
the inevitable and unwarranted "guilt by association" of Ford and its representatives
with President Nixon and John Ehrlichman, two of the principal protagonists of the
Watergate scandal. That prejudice far outweighs any minimal probative value the
evidence may be found to possess.

In *Kuiper v. Goodyear Tire & Rubber Co.*, 207 Mont. 37, 673 P.2d 1208 (1983),
a product liability action for allegedly defective tire rims, the plaintiff introduced
evidence of Goodyear's illegal contributions to President Nixon's reelection effort and
its association with those convicted of crimes in the Watergate scandal. The court held
that admission of that evidence had converted the trial into a "circus" and had deprived
the parties of a fair trial:

> In allowing the injection of the Goodyear political contribution, its
> criminal conduct in making that contribution, the Watergate scandal, and
> the references to the criminal participants in that scandal, the trial court
> allowed a relatively simple products liability case to become a political
> circus and denied the parties the right to a fair trial.

207 Mont. at 53, 673 P.2d at 1217.

The same principle applies here. *See By-Prod Corp. v. Armen-Berry Co.*, 668
F.2d 956, 960 (7th Cir. 1982)(counterclaim dismissed as not compulsory, but court
would have severed it if it were not dismissed "[b]ecause of the confusing Watergate
aura that the counterclaim would have cast over the antitrust suit if tried with it"); *Fund*

*For Constitutional Gov't v. Nat'l Archives & Records Serv.*, 485 F. Supp. 1, 6 (D.D.C. 1979), *aff'd and modified on other grounds and remanded*, 656 F.2d 856 (D.C. Cir. 1981)(Freedom of Information Act suit—court refused to release certain records of the Watergate Special Prosecution Force because "the mere connection of an individual's name with a well-known investigation may be both embarrassing and damaging").

Courts in Texas and elsewhere regularly exclude relevant evidence whose primary effect is to show the defendant's association with persons of questionable character. In *Gant v. State*, 513 S.W.2d 52 (Tex. Crim. App.—Harris County 1974, no pet.), for example, the court held that it was reversible error to allow a policeman to testify "as to the character" of the defendant's associates. Not only was evidence regarding the defendant's character inadmissible, but "[i]t should be even more obvious that the character of one's associates should not be admitted." *Id*. at 53.

Similarly, in *United States v. Barletta*, 652 F.2d 218 (1st Cir. 1981), the trial court excluded a tape-recorded conversation between the defendant and a criminal who became a government informant even though the tape contained admissions by the defendant. The court of appeals upheld the trial court's exclusion, because the context of a casual conversation with an admitted criminal would suggest "guilt by association." *Id*. at 220. In addition, the court noted that the clandestine nature of the recording gave it an "aura of non-specific criminality." *Id. See also Ferguson v. State*, 610 S.W.2d 468, 471 (Tex. Crim. App.—Jefferson County 1979, no pet.) ("considering the grave and baleful possibilities of guilt by association," the court reversed a conviction because an element of the crime was not "clearly spelled out for the jury"); *United States v. Romo*, 669 F.2d 285, 288 (5th Cir. 1982)(government's attempt to introduce evidence relating to the convictions of the defendant's associates "was a highly prejudicial attempt to taint defendant's character through 'guilt by association'"); *United States v. Singleterry*, 646 F.2d 1014, 1018 (5th Cir. 1981), *cert.*

*denied*, 459 U.S. 1021 (1982) ("plain error" to admit evidence that the defendant "associates with unsavory characters").

Likewise, in *United States v. Turoff*, 291 F.2d 864 (2d Cir. 1961), the court of appeals reversed a conviction on the grounds that the trial court incorrectly failed to exclude testimony that the defendant had participated in the Communist Party and had used a name other than his own. The appellate court recognized that this testimony was "highly prejudicial" and that it had "disadvantaged [the defendant] in a jury trial." *Id.* at 868. *See also United States v. Weir*, 575 F.2d 668, 671-72 (8th Cir. 1978) (conviction reversed where evidence that defendants had threatened to kill law enforcement agents or informers suggested that the jury verdict may have rested on the improper basis that defendants were "bad men").

Here, the transcript of the April 1971 meeting unfairly links Ford with notorious "criminal figures," a president who resigned on pain of impeachment and a presidential advisor who was convicted of several felonies and served time in prison. Moreover, President Nixon's tapes are so infamous and closely connected in the public's mind with Watergate wrongdoing that they have taken on a life of their own as "The Watergate Tapes," with all the attendant nefarious implications. "[T]he mere connection" of Ford with the Watergate scandal can be damaging because the inevitable effect of anyone's appearance on the tapes, even in a context wholly unrelated to Watergate, implies guilt by association. *See Fund For Constitutional Gov't*, 485 F. Supp. at 6. In addition, the tape here, like the tape in *Barletta*, was recorded secretly, further contributing to the "aura of non-specific criminality."

Such prejudice would be particularly unfair, and entirely unnecessary, here because other, nonprejudicial evidence is available to Gonzalez. *See LSR Joint Venture No. 2*, 837 S.W.2d at 698; *Gross v. Black & Decker (U.S.), Inc.*, 695 F.2d 858, 863 (5th Cir. 1983). In *LSR Joint Venture No. 2* the Texas Court of Appeal set forth and applied a two-pronged test by which to weigh probative value against unfair prejudice. The test

CbitPDF - www.texiio.com

requires a court to examine:  (1) the necessity for and probative effect of the proffered evidence; and (2) whether the same facts can be established by other, less prejudicial evidence.  *Id.*[10]  As shown above, the statements at the April 1971 meeting by Mr. Ford and Mr. Iacocca were made in numerous other contexts that do not have such a high potential of being unfairly prejudicial to Ford.  The only reason that Gonzalez insists on offering evidence of the April 1971 meeting is to prejudice Ford unfairly.  That is an improper basis for admitting evidence.

**V.   THE COURT SHOULD EXCLUDE THE TRANSCRIPT OF THE APRIL 1971 MEETING BECAUSE THE ERRONEOUS TRANSCRIPTION AND UNINTELLIGIBLE STATEMENTS RENDER IT UNTRUSTWORTHY AND PREJUDICIAL.**

A tape recording or transcript should be excluded where, as here, the unintelligible portions are so substantial or important as to render the recording untrustworthy.  *See United States v. Stone*, 960 F.2d 426, 436 (5th Cir. 1992); *United States v. Llinas*, 603 F.2d 506, 509 (5th Cir. 1979), *cert. denied*, 444 U.S. 1079 (1980); *United States v. Wilson*, 578 F.2d 67, 69 (5th Cir. 1978); *Interest of T.L.H.*, 630 S.W.2d 441, 447 (Tex. App.—Corpus Christi 1982, writ dism'd w.o.j.)(reversible error to admit tape, because, among other reasons, "tape contained statements which were

---

[10]   *See also Gross v. Black & Decker (U.S.), Inc.*, 695 F.2d 858, 863 (5th Cir. 1983)(applying same two factor test); *United States v. Guerrero*, 803 F.2d 783, 786 (3d Cir. 1986)(among factors to consider in determining the need for evidence is "the availability of other . . . evidence to establish the fact sought to be proven by use of the evidence"); 35 Tex. Jur. 3d *Evidence* § 161 (1984) ("evidence of facts that have been established by other proof may be properly excluded"); Blakely, *Article IV: Relevancy and its Limits*, 20 Hous. L. Rev. 151, 167-68 (1983 Tex. R. Evid. Handbook) (Advisory Committee to federal rule 403 suggests that among variables to consider is "availability of other means of proof"); Charles A. Wright & Kenneth W. Graham, Jr., *FEDERAL PRACTICE AND PROCEDURE* § 5214 (1978) ("the prejudice to an opponent can be said to be 'unfair' when the proponent of the evidence could prove the fact by other, non-prejudicial evidence").

inaudible"). In *United States v. Frazier*, 479 F.2d 983, 985 (2d Cir. 1973), the court of appeals stated that there "is an obvious danger, when a recording is substantially unintelligible, that the part that can be heard may leave a misleading impression of the entire conversation." *See also Bryan v. John Bean Div. of FMC Corp.*, 566 F.2d 541, 550 (5th Cir. 1978)(same); *cf. I.A. v. State*, 587 S.W.2d 538, 540 (Tex. Civ. App.—Corpus Christi 1979, no writ) (trial recorded electronically; appeals court reversed "because of the lack of audible testimony concerning the issues before the court").

Here, the substantial number and significance of statements in the tape of the April 1971 meeting that the transcript expressly classified as "unintelligible" and therefore omitted renders the tape, the transcript, and any testimony based on them untrustworthy and unfairly prejudicial. The 30-page transcript contains more than 135 "unintelligible" remarks of unspecified length—an average of more than four per page. Certain pages of the transcript contain more than half as many "unintelligibles" as there are lines on the page. (Tr. 27, 29, 30.) Every single page contains at least one "unintelligible" remark. The large proportion of "unintelligible" material distorts the meaning and significance of the words that were transcribed. The following discussion of proposed Safety Standard 208 illustrates the problem:

EHRLICHMAN:    How much of a modification in your model is an air bag?  I don't know the technicalities of this.

UNKNOWN:    [Unintelligible].

IACOCCA:    Oh, [unintelligible] I don't want to [unintelligible].

UNKNOWN:    [Unintelligible].

IACOCCA:    I have a [unintelligible] on the book, John, right now.

PRESIDENT:    [Unintelligible] on the damn thing. [Unintelligible].

UNKNOWN:    [Unintelligible].

IACOCCA:    We have, we have [unintelligible].

PRESIDENT:          [Unintelligible] the silly thing.

UNKNOWN:          [Unintelligible].

(Tr. 24.) Furthermore, the preponderance of "unintelligibles" casts serious doubt upon the accuracy of the portions of the transcript that supposedly were not unintelligible.

The transcriber also plainly misunderstood critical words that purportedly were not "unintelligible." For example, the transcript shows Henry Ford II supposedly referring to meetings with "Ruckelshaus and Goalby" and with "Thomas in the DOT," (Tr. 3.), yet there can be no doubt that Mr. Ford was actually referring to John Volpe, who was the Secretary of Transportation, and to Douglas *Toms*, who was head of the National Highway Traffic Safety Administration. There is simply no way to know how many other less obvious, but crucially important, errors permeate the transcript.

Moreover, John Ehrlichman, the very witness whose deposition Gonzalez may seek to use at trial, has said of the White House types generally:

> [E]ven with the most sensitive earphones it was nearly impossible at times to guess what people were saying. . . .

> The fidelity of the tapes was terrible . . . . [T]he authors of the transcript didn't know the players. The text often attributed Haldeman's words to me, Nixon's to Haldeman, Dean's to Haldeman and many phrases to "unknown." . . . The FBI transcripts are full of important errors of that kind.

J. Ehrlichman, Witness to Power 313-14 (1982).

The key location of many of the statements that the transcriber specifically conceded were "unintelligible" exacerbates the danger of prejudice, error, and confusion. Consider, for example, the transcription of Mr. Iacocca's statement concerning airbag regulations: "I don't mean to be facetious [unintelligible] told a baboon we [unintelligible] any cadavers." (Tr. 15.) The jury would have to engage in rank speculation to give any meaning to this statement.

These and a host of other "unintelligible" comments are so critical to the substance, tone, and overall weight of the transcript that the transcript, together with any testimony based on it, is untrustworthy and prejudicial and must be excluded from evidence. Exclusion on the basis of unintelligibility is especially appropriate where, as here, the transcript has little or no probative value. *See, e.g., United States v. Young*, 488 F.2d 1211, 1214 (8th Cir. 1973).

## VI. THE TRANSCRIPT OF THE APRIL 1971 MEETING MUST BE EXCLUDED BECAUSE A PROPER FOUNDATION CANNOT BE LAID AND THE TRANSCRIPT VIOLATES THE BEST EVIDENCE RULE.

The Texas Supreme Court has enumerated the following requirements for demonstrating the admissibility of an audio tape recording:

> Tape recordings which are a fair representation of a transaction, conversation, or occurrence are admissible. A fair representation may be shown by these elements: (1) a showing that the recording device was capable of taking testimony; (2) a showing that the operator of the device was competent; (3) establishment of the authenticity and correctness of the recording; (4) a showing that changes, additions, or deletions have not been made; (5) a showing of the manner of the preservation of the recording; (6) identification of the speakers; and (7) a showing that the testimony elicited was voluntarily made without any kind of inducement.

*Seymour v. Gillespie*, 608 S.W.2d 897, 898 (Tex. 1980).   Here, Gonzalez cannot establish these foundational requirements even for the underlying tape, yet he seeks to introduce a partial, error-ridden transcript of the inadmissible tape.

First, Plaintiffs cannot show the nature or capabilities of the device that recorded the conversation. In fact, the extraordinarily poor partial transcript that Plaintiffs seek to introduce into evidence shows on its face, by the numerous "unintelligibles" and errors, that the recording device was not capable of taking testimony. Second, Plaintiffs cannot demonstrate how the device was operated, or that the operator was competent to operate it. Again, the poor partial transcript shows the absence of competence of the operator. Third, Plaintiffs cannot establish that the device correctly recorded all of the

discussion at the meeting. The transcript shows that there are numerous omissions, many at crucial points. Fourth, Plaintiffs cannot show that no changes or deletions were made to the recording. Rather, the famous "gap" in the "Watergate tapes" suggests the contrary. Fifth, Plaitniffs cannot show how the recording was preserved.

In *Cummings v. Jess Edwards, Inc.*, 445 S.W.2d 767 (Tex. Civ. App.—Corpus Christi 1969, writ ref'd n.r.e.), the court upheld the exclusion of a tape recording where there was a similar lack of foundation. The court noted that the tape recording itself was not reproduced for the court and counsel; there was no testimony regarding the recording instrument or the competence of the operator; there was no testimony regarding whether the recording was authentic or correct; there was no testimony that the recording was complete and unedited; and there was no testimony as to the custody of the recording or the manner of preservation. *See also Kruse v. Coos Head Timber Co.*, 248 Or. 294, 298-302, 432 P.2d 1009, 1012-14 (1967)(recording of conversation and transcript thereof properly refused where no proof was presented that tape accurately recorded conversation).

For Plaintiffs to introduce a transcript of the tape recording, he must further demonstrate that the transcript accurately captures the contents of the tape. In *Cummings* the court rejected a transcript of a taped conversation, stating that the proponent "did not identify or vouch for the correctness of the transcript . . . which allegedly contained a portion of the recorded conversation." 445 S.W.2d at 773. *See also United States v. Rochan*, 563 F.2d 1246, 1250-52 (5th Cir. 1977) (in order to establish proper foundation for admission of transcript of tape recording, proponent must show that transcript is accurate: *i.e.*, that the words are accurately reproduced and the voices accurately identified). Here, because Plaintiffs cannot show that the transcript is accurate, the transcript must be excluded.

The transcript suffers from an additional infirmity. Under FED. R. EVID. 1002, "To prove the content of a . . . recording, . . . the original . . . is required except as otherwise

CMPDF - www.fenrir.com

provided in these rules or by law." Plaintiffs are trying to prove the content of the tape recording by offering not the original recording, which is the best evidence, but instead by offering a transcript. His attempt to use something other than the recording to prove the contents of that recording violates FED. R. EVID. 1002. FED. R. EVID. 1003 allows the use of "duplicate[s]" in certain circumstances. However, the transcript of a tape recording is not a duplicate of the recording; it is an entirely separate writing, and thus inadmissible. *See* 5 David W. Louisell & Christopher B. Mueller, *Federal Evidence*, § 563 at 365-66 (1981) ("transcript is clearly not the 'original,' nor is it a 'duplicate' admissible on like terms as the audible record . . ."; 5 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Evidence*, § 1001(4)[06] (1992) (transcript of recording is not a duplicate under FED. R. EVID. 1001(4) "because it is not made by mechanical or electronic means assuring identity, but is copied by a person.")

## VII.  THE APRIL 1971 MEETING IS TOO REMOTE IN TIME.

The April 1971 meeting occurred more than twenty years before the 1994 Ford F-350 in question here was built. It is too remote in time to be mentioned in this case, particularly when even a felony conviction cannot be used for purposes of impeachment after ten years. FED. R. EVID. 609(b).

## CONCLUSION

For the foregoing reasons, Ford's motion in limine to exclude all evidence and mention of the April 1971 meeting should be granted.

Respectfully submitted,

RODRIGUEZ, COLVIN & CHANEY, L.L.P.

By: _____
      Eduardo Roberto Rodriguez
      State Bar No. 17144000
      Joseph A. (Tony) Rodriguez
      State Bar No. 17146600
      1201 East Van Buren
      Post Office Box 2155
      Brownsville, Texas 78522
      (956) 542-7441
      Fax (956) 541-2170

ATTORNEYS FOR DEFENDANT,
FORD MOTOR COMPANY

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing was served upon all counsel of record, to-wit:

Tony Martinez
Trey Martinez
Martinez & Barrera, L.L.P.
1201 East Van Buren
Brownsville, Texas 78520
Attorneys for Plaintiffs

Jeffrey D. Roerig
D. Alan Erwin
Roerig, Oliveira & Fisher, L.L.P.
855 West Price Road, Suite 9
Brownsville, Texas 78520
Attorneys for Defendant, Gabriel Delgado

by certified mail, return receipt requested, facsimile transmission, and/or hand delivery pursuant to the Texas Rules of Civil Procedure on this the _____ day of _____, 2001.

_____
Joseph A. (Tony) Rodriguez

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| LINDA COY, Individually and On · <br> Behalf of the Estate of ORTENSIA G. <br> LOPEZ, Deceased, LUIS AYALA; <br> ISELA RODIGUEZ; LIBRADO AYALA <br> JR.; RUBEN RUIZ; and MAURICIO <br> SALDANA | §<br>§<br>§<br>§<br>§<br>§ | |
| | § | **CIVIL ACTION NO. B-00-139** |
| VS. | §<br>§ | |
| FORD MOTOR COMPANY and <br> GABRIEL DELGADO | §<br>§ | |

**DEFENDANTS' MEMORANDUM OF LAW SUPPORTING
ITS MOTION IN LIMINE RESPECTING FORD MOTOR COMPANY'S
WEALTH, SIZE, SALES OF OTHER VEHICLES, SALES OUTSIDE OF TEXAS**

Defendant Ford Motor Company files this Memorandum of Law in support of motion *in limine* to exclude any evidence of its wealth, size, sales of other vehicles, and sales outside of Texas. Ford anticipates that Plaintiffs will attempt to introduce evidence of Ford's "net worth" in support of Plaitniffs' claims for punitive damages. Ford contends that such evidence is inadmissible but in no event should be admitted or interjected into this case prior to a proper foundation being made.

### ARGUMENT

**I.   PREJUDICIAL NATURE OF FINANCIAL INFORMATION.**

It is a given that a corporate defendant's financial net worth is extremely prejudicial. On more than one occasion and in escalating importance, various Justices of the United States Supreme Court have remarked about the dangerous and prejudicial nature of such evidence. In *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 22, 111 S. Ct. 1032, 1045 (1991), Justice Blackmun writing for the majority noted that "the fact finder must be guided by more than the   defendant's net worth." "Alabama plaintiffs do not enjoy a windfall because they have the good fortune to have a defendant with a deep pocket." *Id.* Two years later the same Court in *TXO Production Corp. v. Alliance*

*Resources Corp.*, 509 U.S. 443, 466, 113 S. Ct. 2711, 2723 (1993) agreed with the defendant that emphasis on the wealth of the wrongdoers increases the risk that an award may have been influenced by prejudice against large corporations, but declined to address the argument since TXO had not preserved the point.   Justice O'Connor, dissenting in *TXO*, noted that wealth creates a "special danger of bias," because "juries may well feel privileged to correct perceived social ills stemming from unequal wealth distribution from 'wealthy' corporations to comparatively needier plaintiffs." 113 S. Ct. at 2737.

Furthermore, the "temptation to transfer wealth from out-of-state corporate defendants to in-state plaintiffs can be quite strong." 113 S. Ct. at 2738.   In *Honda Motor Company v Oberg*,___U.S.___ 114 S. Ct. 2331 (1994) the majority wrote that "the presentation of a defendant's net worth creates the potential that juries will use their verdicts to express bias."

## II.   FINANCIAL INFORMATION, IF EVER RELEVANT, IS THE LAST PIECE OF EVIDENCE.

Under Texas law, punitive damages may only be recovered when "the claimant proves by clear and convincing evidence that the harm with respect to which the claimant seeks recovery of exemplary damages results from:  (1) fraud; (2) malice; or (3) willful act or omission or gross neglect in wrongful death actions. . . ." TEX. CIV. PRAC. & REM. CODE § 41.003.   This standard is intended to limit the availability of punitive damages to only select cases.   Not every product liability case is a punitive damages case.

The issue of the amount of any award of punitive damages does not even arise until there is a finding of malice in this case.   Financial information is relevant, if at all, to the "amount" of punitive damages.   Given the inflammatory nature of financial information, this Court should limine out all references to wealth, financial information, vehicle sales, and profit information until such time as a sufficient foundation has been

CMsPDF - www.texlis.com

shown. To say the least, the issue of punitive damages is distant at the beginning of a trial. In many cases, there will be no liability finding. In other cases, the amount of economic damages found by the jury will cap the potential amount of punitive damages at such a level that there is no question of the defendant's ability to pay. Telling the jury that the defendant has a billion dollars in assets makes no difference when the most any judgment can be entered for is $5 million. But to announce the defendant's net worth at the beginning of trial would deprive the defendant of a fair trial because the jury's verdict on all other issues could be skewed in the manner noted by the U.S. Supreme Court. If the party seeking punitive damages is convinced that its proof is sufficient to support the submission of a question to the jury, then at that point this Court can take up this issue. But there is no need to address this issue when it might never arise and clearly the evidence if allowed in at the beginning of trial would be prejudicial.

### III. LIKE NET WORTH, EVIDENCE OF FORD'S SALES NATIONWIDE IS PREJUDICIAL AND INVITES THE JURY TO IMPROPERLY ASSESS DAMAGES IN A MANNER WHICH REGULATES CONDUCT OUTSIDE OF TEXAS.

When the United States Supreme Court decided *BMW of North America, Inc. v. Gore*, _____ U.S. _____, 116 S. Ct. 1589, 134 L. Ed.2d 809 (1996), the Court set out three factors for determining whether a punitive damage award violates "[e]lementary notions of fairness enshrined in our constitutional jurisprudence." *BMW*, 116 S. Ct. at 1598. Notably none of the three factors has anything to do with the defendant's wealth. The guideposts are instead: the degree of reprehensibility of the conduct; the disparity between the harm or potential harm suffered by the plaintiff and his punitive damage award, and the difference between this remedy and the civil penalties authorized or imposed in comparable cases.

No state in the federal system can legislate except with respect to its own jurisdiction. A state, be it Texas or any other state in the Union, may not impose

economic sanctions on violators of its laws with the intent of changing the tortfeasor's lawful conduct in other states. *BMW*, 116 S. Ct. at 1597. Thus, *BMW* restricts and restrains the meaning of Texas Civil Practices & Remedies Code § 41.011, which allows the consideration of net worth and the defendant's conduct. For example, that section, if interpreted to allow evidence of total Ford sales of Ford F-350 vehicles in other states on the issue of punitive damages, would clearly violate the due process clause of the Fourteenth Amendment. That would be tantamount to regulating conduct in other states. Texas may not punish or deter Ford for conduct outside of Texas. *BMW*, 116 S. Ct. at 1597. The same would exceed the interests of Texas in regulating conduct within this state. Moreover, it would be nothing other than backdoor evidence on net worth.

WHEREFORE, Ford prays that this Court grant its motion in limine with respect to Ford's financial information, including net worth.

Respectfully submitted,

RODRIGUEZ, COLVIN & CHANEY, L.L.P.

By: _____
       Eduardo Roberto Rodriguez
       State Bar No. 17144000
       Joseph A. (Tony) Rodriguez
       State Bar No. 17146600
       1201 East Van Buren
       Post Office Box 2155
       Brownsville, Texas 78522
       (956) 542-7441
       Fax (956) 541-2170

ATTORNEYS FOR DEFENDANT,
FORD MOTOR COMPANY

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing was served upon all counsel of record, to-wit:

Tony Martinez
Trey Martinez
Martinez & Barrera, L.L.P.
1201 East Van Buren
Brownsville, Texas 78520
Attorneys for Plaintiffs

Jeffrey D. Roerig
D. Alan Erwin
Roerig, Oliveira & Fisher, L.L.P.
855 West Price Road, Suite 9
Brownsville, Texas 78520
Attorneys for Defendant, Gabriel Delgado

by certified mail, return receipt requested, facsimile transmission, and/or hand delivery pursuant to the Texas Rules of Civil Procedure on this the ____ day of _____, 2001.

_____
Joseph A. (Tony) Rodriguez

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | | |
|---|---|---|
| **LINDA COY, INDIVIDUALLY AND** | § | |
| **ON BEHALF OF THE ESTATE OF** | § | |
| **ORTENSIA G. LOPEZ, DECEASED,** | § | |
| **LUIS AYALA, ISELA RODRIGUEZ** | § | |
| **AND LEE AYALA, JR., RUBEN RUIZ** | § | |
| **AND MAURICIO SALDANA** | § | **CIVIL ACTION NO. B-00-139** |
| | § | |
| **VS.** | § | |
| | § | |
| **FORD MOTOR COMPANY** | § | |
| **AND GABRIEL DELGADO** | § | |

## FORD MOTOR COMPANY'S REQUESTED JURY INSTRUCTIONS

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Defendant, Ford Motor Company ("Ford"), in accordance with FED. R. CIV. P. 51, files this written request that the Court instruct the jury as follows.

# FORD MOTOR COMPANY'S REQUESTED INSTRUCTION NO. 1

You have heard the evidence in this case. I will now instruct you on the law that you must apply. It is your duty to follow the law as I give it to you. On the other hand, you the jury are the judges of the facts. Do not consider any statement that I have made during the trial or make in these instructions as an indication that I have any opinion about the facts of this case.

After I instruct you on the law, the attorneys will have an opportunity to make their closing arguments. Statements and arguments of the attorneys are not evidence and are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

Answer each question from the facts as you find them. Do not decide who you think should win and then answer the questions accordingly.

You must answer all questions from a preponderance of the evidence. By this is meant the greater weight and degree of credible evidence before you. In other words, a preponderance of the evidence just means the amount of evidence that persuades you that a claim is more likely so than not so. In determining whether any fact has been proved by a preponderance of the evidence in this case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

You will recall that during the course of this trial I instructed you that certain testimony and certain exhibits were admitted into evidence for a limited purpose and I instructed you that you may consider some documents as evidence against one party but not against another. You may consider such evidence only for the specific limited purposes for which it was admitted.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

Certain testimony in this case has been presented to you through a deposition. A deposition is the sworn, recorded answers to questions asked a witness in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, the witness' testimony may be presented, under oath, in the form of a deposition. Some time before this trial, attorneys representing the parties in this case

questioned this witness under oath. A court reporter was present and recorded the testimony. This deposition testimony is entitled to the same consideration and is to be judged by you as to credibility and weighed and otherwise considered by you insofar as possible in the same as if the witness had been present and had testified from the witness stand in court.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case. One is direct evidence -- such as testimony of an eyewitness. The other is indirect or circumstantial evidence -- the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

When knowledge of a technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field -- he is called an expert witness -- is permitted to state his opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it.

In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness, including any bias you may infer from evidence that the expert witness has been or will be paid for reviewing the case and testifying, or from evidence that he testifies regularly as an expert witness and his income from such testimony represents a significant portion of his income.

When you retire to the jury room to deliberate on your verdict, you may take this charge with you as well as exhibits which the Court has admitted into evidence. Select your Foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given you about/on your conduct during the trial. After you have reached your verdict, your Foreperson is to fill in on the form your answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me. You must never disclose to anyone, not even to me, your numerical division on any question.

If you want to communicate with me at any time, please give a written message or question to the bailiff, who will bring it to me. I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally. I will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise.

Attached to this Jury Charge is a Verdict Form which contains various questions. Before answering each of the questions on the Verdict Form, you must consider the instructions for those questions which are provided below. After considering the instructions for a question in the Jury Charge, turn to that question in the Verdict Form and answer it.

SOURCE:   *See* Sections 2.23, 3.1 U.S. Fifth Circuit Pattern Jury Instructions.

GIVEN_____   GIVEN AS MODIFIED_____   REFUSED_____

_____
UNITED STATES DISTRICT JUDGE

## FORD MOTOR COMPANY'S REQUESTED INSTRUCTION NO. 2

Regardless of any opinion you have as to what the law is or ought to be, it would be a violation of your sworn duty to base a verdict upon any view of the law other than that given in the instructions of the Court, just as it would also be a violation of your sworn duty, as judges of the facts, to base a verdict upon anything other than the evidence in the case.

In deciding the facts of this case you must not be swayed by bias or prejudice or favor as to any party. Our system of law does not permit jurors to be governed by prejudice or sympathy or public opinion. Both the parties and the public expect that you will carefully and impartially consider all of the evidence in the case, follow the law as stated by the Court, and reach a just verdict regardless of the consequences.

This case should be considered and decided by you as an action between persons of equal standing in the community, and holding the same or similar stations in life. A corporation is entitled to the same fair trial at your hands as is a private individual. The law is no respecter of persons, and all persons, including corporations, stand equal before the law and are to be dealt with as equals in a court of justice.

SOURCE:   DEVITT, BLACKMAR & WOLFF, FEDERAL JURY PRACTICE & INSTRUCTIONS § 71.04 & Appendix, Ch. 76 at 113.


GIVEN_____        GIVEN AS MODIFIED_____   REFUSED_____



_____
UNITED STATES DISTRICT JUDGE

## FORD MOTOR COMPANY'S REQUESTED INSTRUCTION NO. 3

In this case, the plaintiffs must prove every essential part of their claim by a preponderance of the evidence.

A preponderance of the evidence means the greater weight and degree of credible evidence admitted in this case.

In deciding whether any fact has been proven by a preponderance of the evidence, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any essential part of the plaintiffs' claim by a preponderance of the evidence, you should find for the defendant as to that claim.

SOURCE:   *See* Section 2.20, U.S. Fifth Circuit Pattern Jury Instructions; Texas Pattern Jury Charge 1.03.

GIVEN_____      GIVEN AS MODIFIED_____      REFUSED_____

_____
UNITED STATES DISTRICT JUDGE

## FORD MOTOR COMPANY'S REQUESTED INSTRUCTION NO. 4

In addition to denying that any alleged defective condition of the 1979 Ford Club Wagon Van was a cause of any injury or damage to plaintiffs, the defendant alleges, as a further defense, that the negligence on the part of the driver, Gabriel Delgado, was the sole or, at a minimum, a concurring proximate cause of any injuries sustained in the accident.

There may be more than one proximate cause of an event, but if an act or omission of any person not a party to the suit was the "sole proximate cause" of an occurrence, then no act or omission of any other person could have been a proximate cause.

The burden is on a defendant, alleging the defenses of sole proximate cause and comparative responsibility to establish, by a preponderance of the evidence in the case, the claim that Gabriel Delgado was at fault, and that such fault contributed as either the sole or a concurring proximate cause of any injuries and consequent damages which may have sustained.

SOURCE:   DEVITT, BLACKMAR & WOLFF, FEDERAL JURY PRACTICE & INSTRUCTIONS § 80.22, modified to submit settling tortfeasor under Ch. 33, TEX. CIV. PRAC. & REM. CODE.

GIVEN_____        GIVEN AS MODIFIED_____        REFUSED_____

_____

UNITED STATES DISTRICT JUDGE

# FORD MOTOR COMPANY'S REQUESTED INSTRUCTION NO. 5

"Negligence" means failure to use ordinary care; that is to say, failure to do that which a person of ordinary prudence would have done under the same or similar circumstances, or doing that which a person of ordinary prudence would not have done under the same or similar circumstances.

"Proximate Cause" means that cause which, in a natural and continuous sequence, unbroken by any new and independent cause, produces an event, and without which cause such event would not have occurred; and in order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom.

There may be more than one proximate cause of an event, but if an act or omission of any person not a party to the suit was the "sole proximate cause" of an occurrence, then no act or omission of any other person could have been a proximate cause.

"Producing cause." A product or the conduct of a person is a "cause-in-fact" of harm to another only if in the natural and unbroken sequence of events it is a substantial factor in bringing about the harm, and without which no harm would have been incurred. The rule is known as the "but for" rule.

SOURCE:    The definitions of "Negligence" and "Proximate Cause" are taken from the Texas Pattern Jury Charge. The definition of "Sole Proximate Cause" is taken from the Texas Pattern Jury Charge. The definition of "Producing Cause" is taken from *Missouri Pac. R.R. Co. v. American Statesman*, 552 S.W.2d 99 (Tex. 1977) ("cause-in-fact as an element of proximate cause means that the negligent act or omission was a substantial factor in bringing about the injury and without which no harm would have been incurred"); *Texas Pacific Ry. Co. v. McCleery*, 418 S.W.2d 494 (Tex. 1967) ("The rule is known as the 'but for' rule."). This definition is further supported by an accompanying brief.


GIVEN_____          GIVEN AS MODIFIED_____          REFUSED_____



_____
UNITED STATES DISTRICT JUDGE

## FORD MOTOR COMPANY'S REQUESTED INSTRUCTION NO. 6

The mere fact that an accident occurs does not mean that the product involved was defective or that the manufacturer is liable for resulting injuries.

SOURCE:    *See Henderson v. Ford Motor Company*, 519 S.W.2d 87, 93-94 (Tex. 1974); *USX Corporation v. Salinas*, 818 S.W.2d 473, 487 (Tex. App.—San Antonio 1991, no writ); EDGAR & SALES, TEXAS TORTS & REMEDIES § 41.01[2]; *see also Gates v. Ford Motor Company*, 494 F.2d 458, 459 (10th Cir. 1974) ("injury, of itself, is not proof of a defect and raises no presumption of defectiveness"); *Tauber v. Nissan Motor Corp., U.S.A.*, 671 F. Supp. 1070, 1073 (D. Md. 1987) (one's right to recovery may not rest on any presumption from the happening of an accident); *see also See Ford Motor Company v. Miles*, 967 S.W.2d 377, 386 (Tex. 1998) (a manufacturer is not required to design the safest possible product).

GIVEN_____        GIVEN AS MODIFIED_____        REFUSED_____

UNITED STATES DISTRICT JUDGE

## FORD MOTOR COMPANY'S REQUESTED INSTRUCTION NO. 7

"Safer alternative design" means a product design other than the one actually used that in reasonable probability: (1) would have prevented or significantly reduced the risk of the claimant's personal injury without substantially impairing the product's utility, and (2) was economically and technologically feasible at the time the product left the control of the manufacturer or seller by the application of existing or reasonably achievable scientific knowledge.

SOURCE:     Section 82.005, "Design Defects" TEX. CIV. PRAC. & REM. CODE, effective Sept. 1, 1993. Applies to all causes of action that accrued on or after the effective date. *Caterpillar, Inc. v. Shears,* 911 S.W.2d 379 (Tex. 1995); *Miles v. Ford,* 967 S.W.2d 337 (Tex. 1998). ("We have held that 'if there are no safer alternatives, a product is not unreasonably dangerous as a matter of law.'" *Citing Caterpillar, Inc. v. Shears,* 911 S.W.2d 379, 384 (Tex. 1995). *See also American Tobacco Co. v. Grinnell,* 951 S.W.2d 420, 433 (Tex. 1997) ("if there is no safer alternative to the cigarette manufactured by American, then its cigarettes are not unreasonably dangerous as a matter of law.")"To prove a design defect, a claimant must establish, among other things, that the defendant could have provided a safer alternative design." *Uniroyal Goodrich Tire Co. v. Martinez,* 977 S.W.2d 328, 335 (Tex. 1998). "Implicit in this holding is that the safer alternative design must be reasonable, i.e., that it can be implemented without destroying the utility of the product." *Id.*

GIVEN_____          GIVEN AS MODIFIED_____          REFUSED_____

_____

UNITED STATES DISTRICT JUDGE

## FORD MOTOR COMPANY'S REQUESTED INSTRUCTION NO. 8

The existence of a "safer alternative design," while an essential proof requirement of the plaintiff's case, does not mean that the defendant's product was "unreasonably dangerous." For liability to exist, a safer alternative design must exist, and the defendant's product design must be defective and unreasonably dangerous.

SOURCE:  *Hernandez v. Tokai Corp.*, 2 S.W.3d 251 (Tex. 1999) ("proof of an available 'safer alternative design,' as defined by statute, is necessary but not sufficient for liability; the claimant must also show that the product was unreasonably dangerous as designed, taking into consideration the utility of the product and the risk involved in its use") (". . . the statute [82.005] was not intended to, and does not, supplant the risk-utility analysis Texas has for years employed in determining whether a defectively designed product is unreasonably dangerous."); *see also* RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 2, illus. 10; *Uniroyal Goodrich Tire Company v. Martinez*, 977 S.W.2d 328, 346 (Tex. 1998) (Hecht, J., dissenting) ("There are two components to this rule: the possibility of a safer, reasonable alternative design *and* a product that is not reasonably safe without that design. Both are required.").

GIVEN_____     GIVEN AS MODIFIED_____     REFUSED_____

UNITED STATES DISTRICT JUDGE

## FORD MOTOR COMPANY'S REQUESTED INSTRUCTION NO. 9

Proof of defect does not, of itself, establish a case of increased harm.

SOURCE:     Comment b and illustration 5, Section 16, RESTATEMENT (THIRD) OF TORTS:
PRODUCTS LIABILITY . *See Uniroyal Goodrich Tire Co. v. Martinez*, 977
S.W.2d 328 (Tex. 1998) ("Once a feasible alternative design was shown,
however, the question remained whether the rim as designed was
unreasonably dangerous." *Citing* RESTATEMENT (THIRD) OF TORTS:
PRODUCTS LIABILITY § 2(b) (product is defective in design when risks
could have been reduced by adoption of reasonable alternative design
*and* omission of the alternative design renders the product not reasonably
safe.))

GIVEN_____          GIVEN AS MODIFIED_____      REFUSED_____

_____
UNITED STATES DISTRICT JUDGE

# FORD MOTOR COMPANY'S REQUESTED INSTRUCTION NO. 10

How the defendant's design compares with other, competing designs is relevant to the issue of whether the defendant's design is defective.

SOURCE:  RESTATEMENT (THIRD) OF TORTS: PRODUCT LIABILITY § 2 cmt. d.

GIVEN_____  GIVEN AS MODIFIED_____ REFUSED_____

_____

UNITED STATES DISTRICT JUDGE

# FORD MOTOR COMPANY'S REQUESTED INSTRUCTION NO. 11

If the plaintiffs have proven their claim against a defendant by a preponderance of the evidence, you must determine the damages to which the plaintiffs are entitled. You should not interpret the fact that I have given instructions about the plaintiffs' damages as an indication in any way that I believe that the plaintiffs should, or should not, win this case. It is your task first to decide whether the defendant is liable. I am instructing you on damages only so that you will have guidance in the event you decide that the defendant is liable and that the plaintiffs are entitled to recover money from the defendant.

GIVEN_____      GIVEN AS MODIFIED_____      REFUSED_____

_____

UNITED STATES DISTRICT JUDGE

# FORD MOTOR COMPANY'S REQUESTED INSTRUCTION NO. 12

In determining whether a condition of the product renders it unreasonably dangerous as designed, you should consider the following factors:

1.  The utility of the product to the user and to the public as a whole weighed against the gravity and likelihood of injury from its use;

2.  The availability of a substitute product that would meet the same need and not be unsafe or unreasonably expensive;

3.  The manufacturer's ability to eliminate the unsafe character of the product without seriously impairing its usefulness or significantly increasing its costs;

4.  The user's anticipated awareness of the dangers inherent in the product and their avoidability because of the general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or instructions, and

5.  The expectations of the ordinary consumer.

SOURCE:    *Hernandez v. Tokai Corp.*, 2 S.W.3d 251, 256 (Tex. 1999). In that decision, the court listed these factors as properly considered "in determining whether a defectively designed product is unreasonably dangerous." *Id.* The jury should be instructed on these factors when it is asked to determine whether either of the products at issue here contained such a design defect. *See also* EDGAR & SALES, TEXAS TORTS & REMEDIES § 41.03[3][b] (similar list); RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 2 cmt. f, at p.23 (1998) (similar list).

GIVEN_____     GIVEN AS MODIFIED_____     REFUSED_____

_____
UNITED STATES DISTRICT JUDGE

# FORD MOTOR COMPANY'S REQUESTED INSTRUCTION NO. 13

In conducting the risk-utility analysis and evaluating the reasonableness of some other alternative design, you shall consider whether the manufacturer's use of the alternative design proposed by plaintiff would have increased or decreased the usefulness of the product, increased or decreased the overall safety of the product, and increased or decreased any other benefit provided by the product as actually designed, including such benefits as production costs and price, product longevity and durability, ease and cost of maintenance and repair, aesthetics, and convenience and ease of use.

SOURCE: "We agree with the general proposition that a manufacturer should not be liable for failing to adopt an alternative design that would, under other circumstances, impose an equal or greater risk of harm." *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 337 (Tex. 1998). "To prevail in a design defect case, a plaintiff should be required to show that the safety benefits from its proposed design are foreseeably greater than the resulting costs, including any diminished usefulness or diminished safety." *Id.*; RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 2(b) cmt. e. *See also Crespo v. Chrysler Corp.*, No. 97 Civ. 8246 (JSR), 1999 U.S. Dist. LEXIS 17888 at *8 (S.D.N.Y. Nov. 19, 1999) ("This requirement that the alternative design be not only feasible but also safer for the relevant users is vital, for otherwise a plaintiff could recover simply by showing that a product could feasibly and without loss of utility be designed in such a way as to avoid injury to him alone even though the change would inflict injury on numerous others – an absurd position."); *see also id.* at *7 n.7 (S.D.N.Y. Nov. 19, 1999) ("*Richards v. Michelin Tire Corp.*, 21 F.3d 1048, 1057 (11th Cir. 1994) (applying Alabama law) ('The fact that an alternative design existed which would have reduced or eliminated Appellant's injuries does not mean that the alternative design was of greater overall safety.'); *Hull v. Eaton Corp.*, 263 U.S. App. D.C. 311, 825 F.2d 448, 454 (D.C. Cir. 1987) (applying Maryland law) ('[A] plaintiff must show that the magnitude of the danger from the product outweighed the costs of avoiding the danger -- including, for example, any new dangers created and any reduction in the benefits of the product caused by the safer design.'); *Miller v. Todd*, 551 N.E.2d 1139, 1143 (Ind. 1990) (requiring a plaintiff 'to demonstrate that a feasible, safer, more practicable product design would have afforded better protection'); *Owens v. Allis-Chalmers Corp.*, 414 Mich. 413, 326 N.W.2d 372, 379 (Mich. 1982) (under Michigan law, prima facie case of design defect requires, inter alia, evidence concerning impact of alternative forklift design on 'operator's safety in other circumstances'). *See generally* James A. Henderson, Jr. & Aaron D. Twerski, *Arriving at Reasonable Alternative Design: The Reporters' Travelogue*, 30 U. MICH. J.L. REF. 563 (1997).").

GIVEN_____     GIVEN AS MODIFIED_____     REFUSED_____

_____

UNITED STATES DISTRICT JUDGE

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | | |
|---|---|---|
| LINDA COY, INDIVIDUALLY AND | § | |
| ON BEHALF OF THE ESTATE OF | § | |
| ORTENSIA G. LOPEZ, DECEASED, | § | |
| LUIS AYALA, ISELA RODRIGUEZ | § | |
| AND LEE AYALA, JR., RUBEN RUIZ | § | |
| AND MAURICIO SALDANA | § | CIVIL ACTION NO. B-00-139 |
| | § | |
| VS. | § | |
| | § | |
| FORD MOTOR COMPANY | § | |
| AND GABRIEL DELGADO | § | |

## FORD MOTOR COMPANY'S REQUESTED JURY INSTRUCTIONS ON PUNITIVE DAMAGES

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Defendant Ford Motor Company ("Ford") objects to the submission of any question to the jury based upon "malice," or any other theory which would permit the recovery of punitive damages, for a variety of reasons. Nonetheless, in an abundance of caution, Ford tenders the attached written request that the Court instruct the jury as follows, in the event this element of damages is submitted.

# FORD MOTOR COMPANY'S
## REQUESTED INSTRUCTIONS ON PUNITIVE DAMAGES
### INSTRUCTION NO. 1

Punitive damages may be awarded in this case only if you find, in accordance with the Court's instructions, that the defendant engaged in conduct warranting punitive damages, and then only if you find that punitive damages are necessary as a penalty or by way of punishment.

SOURCE:    Under Texas statutory law, the trier of fact must be instructed on the definition and purposes of punitive damages.  TEX. CIV. PRAC. & REM. CODE § 41.010.

GIVEN_____        GIVEN AS MODIFIED_____        REFUSED_____

_____

UNITED STATES DISTRICT JUDGE

## FORD MOTOR COMPANY'S
## REQUESTED INSTRUCTIONS ON PUNITIVE DAMAGES
## INSTRUCTION NO. 2

Punitive damages are not designed to compensate the plaintiffs, and plaintiffs have no right or entitlement to punitive damages.

SOURCE:   *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 17 n.7 (Tex. 1994).

GIVEN_____        GIVEN AS MODIFIED_____        REFUSED_____

_____
UNITED STATES DISTRICT JUDGE

# FORD MOTOR COMPANY'S
## REQUESTED INSTRUCTIONS ON PUNITIVE DAMAGES
## INSTRUCTION NO. 3

You may award punitive damages to plaintiffs only if you find by clear and convincing evidence that the harm the plaintiffs suffered in this accident resulted from malice by Ford Motor Company. To find by clear and convincing evidence that the defendant engaged in conduct warranting an award of punitive damages, you must have a firm belief or conviction as to that fact. The clear and convincing standard of proof is a higher standard of proof than the preponderance of the evidence standard. This burden of proof may not be shifted to the defendant or satisfied by evidence of ordinary negligence, bad faith or a deceptive trade practice.

SOURCE:   TEX. CIV. PRAC. & REM. CODE §§ 41.003, 41.010, 41.012, and 41.001(1). This instruction informs the jury of the elevated evidentiary burden in answering any question respecting punitive damages, and for clarity in understanding, contrasts that burden with the preponderance of evidence standard.

GIVEN_____        GIVEN AS MODIFIED_____        REFUSED_____

_____
UNITED STATES DISTRICT JUDGE

# FORD MOTOR COMPANY'S
## REQUESTED INSTRUCTIONS ON PUNITIVE DAMAGES
## INSTRUCTION NO. 4

"Malice" means

(a)    a specific intent by the defendant to cause substantial injury to the claimant; or

(b)    an act or omission:

(i)    which viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and

(ii)   of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety or welfare of others.

SOURCE:    TEX. CIV. PRAC. & REM. CODE §§ 41.007, 41.012.

GIVEN_____        GIVEN AS MODIFIED_____        REFUSED_____

_____
UNITED STATES DISTRICT JUDGE

# FORD MOTOR COMPANY'S
## REQUESTED INSTRUCTIONS ON PUNITIVE DAMAGES
## INSTRUCTION NO. 5

A mere finding that the defendant's product contained a design defect that rendered the product unreasonably dangerous does not alone establish that the defendant's conduct in designing and distributing that product involved an extreme degree of risk. The threshold for finding an extreme degree of risk is significantly higher than the threshold for finding a product unreasonably dangerous.

SOURCE:   Modification and implementation of TEX. CIV. PRAC. & REM. CODE § 41.003(a), (b), TEX. CIV. PRAC. & REM. CODE § 41.012; *See also Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 21 (Tex. 1994) ("Gross negligence, then, differs from ordinary negligence with respect to both elements--the defendant must be 'consciously indifferent' and his or her conduct must 'create an extreme degree of risk.'").


GIVEN_____          GIVEN AS MODIFIED_____          REFUSED_____


_____
UNITED STATES DISTRICT JUDGE

## FORD MOTOR COMPANY'S
## REQUESTED INSTRUCTIONS ON PUNITIVE DAMAGES
## INSTRUCTION NO. 6

You may award punitive damages only if you find by clear and convincing evidence that the product design or warning chosen by Ford created a risk of harm that was known to Ford at the time of manufacture and that so greatly and flagrantly exceeded the benefits of the design that Ford could not in good faith have believed that the overall benefits of the design or warning outweighed the risks of the design or warning.

SOURCE:    "Even if the insurer has 'no reasonable basis' to deny or delay payment of the claim, the plaintiff may not recover punitive damages on that basis alone." *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 18 (Tex. 1994). The same analogy applies in product cases. A product is not "unreasonably dangerous" simply because a "safer alternative design" exists. *Hernandez v. Tokai Corp.*, 2 S.W.3d 251 (Tex. 1999. That determination is still made under a risk-utility test. Hence, punitive damages can only exist in a product case when no reasonable person would find the manufacturer's risk-utility balancing was done in good faith. Mere negligence or mistake or second-guessing does not rise to the level of "malice." *Cf.* TEX. CIV. PRAC. & REM. CODE § 41.003(b).

GIVEN_____        GIVEN AS MODIFIED_____        REFUSED_____

_____
UNITED STATES DISTRICT JUDGE

# FORD MOTOR COMPANY'S
## REQUESTED INSTRUCTIONS ON PUNITIVE DAMAGES
## INSTRUCTION NO. 7

In determining whether to award punitive damages, you must only consider Ford's conduct which you find caused the plaintiffs' injury in this case. You must not consider any other alleged misconduct that has been referred to or alleged at any time.

SOURCE:    TEX. CIV. PRAC. & REM. CODE § 41.004(b).

GIVEN_____    GIVEN AS MODIFIED_____    REFUSED_____

_____
UNITED STATES DISTRICT JUDGE

**FORD MOTOR COMPANY'S**
**REQUESTED INSTRUCTIONS ON PUNITIVE DAMAGES**
**INSTRUCTION NO. 8**

In determining whether the defendant's conduct involved an extreme degree of risk, and in determining whether the defendant proceeded in conscious indifference to the rights, safety or welfare of the plaintiffs or others, you may consider the conduct of other manufacturers in the defendant's industry in designing or distributing products similar to the defendant's product.

SOURCE:    *American Cyanamid Co. v. Roy*, 498 So. 2d 859 (Fla. 1986) ("While we agree with the district court that compliance with industry guidelines should not be taken as conclusive evidence bearing on the question of a corporation's negligence, such information may certainly bear on whether a party's behavior represents such an extreme departure from accepted standards of care as to justify punitive damages."); *Nigro v. Remington Arms Co., Inc.*, 432 Pa. Super. 60, 637 A.2d 983 (1993) ("Compliance with industry standard and custom tends to support the defense that Remington acted with a nonculpable state of mind, and would negate an inference of wanton indifference to rights of others. Accordingly, such evidence is material and admissible to refute Nigro's claim for punitive damages."); *Reed v. Tiffin Motor Homes, Inc.*, 697 F.2d 1192, 1198 (4th Cir. 1982) (whether defendant followed industry standards and complied with the state of art while designing product is probative on the issue of wantonness, willfulness and maliciousness of defendant's acts).

GIVEN_____    GIVEN AS MODIFIED_____    REFUSED_____

_____
UNITED STATES DISTRICT JUDGE

# FORD MOTOR COMPANY'S
# REQUESTED INSTRUCTIONS ON PUNITIVE DAMAGES
# INSTRUCTION NO. 9

You may not award punitive damages merely because you have found by a preponderance of the evidence that the product was defective or that defendant was negligent. An honest mistake or error of judgment does not constitute malice. Neither does extreme incompetence. Rather, you may award punitive damages only if you find by clear and convincing evidence that (a) defendant had no arguably legitimate reasons for designing the product as it did, (b) no reasonable person could have concluded that the product was not defective, (c) defendant knew, or recklessly ignored, that it was creating a highly unreasonable risk to the safety of others, and (d) went ahead with the design anyway in the face of this known degree of risk.

SOURCE:    David G. Owen, *Problems in Assessing Punitive Damages Against Manufacturers of Defective Products*, 49 U. CHI. L. REV. 1, 38 (1982) ("[Punitive] damages usually will not be appropriate unless the product was very defective, and plainly so, at the time it was sold. A plaintiff usually should be entitled to a directed verdict on defectiveness, or close thereto, before the punitive damages issue is properly before the jury at all."); *cf. Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 17 (Tex. 1994) ("Evidence that merely shows a bona fide dispute about the insurer's liability on the contract does not rise to the level of bad faith."). To prove bad faith in the context of an insurance bad faith case, the insured must prove that the insurer had no reasonable basis for denying or delaying payment of the claim, and that it knew or should have known that fact. *Id.* at 18. But then the bad faith of the insurer justifies an award of compensatory damages and nothing more. *Id.* Only when accompanied by malicious, intentional, fraudulent or grossly negligent conduct does bad faith justify punitive damages. The same reasoning should apply to product liability cases. *Id.* ("It is important to maintain the distinction between punishment and compensation in the context of bad faith *as it is in the remainder of tort law*." (Emphasis added).)

All products involve some risk of injury. The fact that a jury finds that a manufacturer should have adopted a different design, for example, and that the manufacturer's chosen design was "unreasonably dangerous," justifies an award of compensatory damages and nothing more. Only when accompanied by malicious, intentional, fraudulent or grossly negligent conduct does the manufacturer's conduct justify punitive damages.

GIVEN_____     GIVEN AS MODIFIED_____     REFUSED_____


_____
UNITED STATES DISTRICT JUDGE

# FORD MOTOR COMPANY'S
## REQUESTED INSTRUCTIONS ON PUNITIVE DAMAGES
### INSTRUCTION NO. 10

_____Punitive damages are not favored in the law and they are allowed only in extreme cases, with caution and within narrow limits. Punitive damages are not awarded to compensate the plaintiff for actual injuries suffered as a result of a defendant's misconduct. Rather, punitive damages are an extraordinary penalty similar to criminal fines that are imposed to punish outrageous and intentional misconduct that society as a whole considers especially reprehensible and in that way to deter the defendant and others from engaging in similar misconduct in the future. You need not award punitive damages if you find that this purpose would not be advanced in this case. In the event that you decide to award punitive damages, only that amount necessary to accomplish the deterrent purpose of punitive damages should be awarded.

When making these decisions, keep in mind that society views the imposition of punishment, including punitive damages, as an exceedingly serious and important task that should be done only after careful and thoughtful deliberation. In deciding whether to impose, and in fixing the amount of, punitive damages, you must act with calm reason and sound discretion and take care to ensure that bias, passion or prejudice do not enter into the decision in any way. Whether to impose punitive damages is discretionary, which means that you do not have to award them unless you believe the facts require them.

SOURCE:   Punitive damages are a windfall to the plaintiff. *See Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 17 (Tex. 1994) ("Although punitive damages are levied for the public purpose of punishment and deterrence, the proceeds become a private windfall."). The jury need not award *any* amount as punitive damages. *See* TEX. CIV. PRAC. & REM. CODE § 41.010(b) ("The determination of whether to award exemplary damages and the amount of exemplary damages to be awarded is within the discretion of the trier of fact."). The trial court is required by statute to instruct the jury on this fact. *See* TEX. CIV. PRAC. & REM. CODE § 41.012 ("In a trial to a jury, the court shall instruct the jury with regard to Sections . . . 41.010 . . . ."). The seriousness of the claim requires additional instructions be given. *See Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 16 (Tex. 1994) ("The legal justification for punitive damages is similar to that for criminal punishment, and like criminal punishment, punitive damages require appropriate substantive and procedural safeguards to minimize the risk of unjust punishment.").

GIVEN_____        GIVEN AS MODIFIED_____        REFUSED_____

_____
UNITED STATES DISTRICT JUDGE

# FORD MOTOR COMPANY'S
# REQUESTED INSTRUCTIONS ON PUNITIVE DAMAGES
# INSTRUCTION NO. 11

    In determining the proper amount of punitive damages, you may not consider Ford's wealth or size.

SOURCE:    American Law Institute, *Reporters' Study: Enterprise Responsibility for Personal Injury,* Vol. II at 253-255 (1991); Malcolm E. Wheeler, *A Proposal for Further Common Law Development of the Use of Punitive Damages in Modern Product Liability Litigation,* 40 ALA. L. REV. 919, 950-952 (1989); *Pivot Point Int'l v. Charlene Products, Inc.,* 932 F. Supp. 220 (N.D. Ill. 1996); *cf. Honda Motor Co. v. Oberg,* 512 U.S. 415 (1994) (discussing dangers of permitting such evidence); *TXO Production Corp. v. Alliance Resources Corp.,* 509 U.S. 443 (1993).

GIVEN_____    GIVEN AS MODIFIED_____    REFUSED_____

_____
UNITED STATES DISTRICT JUDGE

# FORD MOTOR COMPANY'S
## REQUESTED INSTRUCTIONS ON PUNITIVE DAMAGES
## INSTRUCTION NO. 12

If you determine that punitive damages against Ford are necessary to achieve proper deterrence or punishment, you must determine the amount of that award only by considering conduct that occurred in Texas or that had an impact on residents of Texas. You may not consider sales of the product that took place outside Texas or other actions that have no connection to Texas.

Similarly, to the extent that you consider the profit, if any, that Ford realized by committing the wrongful acts alleged in this case by plaintiffs, you may consider only those profits, if any, derived from such wrongful acts committed by Ford in the State of Texas and having an impact on citizens of the State of Texas. You may not award punitive damages for the purpose of punishing Ford for conduct in other states or for conduct unrelated to Ford's conduct affecting citizens of the State of Texas.

SOURCE:    *See BMW of North America, Inc. v. Gore*, 116 S. Ct. 1589, 134 L. Ed. 2d
809 (1996); *Geressy v Digital Equipment Co.*, 950 F. Supp. 519 (E.D.N.Y.
1997).

GIVEN_____          GIVEN AS MODIFIED_____     REFUSED_____

_____
UNITED STATES DISTRICT JUDGE

# FORD MOTOR COMPANY'S
## REQUESTED INSTRUCTIONS ON PUNITIVE DAMAGES
### INSTRUCTION NO. 13

Since the plaintiffs will be made whole by any compensatory award, the plaintiffs must be viewed as acting on behalf of the public in seeking an award of punitive damages, and such damages are appropriate only to the extent that they serve a legitimate public purpose. As I mentioned, the purpose of imposing punitive damages against a corporation is to deter similar misconduct in the future by the defendant and others. Society would be harmed by, and you must not award, punitive damages in any amount larger than what is needed to accomplish this purpose.

SOURCE:    *See BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996); *Pacific Mutual Life Ins. Co. v. Haslip*, 499 U.S. 1 (1991); *see also Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 18 (Tex. 1994) ("Every tort involves conduct that the law considers wrong, but punitive damages are proper only in the most exceptional cases.").

GIVEN_____        GIVEN AS MODIFIED_____        REFUSED_____


_____
UNITED STATES DISTRICT JUDGE

## FORD MOTOR COMPANY'S
## REQUESTED INSTRUCTIONS ON PUNITIVE DAMAGES
## INSTRUCTION NO. 14

Ordinarily, it constitutes sufficient punishment and deterrence to deprive a corporate defendant of the monetary gain realized from the wrongful conduct of its employees. Therefore, if you decide to award punitive damages in this case, the maximum amount you may award is the amount of money saved by defendant by not utilizing the alternative design proposed by plaintiffs in the product involved in this case less the amount of compensatory damages you have awarded.

SOURCE:    *See generally BMW of North America, Inc. v. Gore,* 116 S. Ct. 1589 (1996); *Uniform Law Commissioners' Model Punitive Damages Act,* § 6(c) (Approval Draft, July 1996); American Law Institute, *Reporters' Study: Enterprise Responsibility for Personal Injury,* Vol. II at 254 (1991); Malcolm E. Wheeler, *A Proposal for Further Common Law Development of the Use of Punitive Damages in Modern Product Liability Litigation,* 40 ALA. L. REV. 919, 947 (1989).

GIVEN_____        GIVEN AS MODIFIED_____        REFUSED_____

_____

UNITED STATES DISTRICT JUDGE

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | | |
|---|---|---|
| LINDA COY, INDIVIDUALLY AND | § | |
| ON BEHALF OF THE ESTATE OF | § | |
| ORTENSIA G. LOPEZ, DECEASED, | § | |
| LUIS AYALA, ISELA RODRIGUEZ | § | |
| AND LEE AYALA, JR., RUBEN RUIZ | § | |
| AND MAURICIO SALDANA | § | CIVIL ACTION NO. B-00-139 |
| | § | |
| VS. | § | |
| | § | |
| FORD MOTOR COMPANY | § | |
| AND GABRIEL DELGADO | § | |

## FORD MOTOR COMPANY'S PROPOSED VERDICT FORM
## INTERROGATORIES TO THE JURY

QUESTION NO. 1.

Do you find that the 1979 Ford Club Wagon rear axle was defectively designed, that such design rendered the vehicle unreasonably dangerous, and that there was a "safer alternative design" available?

Answer "Yes" or "No"

ANSWER:

If you answered Question No. 1 "No," then return your verdict; otherwise, answer Question No. 2.

QUESTION NO. 2.

Do you find that the defective design of the rear axle assembly was a producing cause of greater damages than those that would have resulted from the accident had the "safer alternative design" been used?

Answer "Yes" or "No"

ANSWER: _____

If you answered Question No. 2 "No," then return your verdict; otherwise, answer Question No. 3.

QUESTION NO. 3.

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Plaintiffs for their injuries, if any, resulting from the occurrence in question?

You may consider the following elements of damage and none other. Consider each element separately. Do not include damages for one element in any other element. Do not include interest on any amount of damages you find.

a.    Economic damages suffered in the past and in reasonable probability will be sustained in the future.

"Economic damages" means compensatory damages for reasonable and necessary care, and loss of earning capacity.

Answer in dollars and cents, if any, for:

Linda Coy              _____

Luis Ayala             _____

Isela Rodriguez        _____

Librado Ayala, Jr.     _____

Ruben Ruiz             _____

Mauricio Saldana       _____

b.      Non-economic damages suffered in the past and in reasonable probability will be sustained in the future.

Non-economic damages include damages for physical pain and mental anguish, physical impairment and disfigurement.

Answer in dollars and cents, if any, for:

Linda Coy                  _____

Luis Ayala                 _____

Isela Rodriguez            _____

Librado Ayala, Jr.         _____

Ruben Ruiz                 _____

Mauricio Saldana           _____

QUESTION NO. 4.

State the amount of damages, if any, plaintiffs would have suffered as a result of the accident had Ford Motor Company adopted the safer alternative design proposed by plaintiffs.

Answer in dollars and cents, if any, considering the same elements as in the previous Question No. 3.

ANSWER:

Linda Coy                  _____

Luis Ayala                 _____

Isela Rodriguez            _____

Librado Ayala, Jr.         _____

Ruben Ruiz                 _____

Mauricio Saldana           _____

QUESTION NO. 5.

     Do you find by a preponderance of evidence that the negligence, if any, of Gabriel Delgado was a proximate cause of the accident or injuries?

Answer "Yes" or "No":

ANSWER:          _____

     If you answered Question No. 5 "No," then return your verdict; otherwise, answer Question No. 6.


QUESTION NO. 6.

     For each person or product found by you to have been responsible for the accident and injuries, find the percentage caused by:

ANSWER:     a.     Gabriel Delgado         _____

               b.     Ford Motor Company     _____

The percentages you find must add up to 100%.

RODRIGUEZ, COLVIN & CHANEY, L.L.P.


By: _____
       Eduardo Roberto Rodriguez
       State Bar No. 17144000
       Federal Bar No. 1944
       Joseph A. (Tony) Rodriguez
       Federal Bar No. 10107
       State Bar No. 17146600
       1201 East Van Buren
       Post Office Box 2155
       Brownsville, Texas 78522
       (956) 542-7441
       Fax (956) 541-2170

ATTORNEYS FOR DEFENDANT,
FORD MOTOR COMPANY

## CERTIFICATE OF SERVICE

    I do hereby certify that a true and correct copy of the foregoing document was served upon counsel of record, to-wit:

       Tony Martinez
       Benigno (Trey) Martinez
       Martinez & Barrera, L.L.P.
       1201 East Van Buren
       Brownsville, Texas 78520
       Attorneys for Plaintiffs

       D. Alan Erwin
       Roerig, Oliveira & Fisher, L.L.P.
       855 West Price Road, Suite 9
       Brownsville, Texas 78520
       Attorneys for Defendant Gabriel Delgado

by certified mail, return receipt requested, hand delivery, and/or facsimile transmission, pursuant to the Federal Rules of Civil Procedure, on this the 19th day of April, 2001.


_____
Joseph A. (Tony) Rodriguez