25

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

APR 2 3 2001

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| LINDA COY, ET AL. | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | |
| | § | CIVIL ACTION NO. B-00-13 9 |
| FORD MOTOR COMPANY & | § | |
| GABRIEL DELGADO | § | |
| Defendants. | § | |

## PLAINTIFFS' PROPOSED QUESTIONS TO BE INCLUDED IN JURY CHARGE

Other than the standard instructions submitted to the jury, Plaintiffs, in accordance with the Federal Rule of Civil Procedure 51, files this written request that the Court submit the following instructions and questions:

𝜏𝑐

# PLAINTIFFS' INSTRUCTION NO. 1

You have, heard the evidence in this case. I will now instruct you on the law that you must apply. It is your duty to follow the law as I give it to you. On the other hand, on the jury are the judges of the facts. Do not consider any statement that I have made during, the trial or make in these instructions as an indication that I have any opinion about the facts of this case.

After I instruct you on the law, the attorneys will have an opportunity to make their closing arguments. Statements and arguments of the attorneys are not evidence and are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

Answer each question from the facts as you find them. Do not decide who you think should win and then answer the questions accordingly.

You must answer all questions from a preponderance of the evidence. By this is meant the greater weight and degree of credible evidence before you. In other words, a preponderance of the evidence just means the amount of evidence that persuades you that a claim is more likely so than not so. In determining whether any fact has been proved by a preponderance of the evidence in this case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

You will recall that during the course of this trial I instructed you that certain testimony and certain exhibits were admitted into evidence for a limited purpose and I instructed you that you may consider some documents as evidence against one party but not against another. You may consider such evidence only for the specific limited purposes for which it was admitted.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something that was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a Witness does not necessarily mean that the witness was not telling the truth as he or she remembers it because people may forget some things or remember other things inaccurately. So, if a witness has made a misstatement, vou need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

Certain testimony in this case has been presented to you through a deposition. A deposition is the sworn, recorded answers to questions asked a witness in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand. the

witness' testimony may be presented, under oath, in the form of a deposition. Some time before this trial, attorneys representing the parties in this case questioned this witness under oath. A court reporter was present and recorded the testimony. This deposition testimony is entitled to the same consideration and is to be judged by you as to credibility and weighed and otherwise considered by you insofar as possible in the same as if the witness had been present and had testified from the witness stand in court.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case. One is direct evidence -- such as testimony of an eyewitness. The other is indirect or circumstantial evidence -- the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

When knowledge of a technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field -- he is called an expert witness    is permitted to state his opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it.

In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness, including any bias you may infer from evidence that the expert witness has been or will be paid for reviewing the case and testifying, or from evidence that he testifies regularly as an expert witness and his income from such testimony represents a significant portion of his income.

When you retire to the jury room to deliberate on your verdict, you may take this charge with you as well as exhibits which the Court has admitted into evidence. Select your Foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the, Court has given you about/on your  conduct during the trial. After you have reached your verdict, your Foreperson is to fill in on the form  your answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me. You must never disclose to anyone, not even to me, your numerical division on any question.

If you want to communicate with Me at any time, please give a written message, or question to the bailiff, who will bring it to me, I will them respond as promptly as possible either

in writing or by having you brought into the courtroom so that I can address you orally. I will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict, you are not required to talk to anyone about the case unless the Court orders otherwise.

Attached to this Jury Charge is a Verdict Form which contains various questions. Before answering each of the questions on the Verdict Form, you must consider the instructions for those questions which are provided below.  After considering the instructions for a question in the Jury Charge, turn to that question in the Verdict Form and answer it,

SOURCE:      *See* Sections 2.23, 3.1 U.S. Fifth Circuit Pattern Jury Instructions.


GIVEN_____          GIVEN AS MODIFIED_____          REFUSED_____


_____
UNITED STATES DISTRICT JUDGE

## PLAINTIFFS' INSTRUCTION NO. 2

Regardless of any opinion you have as to what the law is or ought to be, it would be a violation of your sworn duty to base a verdict upon any view of the law other than that given in the instructions of the Court, just as it would also be a violation of your sworn duty, as judges of the facts, to base a verdict upon anything other than the evidence in the case.

In deciding the facts of this case you must not be swayed by bias or prejudice or favor as to any party. Our system of law does not permit jurors to be governed by prejudice or sympathy or public opinion. Both the parties and the public expect that you will carefully and impartially consider all of the evidence in the case, follow the law as stated by the Court, and reach a just verdict regardless of the consequences.

This case should be considered and decided by you as an action between persons of equal standing in the community, and holding the same or similar stations in life. A corporation is entitled to the same fair trial at your hands as is a private individual. The law is no respecter of persons, and all persons, including corporations, stand equal before the law and are to be dealt with as equals in a court of justice.

SOURCE:    DEVITT, BLACKMAR & WOLFF, FEDERAL JURY PRACTICE & INSTRUCTIONS 71.04 & Appendix, Ch. 76 at 113.

GIVEN_____        GIVEN AS MODIFIED_____        REFUSED_____

_____
UNITED STATES DISTRICT JUDGE

## PLAINTIFFS' INSTRUCTION NO. 3

In this case, the plaintiffs must prove every essential part of their claim by a preponderance of the evidence.

A preponderance of the evidence means the greater weight and degree of credible evidence admitted in this case.

In deciding whether any fact has been proven by a preponderance of the evidence, you may, unless otherwise instructed, consider the testimony of an witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any essential part of the plaintiffs' claim by a preponderance of the evidence, you should find for the defendant as to that claim.

SOURCE:    *See* Section 2.20, U.S. Fifth Circuit Pattern Jury Instructions; Texas Pattern Jury Charge 1.03.


GIVEN_____        GIVEN AS MODIFIED_____        REFUSED_____


_____
UNITED STATES DISTRICT JUDGE

## PLAINTIFFS' INSTRUCTION NO. 4

"Negligence means failure to use ordinary care; that is to say, failure. to do that which a person of ordinary prudence would have done under the same or similar circumstances, or doing that which a person of ordinary prudence would not have done under the same or similar circumstances.

"Proximate Cause" means that cause which, in a natural and continuous sequence, unbroken by any new and independent cause, produces an event, and without which cause such event would not have occurred; and in order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom.

There may be more than one proximate cause of an event, but if an act or omission of any person not a party to the suit was the "sole proximate cause" of an occurrence, then no act or omission of any other person could have been a proximate cause.

"Producing cause." A product or the conduct of a person is a "cause-in-fact" of harm to another only if in the natural and unbroken sequence of events it is a substantial factor in bringing about the harm, and without which no harm would have been incurred. The rule is known as the "but for" rule.

SOURCE:    The definitions of "Negligence" and "Proximate Cause" are taken from the Texas Pattern Jury Charge. The definition of "Sole Proximate Cause" is taken from the Texas Pattern Jury Charge. The definition of "Producing Cause" is taken from *Missouri Pac. R.R. Co. v. American Statesman*, 552 S.W.2d 99 (Tex. 1977) ("cause-in-fact as an element of proximate cause means that the negligent act or omission was a substantial factor in bringing about the injury and without which no harm would have been incurred"); *Texas Pacific Ry. Co. v. McCleery*, 418 S.W.2d 494 (Tex. 1967) ("The rule is known as the 'but for' rule."). This definition is further supported by an accompanying brief.

GIVEN_____          GIVEN AS MODIFIED_____          REFUSED_____

_____
UNITED STATES DISTRICT JUDGE

## PLAINTIFFS' INSTRUCTION NO. 5

The factors relevant to deterimining whether the omission of a reasonable alternative design renders a product not reasonably safe include:

1.  the magnitude of the foreseeable risks of harm;

2.  the instructions and warnings that accompanied the product;

3.  the nature and strength of consumer expectations regarding the product;

4.  the relative advantages and disadvantages of the product as designed and as it alternatively could have been designed; and

5.  the effects of the alternative design on production costs, product longevity, maintenance and repair, aesthetics and marketability.

<u>SOURCE:</u>   RESTATEMENT (THIRD) OF TORTS:   PRODUCTS LIABILITY § 2 cmt. f; "To determine whether a reasonable alternative design exists, and if so whether its omission was unreasonably dangerous (or in the words of the new Restatement, not reasonably safe), the finder of fact may weigh various factors bearing on the risk and utility of the product." *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 335 (Tex. 1998).

GIVEN_____        GIVEN AS MODIFIED_____        REFUSED_____

_____

UNITED STATES DISTRICT JUDGE

## QUESTION NUMBER ONE

Was there a manufacturing defect in the automobile at the time it left the possession of Ford Motor Company that was a producing cause of the occurrence and injury in question?

A "defect" means a condition of the product that renders it unreasonably dangerous. An "unreasonably dangerous" products is one that is dangerous to an extent beyond that which would be contemplated by the ordinary user of the product, with the ordinary knowledge common to the community as to the product's characteristics.

Answer "Yes" or "No."

Answer:_____

## QUESTION NUMBER TWO

Was there a design defect in the automobile at the time it left the possession of Ford Motor Company that was a producing cause of the occurrence and injury in question?

A "design defect" is a condition of the product that renders it unreasonably dangerous as designed, taking into consideration the utility of the product and the risk involved in its use.

Answer "Yes" or "No."

Answer:_____

## QUESTION NUMBER THREE

Was there a defect in the marketing of the automobile at the time it left the possession of Ford Motor Company that was a producing cause of the occurrence and injury in question?

A "marketing defect" with respect to the product means the failure to give adequate warnings of the product's dangers that were known or by the application of reasonably developed human skill and foresight should have been known or failure to give adequate instructions to avoid such dangers, which failure rendered the product unreasonably dangerous as marketed.

"Adequate" warnings and instructions means warnings and instructions given in form that could reasonably be expected to catch the attention of a reasonably prudent person in the circumstances of the product's use; and the content of the warnings and instructions must be comprehensible to the average user and must convey a fair indication of the nature and extent of the danger and how to avoid it to the mind of a reasonably prudent person.

An "unreasonably dangerous" product is one that is dangerous to an extent beyond and which would be contemplated by the ordinary user of the product with the ordinary knowledge common to the community as to the product's characteristics.

Answer "Yes" or "No."

Answer:_____

CVisPDF - www.texisu.com

## QUESTION NUMBER FOUR

Was there a misrepresentation by Ford Motor Company that was a producing cause of the occurrence and injury in question?

There was a misrepresentation if -

1.    Ford Motor Company represented to the public that Ford Van possessed a stable and sturdy axle; and

2.    the automobile in question failed to possess such an axle; and

3.    the representation about the safety of the axle involved a material fact concerning the character of the quality of the automobile in question; and

4.    Plaintiffs relied on the representation made by Ford Motor Company in purchasing the automobile in question.

A "material fact" is a fact that is important to a normal purchaser by which the purchaser may justifiably by expected to be influenced in making the decision to buy the product.

Answer "Yes" or "No."

Answer:_____

## QUESTION NUMBER FIVE

Was the axle supplied by Ford Motor Company unfit for the ordinary purposes for which such axles are used because of a defect, and, if so, was such unfit condition a proximate cause of the occurrence and injury in question?

A "defect" means a condition of the goods that renders them unfit for the ordinary purposes for which they are used because of a lack of something necessary for adequacy.

Answer "Yes" or "No."

Answer:_____

## QUESTION NUMBER SIX

Did the axle fail or break even though the van was used in a manner it was intended to be used, and, if so, was such failure a proximate cause of the occurrence and injuries in question?

Answer "Yes" or "No."

Answer:_____

## QUESTION NUMBER SEVEN

What sum of money, if paid now in cash, would fairly and reasonably compensate Carlos Vasquez for damages, if any, resulting from the death of Hortencia Lopez?

Consider the elements of the damages listed below and none other. Consider each element separately. Do not include damages for one element in any other element. Do not include interest on any amount of damages you find.

Do not reduce the amounts, if any, in your answers because of the negligence, if any, of Hortencia Lopez.

a.      Pecuniary loss.

"Pecuniary loss" means the loss of the care, maintenance, support, services, advice, counsel, and reasonable contributions of a pecuniary value, excluding loss of inheritance, that Carlos Vasquez, in reasonable probability, would have received from Hortencia Lopez had she lived.

b.      Loss of accomplishment and society.

"Loss of companionship and society" means the loss of the positive benefits flowing from the love, comfort, companionship, and society that Carlos Vasquez, in reasonable probability, would have received from Hortencia Lopez had she lived.

c.      Mental anguish.

"Mental anguish" means the emotional pain, torment, and suffering experienced by Carlos Vasquez because of the death of Hortencia Lopez.

In determining damages for elements b and c, you may consider the relationship between Carlos Vasquez and Hortencia Lopez, their living arrangements, any extended absences from one another, the harmony of their family relations, and their common interests and activities. You are reminded that elements b and c, like the other elements of damages, are separate, and, in awarding damages for one element, you shall not include damages for the other.

Answer, with respect to the elements listed above, in dollars and cents for damages, if any, that -

were sustained in the past;      Answer:_____

in reasonable probability will
be sustained in the future.      Answer:_____

d.      Loss of inheritance.

"Loss of inheritance" means the loss of the present value of the assets that the deceased in reasonable probability, would have added to the estate and left a natural death to Hortencia Lopez.

Answer in dollars and cents for damages, if any.

Answer:_____

## QUESTION NUMBER EIGHT

What sum of money, if paid now in cash, would fairly and reasonably compensate Linda Coy for damages, if any, resulting from the death of Hortencia Lopez?

Consider the elements of the damages listed below and none other. Consider each element separately. Do not include damages for one element in any other element. Do not include interest on any amount of damages you find.

Do not reduce the amounts, if any, in your answers because of the negligence, if any, of Hortencia Lopez.

    a.      Pecuniary loss.

          "Pecuniary loss" means the loss of the care, maintenance, support, services, advice, counsel, and reasonable contributions of a pecuniary value, excluding loss of inheritance, that Linda Coy, in reasonable probability, would have received from Hortencia Lopez had she lived.

    b.      Loss of accomplishment and society.

          "Loss of companionship and society" means the loss of the positive benefits flowing from the love, comfort, companionship, and society that Linda Coy, in reasonable probability, would have received from Hortencia Lopez had she lived.

    c.      Mental anguish.

          "Mental anguish" means the emotional pain, torment, and suffering experienced by Linda Coy because of the death of Hortencia Lopez.

In determining damages for elements b and c, you may consider the relationship between Linda Coy and Hortencia Lopez, their living arrangements, any extended absences from one another, the harmony of their family relations, and their common interests and activities. You are reminded that elements b and c, like the other elements of damages, are separate, and, in awarding damages for one element, you shall not include damages for the other.

Answer, with respect to the elements listed above, in dollars and cents for damages, if any, that –

          were sustained in the past;    Answer:_____

          in reasonable probability will
          be sustained in the future.    Answer:_____

d.      Loss of inheritance.

"Loss of inheritance" means the loss of the present value of the assets that the deceased in reasonable probability, would have added to the estate and left a natural death to Hortencia Lopez.

Answer in dollars and cents for damages, if any.

Answer:_____

## QUESTION NUMBER NINE

What sum of money, if paid now in cash, would fairly and reasonably compensate Luis Ayala for damages, if any, resulting from the death of Hortencia Lopez?

Consider the elements of the damages listed below and none other. Consider each element separately. Do not include damages for one element in any other element. Do not include interest on any amount of damages you find.

Do not reduce the amounts, if any, in your answers because of the negligence, if any, of Hortencia Lopez.

a.      Pecuniary loss.

"Pecuniary loss" means the loss of the care, maintenance, support, services, advice, counsel, and reasonable contributions of a pecuniary value, excluding loss of inheritance, that Luis Ayala, in reasonable probability, would have received from Hortencia Lopez had she lived.

b.      Loss of accomplishment and society.

"Loss of companionship and society" means the loss of the positive benefits flowing from the love, comfort, companionship, and society that Luis Ayala, in reasonable probability, would have received from Hortencia Lopez had she lived.

c.      Mental anguish.

"Mental anguish" means the emotional pain, torment, and suffering experienced by Luis Ayala because of the death of Hortencia Lopez.

In determining damages for elements b and c, you may consider the relationship between Luis Ayala and Hortencia Lopez, their living arrangements, any extended absences from one another, the harmony of their family relations, and their common interests and activities. You are reminded that elements b and c, like the other elements of damages, are separate, and, in awarding damages for one element, you shall not include damages for the other.

Answer, with respect to the elements listed above, in dollars and cents for damages, if any, that -

were sustained in the past;      Answer:_____

in reasonable probability will
be sustained in the future.      Answer:_____

d.      Loss of inheritance.

          "Loss of inheritance" means the loss of the present value of the assets that the deceased in reasonable probability, would have added to the estate and left a natural death to Hortencia Lopez.

Answer in dollars and cents for damages, if any.

Answer:_____

# QUESTION NUMBER TEN

What sum of money, if paid now in cash, would fairly and reasonably compensate Isela Rodriguez for damages, if any, resulting from the death of Hortencia Lopez?

Consider the elements of the damages listed below and none other. Consider each element separately. Do not include damages for one element in any other element. Do not include interest on any amount of damages you find.

Do not reduce the amounts, if any, in your answers because of the negligence, if any, of Hortencia Lopez.

a.      Pecuniary loss.

"Pecuniary loss" means the loss of the care, maintenance, support, services, advice, counsel, and reasonable contributions of a pecuniary value, excluding loss of inheritance, that Isela Rodriguez, in reasonable probability, would have received from Hortencia Lopez had she lived.

b.      Loss of accomplishment and society.

"Loss of companionship and society" means the loss of the positive benefits flowing from the love, comfort, companionship, and society that Isela Rodriguez, in reasonable probability, would have received from Hortencia Lopez had she lived.

c.      Mental anguish.

"Mental anguish" means the emotional pain, torment, and suffering experienced by Isela Rodriguez because of the death of Hortencia Lopez.

In determining damages for elements b and c, you may consider the relationship between Isela Rodriguez and Hortencia Lopez, their living arrangements, any extended absences from one another, the harmony of their family relations, and their common interests and activities. You are reminded that elements b and c, like the other elements of damages, are separate, and, in awarding damages for one element, you shall not include damages for the other.

Answer, with respect to the elements listed above, in dollars and cents for damages, if any, that -

were sustained in the past;       Answer:_____

in reasonable probability will
be sustained in the future.       Answer:_____

d.      Loss of inheritance.

"Loss of inheritance" means the loss of the present value of the assets that the deceased in reasonable probability, would have added to the estate and left a natural death to Hortencia Lopez.

Answer in dollars and cents for damages, if any.

Answer:_____

## QUESTION NUMBER ELEVEN

What sum of money, if paid now in cash, would fairly and reasonably compensate Librado Ayala, Jr. for damages, if any, resulting from the death of Hortencia Lopez?

Consider the elements of the damages listed below and none other. Consider each element separately. Do not include damages for one element in any other element. Do not include interest on any amount of damages you find.

Do not reduce the amounts, if any, in your answers because of the negligence, if any, of Hortencia Lopez.

a.     Pecuniary loss.

"Pecuniary loss" means the loss of the care, maintenance, support, services, advice, counsel, and reasonable contributions of a pecuniary value, excluding loss of inheritance, that Librado Ayala, Jr., in reasonable probability, would have received from Hortencia Lopez had she lived.

b.     Loss of accomplishment and society.

"Loss of companionship and society" means the loss of the positive benefits flowing from the love, comfort, companionship, and society that Librado Ayala, Jr., in reasonable probability, would have received from Hortencia Lopez had she lived.

c.     Mental anguish.

"Mental anguish" means the emotional pain, torment, and suffering experienced by Librado Ayala, Jr. because of the death of Hortencia Lopez.

In determining damages for elements b and c, you may consider the relationship between Librado Ayala, Jr. and Hortencia Lopez, their living arrangements, any extended absences from one another, the harmony of their family relations, and their common interests and activities. You are reminded that elements b and c, like the other elements of damages, are separate, and, in awarding damages for one element, you shall not include damages for the other.

Answer, with respect to the elements listed above, in dollars and cents for damages, if any, that -

were sustained in the past;     Answer:_____

in reasonable probability will
be sustained in the future.     Answer:_____

d.     Loss of inheritance.

"Loss of inheritance" means the loss of the present value of the assets that the deceased in reasonable probability, would have added to the estate and left a natural death to Hortencia Lopez.

Answer in dollars and cents for damages, if any.

Answer:_____

## QUESTION NUMBER TWELVE

What sum of money would have fairly compensated Hortencia Lopez for:

a.      Pain and mental anguish.

"Pain and mental anguish" means the conscious physical pain and emotional pain, torment, and suffering experienced by Hortencia Lopez before her death as a result of the occurrence in question.

b.      Medical expenses.

"Medical expenses" means the reasonable expense of the necessary medical and hospital care received by Hortencia Lopez for treatment of injuries sustained by her as a result of the occurrence in question.

c.      Funeral and burial expenses.

"Funeral and burial expenses" means the reasonable amount of expenses for funeral and burial for Hortencia Lopez reasonably suitable for her station in life.

Do not reduce the amount, if any, in your answer because of the negligence, if any, of Hortencia Lopez.

Answer in dollars and cents for damages, if any.

Answer:_____

## QUESTION NUMBER THIRTEEN

What sum of money, if paid now in cash, would fairly and reasonably compensate Ruben Ruiz for his injuries, if any, that resulted from the occurrence in question?

Do not include any amount for any condition not caused by the occurrence in question. Do not include any amount for any condition existing before the occurrence in question.

Consider the elements of damages listed below and none other. Consider each element separately. Do not include damages for one element in any other element. Do not include interest on any amount of damages you find.

Answer separately in dollars and cents or none for damages, if any

A.      Physical pain and mental anguish sustained in the past.

        Answer:_____

B.      Physical pain and mental anguish that, in reasonable probability, Ruben Ruiz will sustain in the future.

        Answer:_____

C.      Physical impairment sustained in the past.

        Answer:_____

D.      Physical impairment that, in reasonable probability, Ruben Ruiz, will sustain in the future.

        Answer:_____

E.      Loss of earning capacity that, in reasonable probability, Ruben Ruiz will sustain in the future.

        Answer:_____

F.      Medical care, reasonably and necessarily incurred, in the past.

        Answer:_____

G.      Medical care that, in all reasonable probability, Ruben Ruiz will incur in the future.

        Answer:_____

## QUESTION NUMBER FOURTEEN

What sum of money, if paid now in cash, would fairly and reasonably compensate Mauricio Saldaña for his injuries, if any, that resulted from the occurrence in question?

Do not include any amount for any condition not caused by the occurrence in question. Do not include any amount for any condition existing before the occurrence in question.

Consider the elements of damages listed below and none other. Consider each element separately. Do not include damages for one element in any other element. Do not include interest on any amount of damages you find.

Answer separately in dollars and cents or none for damages, if any

A.     Physical pain and mental anguish sustained in the past.

Answer:_____

B.     Physical pain and mental anguish that, in reasonable probability, Ruben Ruiz will sustain in the future.

Answer:_____

C.     Physical impairment sustained in the past.

Answer:_____

D.     Physical impairment that, in reasonable probability, Mauricio Saldaña, will sustain in the future.

Answer:_____

E.     Loss of earning capacity that, in reasonable probability, Mauricio Saldaña will sustain in the future.

Answer:_____

F.     Medical care, reasonably and necessarily incurred, in the past.

Answer:_____

G.     Medical care that, in all reasonable probability, Mauricio Saldaña will incur in the future.

Answer:_____

## QUESTION NUMBER FIFTEEN

Do you find by clear and convincing evidence that the harm to Plaintiffs resulted from malice?

"Clear and convincing evidence" means the measure or degree of proof that produces a firm belief or conviction of the truth of the allegations sought to be established.

"Malice" means: (a) a specific intent by Ford Motor Company to cause substantial injury to Plaintiffs; or (b) an act or omission by Ford Motor Company, (i) which, when viewed objectively from the standpoint of Ford Motor Company at the time of its occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (ii) of which Ford Motor Company had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others.

Answer "Yes" or "No."

Answer:_____

## QUESTION NUMBER SIXTEEN

What sum of money, if any, should be assessed against Ford Motor Company and awarded to Plaintiffs as exemplary damages for the conduct found in response to **QUESTION NUMBER FIFTEEN**?

"Exemplary damages" means any damages awarded as a penalty or by way of punishment.  Exemplary damages includes punitive damages.

Factors to consider in awarding exemplary damages, if any, are:

A.    The nature of the wrong.

B.    The character of the conduct involved

C.    The degree of culpability of the wrongdoer.

D.    The situation and sensibilities of the parties concerned.

E.    The extent to which such conduct offends a public sense of justice and propriety.

F.    The net worth of Ford Motor Company.

Answer in dollars and cents for damages, if any.

Answer:_____